```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

UNITED STATES OF AMERICA, )
                          )
          Plaintiff,      )
                          )
vs.                       ) 3:10-CR-027-B
                          )
JACK ZIMMERMAN,           )
                          )
          Defendant.      )
```

                         REDACTED
                    SENTENCING HEARING
           BEFORE THE HONORABLE JANE J. BOYLE
              UNITED STATES DISTRICT JUDGE
                     MARCH 3, 2011

                 A P P E A R A N C E S
For the Government:

     UNITED STATES ATTORNEY'S OFFICE
     1100 Commerce Street - 3rd Floor
     Dallas, TX  75242
     (214)659-8600
     BY:  LISA J. MILLER

For the Defendant:

     LAW OFFICE OF DAVID R. SCOGGINS
     12225 Greenville Ave - Suite 700
     Dallas, TX 75243
     (972)985-2400
     BY:  DAVID R. SCOGGINS

COURT REPORTER:  SHAWNIE ARCHULETA, TX CCR No. 7533
                 1100 Commerce Street
                 Dallas, Texas 75242


proceedings reported by mechanical stenography,
transcript produced by computer.

1          (In open court.)

2          THE COURT:  Mr. Zimmerman is up next.

3          MS. MILLER:  Good afternoon, Your Honor.

4          Lisa Miller for the government.

5          THE COURT:  Ms. Miller and Mr. Scoggins.

6          MR. SCOGGINS:  Yes, Your Honor.

7          THE COURT:  And this is case 3:10-CR-027.

8          Mr. Zimmerman, good afternoon.

9          THE DEFENDANT:  Good afternoon.

10         THE COURT:  As you know, today is the day

11  for the sentencing in your case.  The first thing I

12  want to do is make sure I have all the paperwork

13  that I'm supposed to have and make sure you've had a

14  chance to review it all.  I will be asking you some

15  questions along those lines, and you also get a

16  chance to speak on your own behalf.

17         I will place you under oath.  Raise your

18  right hand.

19         (The Defendant was sworn.)

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Okay.  Mr. Zimmerman, have you

22  had a chance to thoroughly review the presentence

23  report?

24         THE DEFENDANT:  Yes, ma'am.

25         THE COURT:  Have you had a chance to

1    review that with your counsel?

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Do you fully understand the

4    presentence report?

5          THE DEFENDANT:  Ma'am.

6          THE COURT:  Do you fully understand the

7    presentence report?

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  Okay.  The government filed a

10    statement wherein they had some objections to the

11    presentence report.

12          Have you had a chance to review that with

13    Mr. Scoggins?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Any questions about that?

16          Mr. Zimmerman, any questions about that?

17          THE DEFENDANT:  No.

18          THE COURT:  The next document is your

19    statement.  It's filed by Mr. Scoggins containing

20    some objections as to the presentence report.

21          Have you had a chance to review that

22    carefully with Mr. Scoggins?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Do you fully understand the

25    document?

```
 1                THE DEFENDANT:  I understand what it says.
 2      But that's -- is this when I tell her --
 3                MR. SCOGGINS:  No, we will get to that.
 4                THE COURT:  All right.  Do you understand?
 5                THE DEFENDANT:  Yes, ma'am.
 6                THE COURT:  Okay.  The government also
 7      filed a sentencing memorandum where they went into
 8      certain issues that have been raised by the
 9      presentence report, the objections and whatnot, as
10      well as the addendum.
11                Have you had a chance to review the
12      sentencing memorandum with your attorney,
13      Mr. Scoggins?
14                THE DEFENDANT:  Yes, ma'am.
15                THE COURT:  Do you fully understand it?
16                THE DEFENDANT:  Yes, ma'am.
17                THE COURT:  Any questions about it?
18                THE DEFENDANT:  No, ma'am.
19                THE COURT:  There is also an addendum that
20      was filed by U.S. Probation in response to some of
21      the objections that have been filed.
22                Have you had a chance to review that
23      carefully with your attorney, as well?
24                THE DEFENDANT:  Yes, ma'am.
25                THE COURT:  Any questions about that right
```

1   now?

2                    THE DEFENDANT:  No.

3                    THE COURT:  Okay.  And finally, I have a

4   statement regarding the addendum wherein you have

5   objected to certain wording in the presentence

6   report in paragraphs 20, 22, 35 and 36A.

7                    Have you had a chance to review this with

8   Mr. Scoggins?

9                    THE DEFENDANT:  Yes, ma'am.

10                   THE COURT:  Any questions about that?

11                   THE DEFENDANT:  No, ma'am.

12                   THE COURT:  Okay.  And then, finally, in a

13  brief statement the government adopted the

14  presentence report as modified by the addendum.

15                   Let's go back, then, and talk about

16  objections.  Mr. Scoggins, where are we with the

17  objections?  I know there's been a back and forth

18  with the government, probation and you.  Where are

19  we in terms of your -- oh, I also have two character

20  letters that were written for him, and I read them

21  as well.

22                   MR. SCOGGINS:  Yes.  Thank you, Judge.  We

23  are down to the objections to the addendum only at

24  this time.

25                   THE COURT:  Okay.  So as set forth in the

1  original statement regarding the presentence report,

2  you have no objections that -- you no longer

3  maintain those objections except to the extent they

4  may be repeated in this last document?

5         MR. SCOGGINS:  Yes, the addendum cured a

6  lot of the objections we had initially, Your Honor.

7         THE COURT:  Okay.  All right.  I just

8  wanted to make sure the record was clear on what you

9  were regarding.  So if you could tell me with regard

10  to your statement most recently that raises concerns

11  about paragraphs 20, 22, 35 and 36A.  Other than

12  that, are you still raising any objections in the

13  original set of objections?

14         MR. SCOGGINS:  No, Your Honor.

15         THE COURT:  Okay.  This has to do with the

16  obstruction of justice enhancement.

17         MR. SCOGGINS:  It does, Your Honor.

18         THE COURT:  Let's hear your position on

19  that.

20         MR. SCOGGINS:  Judge, in that regard,

21  there was an occasion -- and of course you have seen

22  the factual issues here.  The intent that

23  Mr. Zimmerman was for his, who is now his ex-wife,

24  to obtain those tapes and destroy them because he

25  didn't want his daughter to come home from college,

```
 1    come across them and view them, because they were
 2    inappropriate for her view.  And he didn't even want
 3    his wife to look at them because he knew they were
 4    inappropriate.  And that was his intent.  It wasn't
 5    to obstruct justice, but to protect his family from
 6    looking at materials that were not suitable for them
 7    to review.
 8            THE COURT:  And that is the sum and
 9    substance of his objection?
10            MR. SCOGGINS:  That is it, Your Honor.
11            THE COURT:  Okay.  Ms. Miller?
12            MS. MILLER:  Well, Your Honor, in
13    response, while it is correct that the Court needs
14    to make a specific finding with regard to the
15    willful nature of the defendant's obstruction of
16    justice, I believe that the facts contained within
17    the presentence report indicate that this
18    defendant's intent was just that.  Based on the
19    description of the videos and ultimately what the
20    investigation revealed, which was that one of the
21    individuals contained in that VHS tape that he
22    directed his wife to destroy was, in fact, a minor
23    and one whom he knew was a minor at that time
24    indicates not just that the defendant knew these
25    tapes were, quote, end quote, inappropriate, but
```

1    they were illegal, that it constituted production of

2    child pornography.

3              Of course at the stage, at the point in

4    time when this defendant directed his wife to do so,

5    which was May 20, 2010, that was well after his

6    indictment.  It was also, interestingly, right just

7    the day before he signed off on the plea agreement

8    in this case.

9              I think the facts contained within the PSR

10   alone demonstrate circumstantially that this

11   defendant's intent was, in fact, to obstruct justice

12   and to ensure that investigators were not aware of

13   this young girl.

14             THE COURT:  Ms. Miller, the government

15   takes the position this is relevant conduct?

16             MS. MILLER:  I do.  Yes, Your Honor.

17             THE COURT:  If you will try to square that

18   with U.S. Probation's position, which seems to be

19   maybe perhaps a shade different or so.

20             MS. MILLER:  I think it is a shade

21   different.  I think what probation is saying is that

22   this was not relevant conduct; rather, it was

23   conduct similar to the offense, which I think is

24   correct.  I mean, I think the Court can certainly

25   find that without any problem.

1          The case law that I have found and that I
2    cited in my sentencing memorandum, however, has
3    demonstrated that when you have -- when you have a
4    course of conduct and a specific modus operandi --
5    which in this case I think what is demonstrated is
6    that this defendant posed as someone called Jeff
7    367, and in doing so, held himself out to be a
8    young, attractive man in order to be attracted by
9    these younger girls, that was his modus operandi.
10   It's the same course of conduct that he used in
11   terms of enticing and producing the images of Jane
12   Doe.
13          The fact that this conduct occurred, I
14   think it was maybe six months prior, really, I don't
15   think the 5th Circuit has indicated that that is
16   something that would therefore mean it was not
17   relevant conduct.
18          I think one of the cases that I cited
19   demonstrated that when you have the same course of
20   conduct and the same modus operandi, even 20 months
21   is not too long for the Court to find that it is, in
22   fact, relevant conduct.
23          That is the government's position.
24          THE COURT:  Thank you, Ms. Miller.
25          Anything else on this, Mr. Scoggins?

```
 1              MR. SCOGGINS:  No, Your Honor.

 2              THE COURT:  The Court agrees with --

 3    overrules the objection.  And to the extent the

 4    objection by the defendant seems to be centered on

 5    this issue of the evidence and his real intent, I

 6    agree, first of all, that of course counsel's

 7    objections alone are not sufficient to contradict

 8    the presentence report.

 9              Nonetheless, the Court has to find that

10    the presentence report is sufficiently reliable;

11    that it can rely upon the presentence report in

12    determining whether or not the government has met

13    their preponderance of the evidence standard to

14    support this obstruction of justice enhancement, and

15    I think they have, this adjustment up.

16              Just as Ms. Miller has said, we are

17    talking about the very same conduct and a period of

18    time that all of the circumstantial evidence would

19    certainly suggest that this was much more of an

20    attempt to avoid the authorities in their continuing

21    investigation of his involvement in child

22    pornography as opposed to spare his daughter of any

23    inadvertent stumbling upon this information.

24    Apparently it had been around in one form or another

25    for some time.
```

1          But the Court can and does rely upon the

2     presentence report in this case as far as the

3     circumstantial evidence, very strong, at least to a

4     preponderance, that the defendant intended to

5     obstruct justice, citing to a case somewhat similar,

6     U.S. v. Calhoun, 383 F.3d 281 at keynotes 5, 6, 7,

7     and 8 and pages 286 and 287, along these same lines

8     with regard to inferences and circumstantial

9     evidence of intent to obstruct justice.  So I

10    overrule the objection by the defendant for that

11    reason.

12          But to address, then, the second part of

13    this -- and that is the difference between

14    U.S. Probation and what they put in their

15    presentence report and the government's position of

16    whether or not this is relevant conduct -- I agree

17    with the government on this as set forth in their

18    brief, I believe it's page 4, citing to the U.S. v.

19    Anderson case, 174 F.3d 515, 526 and '27, affirming

20    the district court's relevant conduct finding, where

21    the conduct at issue and the conduct charged had a

22    common purpose and a similar MO.  They also cite to

23    U.S. v. Fernandez-Pena.  It's at Fed.Appx. 128, 380,

24    5th Circuit 2005.

25          So to the extent the presentence report,

```
1   the addendum, or otherwise, varies from this
2   position that it is relevant conduct, the Court does
3   not adopt that portion of the presentence report and
4   finds that it is relevant conduct.  In any event,
5   certainly the evidence supports the obstruction of
6   justice adjustment.
7            All right.  Mr. Scoggins, did you have
8   anything else?
9            MR. SCOGGINS:  No, Your Honor.
10            THE COURT:  What's the government's
11   position on the presentence report.  Ms. Miller?
12            MS. MILLER:  With regard to the Court's
13   changes, the government has no objections.
14   Okay.  So where we are, then, is a total offense
15   level of 43 with a criminal history category of I.
16   Let me make sure I'm at the right place.  I may not
17   be.  Is the revision in the addendum, the last
18   revision to the calculation?
19            THE PROBATION OFFICER:  Yes, Your Honor,
20   it's on page 14 of the addendum.  The total offense
21   level, the highest that it can be is 43.
22            THE COURT:  12 to 14?
23            THE PROBATION OFFICER:  Page 14.
24            THE COURT:  14?
25            THE PROBATION OFFICER:  Yes, ma'am.
```

```
 1              THE COURT:  You did a lot of work on this.
 2              THE PROBATION OFFICER:  Yes, ma'am.
 3              THE COURT:  All right.  With a total
 4  offense level of 45, and for the reasons set forth
 5  in the presentence report addendum at page 14, that
 6  takes it to a -- under U.S. Guideline Chapter 5,
 7  part A, comment note 2, as an offense level of 43.
 8              Any disagreement with that?  Okay.  All
 9  right.
10              Mr. Scoggins, do you and your client want
11  a chance to be heard?
12              MR. SCOGGINS:  Yes.  Mr. Zimmerman would
13  like to address the Court, please.
14              THE DEFENDANT:  Yes, ma'am.  I am sorry
15  for what I did.  I admit, admit it all, and accept
16  it all.  I didn't try to obstruct justice at all.
17  That's not what happened.  If you want to know, I
18  will tell you about it.
19              THE COURT:  I think what I would like you
20  to focus on -- it's your chance to talk, but you
21  should focus on the idea of where the sentence ought
22  to land.
23              THE DEFENDANT:  I didn't try to obstruct
24  justice, ma'am.  I have health and medical issues.
25  I'm 57 years old.  I've never been in trouble before
```

1    in my life; never.

2              I've lost everything that I have ever had.

3    I lost my wife, my daughter, my house, my vehicles,

4    my friends' respect, money, anything, everything I

5    have; I have nothing.  A job of 20 years, I lost

6    that.  I lost my freedom.  My health is gone, and

7    I'm just sorry.  I apologize for it.  I really,

8    honestly do.

9              My health is, I've got in October of '09 I

10   went to the doctor, and I have terminal cancer,

11   prostate cancer.  You should have the letter for

12   that or something.

13             I also had a stroke in October of '09.  I

14   found out I lost part of my brain function, my

15   memory.  I can't remember things.  I lost part of my

16   brain function.

17             I have a -- I cut off my foot, and I don't

18   have an ankle.  I can't walk.  It was almost two

19   years before I could walk again.  And then in 2005,

20   I had -- they fused my ankle together, and I got

21   this MRSA virus, and I can't hardly walk.  I started

22   off in a wheelchair when I went back to work.  They

23   actually didn't think I was going to walk.

24             And I've got a back disease in my spine

25   spondylosis.  You should have that, too.  And I have

1   a 27 percent impairment rating disability on that.

2          I've got other things that's wrong with

3   me, but that's about the extent.  That's the worst.

4   The terminal cancer I've got.  And I went in

5   February of 2010, I was supposed to have an

6   operation to remove it.  They wouldn't let me out.

7   Nobody would let me out to go have my operation.  I

8   had a job, and I had insurance, so it would have

9   taken care of that; nothing happened.

10          And then, in September of -- of 2010,

11   that's when I went and saw another urologist, and he

12   confirmed that I had terminal cancer.  At this point

13   they sent me to another urologist here, just right

14   before Christmas, and he's going to set it up, tell

15   me what to do and so forth, what I need to do.  I

16   forget what the thing that they call it, they put it

17   in here, your valve.

18          THE COURT:  I feel bad about all that, but

19   what about all these little girls?

20          THE DEFENDANT:  I admit that was sorry.

21   It was an addiction that I had.  I was drinking.  I

22   had an addiction with drinking; on drugs at the

23   time.  And when I went to the doctor and I found out

24   about cancer, I found out I had my stroke, and I

25   just lost the hope to where -- I don't know what

1    happened to me.  I lost hope.  I went astray.  I

2    sinned against God; that's what hurts the most.  I

3    sinned against God.  I turned away from God instead

4    of to him at that time.  That's what happened.

5              It was all fake.  It was all -- I

6    didn't -- it wasn't on any little girls.  Most of

7    the people that I talked to I thought were 18 or

8    older.  And she's correct that that's what I did.  I

9    created that fake thing.  It wasn't anything for

10   that, but at that time that's when I lost the hope

11   in my mind, I just . . . I just let the devil get

12   into me instead of turning to God.  Like I said, I

13   lost it.

14             As far as this obstruction of justice,

15   that was a couple of months after they had sentenced

16   me.  I woke up one night, and I just -- it just hit

17   me.  It clicked in my mind that that was there.

18   That was months and months and months before, it was

19   there.  And my daughter is going to graduate from

20   school.  And it just happened in my mind.  Pick up

21   the phone and call my wife, tell her.  I don't want

22   her to find that.  I called Meg, and I asked her --

23   I told her -- you know, I asked her, it's up there.

24   There are these tapes, they are disgusting.  You can

25   listen to the tapes.  It's up there.

```
 1                  She asked me, does it have anything to do
 2       with this?
 3                  And I said, no, this has nothing to do
 4       with that.  It has nothing to do with that person.
 5                  She asked me again, and I said, no, it
 6       does not have anything to do with that person.  It
 7       didn't upset me.  I didn't think anything about it,
 8       to get rid of it.  I didn't want her -- I figured
 9       that she would look at them and be disgusted, but
10       she knew I didn't want my daughter to come in there
11       and to get that and go to her college graduation.
12                  That's the only thing that came to my
13       mind.  I didn't try to obstruct anything.  I knew it
14       didn't have anything to do with this.  And there's
15       one reading in here where it says that she asked me
16       about it and I said no.  That's not true.  I didn't
17       say that.  She, Meg asked me, does it have anything
18       to do with this case?  And I said, no, it doesn't.
19       I said, no, it has nothing at all to do with this.
20       It's not the same person or nothing.
21                  I confessed to her.  I was up front with
22       her, and I have been up front with her, and told her
23       about everything.  I didn't try to hide anything
24       about that.
25                  And like I say, my mind, it just -- it
```

1    came into me because I didn't know, it just came to

2    me one time.  And if I was trying to hide it, I

3    wouldn't have called her on the phone.  Now that I'm

4    thinking about that, but that's not -- it wasn't my

5    intent, Judge.

6              THE COURT:  All right, Mr. Zimmerman,

7    thank you very much.

8              Mr. Scoggins?

9              MR. SCOGGINS:  Judge, we appreciate you

10   reviewing the two character letters as part of the

11   sentencing.  His wife is not here.  She is now his

12   ex-wife.  She divorced him during the pendency of

13   the suit, but she did pay the $200 special

14   assessment for the two counts.

15             His sister and his niece are here from

16   Oklahoma in his support.

17             THE COURT:  Appreciate your coming.

18             MR. SCOGGINS:  Ms. Miller, I'm sure will

19   agree, that Mr. Zimmerman was debriefed and did

20   agree that his online personas could be adopted and

21   used for law enforcement investigative purposes.

22             THE COURT:  All right.  Anything else,

23   Mr. Scoggins?

24             MR. SCOGGINS:  No, Your Honor.

25             THE COURT:  Anything -- why don't you take

1   a seat, and I want to give the government a chance

2   to argue the case, argue the sentencing.

3           MS. MILLER:  Well, Your Honor, I will be

4   brief.  As I sat and listened to Mr. Zimmerman's

5   allocution, my thoughts, I believe, are very similar

6   to the Court's.  We heard all about all of the --

7   all of what he has lost and all of the harm that has

8   happened to him as a result of this case, and of

9   course we heard nothing about the victims.

10          And I emphasize victims plural, because,

11  as this Court has already found, directly in

12  contrast to what Mr. Zimmerman is trying to claim,

13  was that he did, in fact, obstruct justice.  And but

14  for his wife being up front with law enforcement, we

15  might still not know that there was actually more

16  than one -- more than one minor victimized by this

17  defendant.

18          We're talking about the defendant, he

19  almost seemed as if he was trying to tell the Court

20  that somehow he didn't know or understand that he

21  was dealing with minors.  The facts of the case are

22  clear.  He absolutely knew.  And that he took

23  advantage repeatedly of a 14-year-old, who he chose

24  to memorialize his abuse in photos to molest in the

25  back of his old, dirty van, whom he engaged in sex

1    repeatedly without protection of a condom, a girl

2    that he had treated like an object.

3            And very similarly from the videotapes

4    that were seized from Mrs. Zimmerman after that

5    phone call, similarly was the girl we have referred

6    to as Jane Doe 2, although they did not have a

7    direct physical contact, of course at his direction

8    she did a number of demeaning things that he

9    ultimately recorded.

10           So with that, Your Honor, I know there is

11   an 11(c)(1)(C) agreement in this case for a cap of

12   30 years.  And I believe, based on the facts, that

13   that is a generous sentence, and I would ask the

14   Court to impose it.

15           THE COURT:  All right.  Thank you.

16           Come on back up here.  Mr. Scoggins.

17           MR. SCOGGINS:  Nothing further, Your

18   Honor.

19           THE COURT:  All right.  If you will come

20   back up to the lectern, please.

21           And I know this is all on the record and

22   has been agreed to, but there is no dispute about

23   the 11(c)(1)(C) up to 30 agreement that should not

24   exceed 30 years; is that correct?

25           MR. SCOGGINS:  That is correct, Your

1   Honor.

2          THE COURT:  Mr. Zimmerman?  Mr. Zimmerman?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  The sentence that you went

5   over with counsel and the government pursuant to

6   your plea agreement and obviously some cooperation

7   that you have engaged in allows the Court to let you

8   withdraw your plea if I wanted to sentence you for

9   more than 30 years.  And the fact is that that 30

10  years, 360 months, is quite a long time.

11         The victims in this case -- we don't see

12  many cases with victims as brutalized as yours.

13  These young ladies -- and we don't have a loss of a

14  life here, but a loss of maybe a peaceful life, a

15  life that they are not tormented by the memories of

16  someone so much older taking advantage of them in

17  such a despicable way.  And having you plead guilty,

18  though, and not having to have any of these girls

19  subjected to court testimony or court trial

20  preparation is a benefit.  And under all the

21  circumstances, I think that the agreement is

22  reasonable and should be accepted by the Court and

23  therefore go forward with that.

24         I want to make sure the record reflects,

25  to the extent this is ever reviewed in the future,

1  though, that the Court agrees with this sentence

2  pursuant to 18 U.S.C. Section 3553, all those

3  factors.  I think it is reasonable under the

4  circumstances.  It is a heavy, heavy sentence, but

5  agreed to in advance, both parties entering into it

6  with eyes wide open.

7       MS. MILLER:  Your Honor, I apologize for

8  interrupting.  I did mean to note just for the

9  record that Rita Garrett is present as a victim

10 representative.  She elects not to address the

11 Court.  I'm sorry, I apologize, I meant to state

12 that on the record, that she is present; however,

13 she would not like to address the Court.

14       THE COURT:  Thank you very much.  I

15 appreciate that.  And certainly the statute in that

16 regard isn't exercised or taken advantage of very

17 often, but this is a case where it should be, and I

18 am glad that it was.

19 So considering your background, considering this

20 crime at the -- as one of the more extreme, serious

21 kinds of crimes that anyone in state or federal

22 court sees, considering that it was a repeated

23 course of conduct, taking advantage of people much

24 younger, less sophisticated, or even able to

25 understand what was going on, all of those, I think,

1  making sure the punishment is just and deters others

2  from these crimes, for all of those reasons, even

3  regardless of the guideline range, the statutory

4  range, and the agreement by the government, I think

5  the 360 months or 30 years in custody is fair and

6  reasonable under the circumstances, and we will

7  agree with the 11(c)(1)(C).

8          The rest of the conditions, then, of

9  supervised release, which is going to be for a

10  period of life after you are out of custody, I can

11  turn to those conditions.  And with all the papers

12  here, perhaps probation can turn me to the location

13  of the conditions of supervised release.

14          THE PROBATION OFFICER:  Yes, Your Honor,

15  the blue pages.  On Page Number 2, towards the

16  bottom of the page, supervised release.

17          THE COURT:  I may not have --

18          THE PROBATION OFFICER:  Do you not have

19  blue pages?  They are attached to the original

20  presentence report.  Yes, ma'am, the addendum did

21  not impact the guideline computation because it was

22  maxed out.

23          If Your Honor can't find it, you are

24  certainly welcome to have my copy.

25          THE COURT:  I have located them.  Thank

1    you very much.

2              THE PROBATION OFFICER:  Okay.

3              THE COURT:  All right.  Supervised release

4    is for a period of life.

5              The conditions are as follows:  The

6    defendant shall not commit another federal, state or

7    local crime.

8              The defendant shall not illegally possess

9    a controlled substance.

10             The defendant shall cooperate in the

11   collection of DNA as directed by probation.

12             The defendant shall not possess a firearm,

13   ammunition, destructive device or any other

14   dangerous weapon.

15             The defendant shall report in person to

16   the U.S. Probation Office in the district to which

17   he is released within 72 hours of release from the

18   custody of the Federal Bureau of Prisons.

19             The defendant shall refrain from unlawful

20   use of a controlled substance.

21             The defendant shall submit to one drug

22   test within 15 days of release from imprisonment and

23   at least two periodic drug tests thereafter as

24   directed by probation.

25             The defendant shall participate and comply

1    with the requirements of computer and Internet

2    monitoring.  The details of that monitoring will be

3    set forth in the Court's judgment in this case.

4              The defendant, further, shall submit to

5    periodic, unannounced examination of his computer

6    storage media.  The details of that requirement will

7    be set forth in the Court's judgment in this case.

8              The defendant shall not use any computer

9    other than the one the defendant is authorized to

10   use without prior approval from probation.

11             The defendant shall not use any software

12   program or device designed to hide, alter or delete

13   records and/or logs of the defendant's computer use,

14   Internet activities, or files stored on his

15   computer.

16             The defendant shall provide the probation

17   officer with accurate information about his entire

18   computer system.

19             The defendant's e-mail shall only be

20   accessed through preapproved application.

21             The defendant shall not maintain or create

22   a user account on any social networking site.  The

23   details of that will be set forth in the judgment.

24   And again, that may be the thought that in 30 years

25   these social networking tools may have changed, but

1    in the meantime that is a condition of release as it

2    stands right now and part of the judgment.

3              The defendant shall not use or possess a

4    Webcam or other hardware that allows for the

5    exchange of video or photographs online.

6              The defendant shall not access any service

7    or use in any software that allows for the direct --

8    for direct peer-to-peer contact that may include

9    chat rooms, file sharing, or other similar activity,

10   but not limited to PDAs, electronic games, cellular

11   digital telephones.

12             The defendant -- I'm sorry, backing up.

13   The defendant shall not access any service or use

14   any software that allows for direct peer-to-peer

15   contact that may include chat rooms, file sharing,

16   or other similar activity without permission.

17             The defendant shall not use or own any

18   device that allows Internet access other than

19   authorized by U.S. Probation, including but not

20   limited to, PDAs, electronic games, and cellular

21   digital telephones.

22             The defendant shall not engage or utilize

23   any service that allows peer-to-peer file sharing or

24   file transfer protocol activity.

25             The defendant shall not possess or use

1  removable media configured with bootable operating

2  systems.

3        The defendant shall not access any

4  Internet service provider account or other online

5  service using someone else's account, name

6  designation, or alias.

7        The defendant shall participate in sex

8  offender treatment services as directed by probation

9  until successfully discharged.  The details of that

10  will be set forth in the Court's judgment.

11        The defendant shall have no contact with

12  persons under the age of 18, including by

13  correspondence, telephone, Internet, electronic

14  communication, or third parties.  Again, the

15  remaining details of that will also be in the

16  Court's judgment.

17        The defendant shall not possess or have

18  under his control any sexually-oriented or

19  sexually-stimulating materials of adults or

20  children.  This may include visual, auditory,

21  telephonic, electronic media, e-mail chat

22  communications, instant messaging, or computer

23  programs, and he shall not patronize any place where

24  such materials are available.  And he shall not use

25  any sex-related telephone numbers.

1           Defendant shall have no contact with the

2    victim or victims in this case in any form or

3    fashion, correspondence, telephone communication,

4    through third parties except under circumstances

5    approved by probation and by the Court, for that

6    matter.

7           The defendant shall register with state

8    and local law enforcement as directed by probation

9    in each jurisdiction where he resides, is employed,

10   or is a student.  And I will put forth the details

11   of the sex offender registration requirements

12   contained in paragraph 23 of the presentence report

13   supervised release conditions in my judgment.

14          The defendant shall not have any form of

15   unsupervised contact with persons under the age of

16   18 at any location, including but not limited to:

17   Defendant's residence, place of employment, and

18   public places were minors frequent or congregate

19   without prior permission of U.S. Probation.

20          He shall not possess, have access to, or

21   utilize a computer or Internet connection device,

22   including but not limited to, Xbox, PlayStation,

23   Nintendo, or similar devices without permission of

24   the Court.

25          I understand this may have been paid, but

1    it is further ordered that he pay a special

2    assessment of $200.

3          Are there counts to dismiss, Ms. Miller?

4          MS. MILLER:  There are, Your Honor, and

5    the government does so move to dismiss those counts.

6          THE COURT:  And the counts of the guilty

7    plea were Count 1?

8          MS. MILLER:  Count 1 and Count 2, and I

9    believe this was a six-count indictment, Your Honor.

10         THE COURT:  Other than Counts 1 and 2, the

11    government's motion to dismiss is granted.  The

12    Court's ruling on that will be entered among the

13    minutes of this case.

14         As far as the plea agreement and the right

15    to appeal, Mr. Zimmerman, I believe you have waived

16    your right to appeal.  Let me make sure about that.

17         Mr. Zimmerman, you have waived your right

18    to appeal this sentence.  That means that there are

19    certain narrow areas that you can complain about.

20    They are set forth in your plea agreement on page 5,

21    paragraph 11.

22         If you decide to appeal those areas that

23    you have reserved, you have a right to an attorney

24    to represent you for the appeal and court-appointed

25    counsel, if you can't afford your own.  If you

1  decide to appeal, you must file your notice of

2  appeal within ten days of the date of the Court's

3  judgment in this case.

4          Mr. Scoggins, I have made it a regular

5  practice now to ask counsel on board to make sure

6  that if he wants to appeal this case that counsel --

7  present counsel make sure that notice is filed, and

8  then we will take care of any withdrawal, if

9  necessary.

10          MR. SCOGGINS:  Yes, Your Honor.

11          THE COURT:  All right.  Is there any other

12  questions or requests by counsel?

13          MR. SCOGGINS:  No, Your Honor.

14          THE COURT:  Anything else from the

15  government?

16          MS. MILLER:  No, Your Honor.

17          THE COURT:  If not, then, Mr. Zimmerman is

18  remanded to federal custody, and we will take a

19  short recess before the last hearing of the day.

20      (Court in recess as to this matter at 3:00.)

21

22

23

24

25

```
 1                C E R T I F I C A T E

 2          I, Shawnie Archuleta, CCR/CRR, certify

 3   that the foregoing is a transcript from the record

 4   of the proceedings in the foregoing entitled matter.

 5          I further certify that the transcript fees

 6   format comply with those prescribed by the Court and

 7   the Judicial Conference of the United States.

 8          This 15th day of June 2011.

 9

10

11                       s/Shawnie Archuleta
                         Shawnie Archuleta CCR No.  7533
12                       Official Court Reporter
                         The Northern District of Texas
13                       Dallas Division

14

15

16   My CSR license expires:  December 31, 2011

17   Business address:  1100 Commerce Street
                         Dallas, TX  75242
18   Telephone Number:  214.753.2747

19

20

21

22

23

24

25
```

SHAWNIE ARCHULETA, CSR/CRR
FEDERAL COURT REPORTER − 214.753.2747