"Jackie Harold, family of Zimmerman, Jr.", (c) 1953
dba: "JACKIE HAROLD ZIMMERMAN JR.", (c) 1953
Fed. Reg. #: 39657-177 / Butner II
Federal Correctional Institution, II
P.O. BOX 1500 / Old Highway 75
BUTNER, N.C. [27509]

Date: September 12, 2012 C.E.

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

OCT 1 2 2012

CLERK, U.S. DISTRICT COURT
By_____ Deputy

# ORIGINAL

district court, IN & FOR THE UNITED STATES OF AMERICA (1789);

c/o: THE UNITED STATES DISTRICT COURT; NORTHERN DISTRICT OF TEXAS: DALLAS DIVISION:

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, (1789) <br> dba: The Corporate UNITED STATES, (1871) <br> "Eric Holder", (c) Attorney General U.S. <br>     Plaintiff / Respondent's <br><br> V <br><br> "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953 <br>     Defendant / Debtor | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | MEMORANDUM OF LAW: POINTS & AUTHORITY IN SUPPORT OF AFFI- ANTS MOTION TO DISMISS, VACATE, & SET ASIDE INDICTMENT / PURSUANT TO: WRIT OF QUO WARRANTO/HABEAS CORPUS/PROHIBI- TION OF ERRORS; UNDER TITLE 28 U.S.C. § 3001, Subpara- graph 15; 28 U.S.C. § 1746; & F.R.Supp.P. 9(H) <br> U.S.D.C. Case #: 3-10CR-027-B <br><br> Defendant Appearing: Pro Se; By Special Appearance; <br> Counsel Appearing: Propria Persona; By Special Appearance; |
| "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953 <br> Apperaing As An Injured third Party Plain- <br> tiff, & As Beneficiary Of The Cestui Que <br> Vie "Constructive" Trust; <br>     Plaintiff / Debtor <br><br> V <br><br> The Corporate UNITED STATES, (1871) <br> "Eric Holder", (c) dba Attorney General US <br> "Jane Boyle", (c) dba District Court Judge <br> "Lisa Miller", dba U.S. Attorney <br> "David Scoggins", dba Attorney For Debtor <br> "Gary Fitzsimmons", dba Clerk Of Court <br> "Timmothy Geithner", dba Treasury Secretary <br>     Defendant's / Respondent's | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Jackie Harold, family of Zimmerman, Jr.", (c) 1953, Appear- ing "Amicus Curiae"; Regarding Commercial Appointment Of Debtor, "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953, & Timmo- thy Geithner As The Fiduciary Trustee of the Commercial Contract Treasury Direct Trust Account; <br><br> district court Case #: 3-10CV-027-B <br><br> "Jackie Harold, family of Zimmeramn, Jr.", (c) 1953 Appear- ing As The real Party In Interest/Agent/Sentient Living Be- ing; & As An Injured Third Party Plaintiff / Intervenor In Behalf of Debtor "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953, As The Registered Owner & Administrator Of The Cestui Que Vie "Constructive" Trust; Apperaing By Special Appearance, Ancillary Jurisdiction, & Common Law Venue; Pursuant To Title 28 U.S.C. 47, Recusal Of Judge; |

MOTION TO DISMISS THE INDICTMENT/VACATE THE JUDGMENT/SET ASIDE THE VERDICT/ SENTENCING, PURSUANT TO 28 U.S.C. § 3001, Subparagraph 15; BY A WRIT OF QUO WARRANTO/HABEAS CORPUS/PROHIBITION OF ERRORS 2241 WRIT OF SCIRE FACIAS; ALL PURSUANT TO A 2255 MOTION OF INEFFECTIVE ASSISTANCE OF COUNSEL;

re: U.S. V KIS, 658 F.2d 526-536 (7th Cir. 1981); Cert. Denied; 50 U.S. L.W. 2169; S.Ct. March 22, 1982: For Indeed, No More Than An Affidavit Is Necessary to Prove Affiants Prima Facie Case: For It Is To Say Indeed, Equality, Equity, & Human Dignity Under The Law Is Paramount, & Is Mandatory Under The Consti- tution of (1787) & Its Amended bill Of Rights of (1791); and,

NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL, & NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGFENT;

AN APOSTILLE AFFIDAVIT OF TRUTH; BY A VERIFIED PLAIN STATEMENT OF FACTS;

THAT WHEREAS, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, (hereinafter: "Affiant"), do hereby State & Affirm under Title 28 U.S.C. § 1746, per the pains & penalty of perjury, in behalf of the Debtor, "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953 (hereinafter: "Debtor"); that by this Apostille Affidavit of Truth & Affiants Certificate Of Live Birth Number: 02-8491_____, Name, Oath, & Signature, am competent to make & give testimony in the above Styled & Numbered Cause; That I am of legal age, with first hand know- ledge of the facts contained within; that the Statement(s), Attestment(s), & Declaration(s), their Docu- ment(s), Material(s), Instrument(s), Presentment(s), & Information(s), their documentation & ALL related endorsement(s), front & back, are true, accurate, correct, certain, & complete, & that they are not meant

JHZ08021953dc            Page # 1

nor intended to mislead, this is the best of my knowledge, beliefs & understandings, & that they are the truth, the whole truth, & nothing but the truth...So Help Me GOD...; and,

COMES NOW, I, "As The Undersigned Sovereign-In-Fact Sentient Living Being & Secured Party Claimant", appearing In Bar Of Propria Persona, in behalf of Debtor...appearing Pro Se, By Special Appearance, Ancillary Jurisdiction, & Common Law Venue; Pursuant to a Remedy "An Oppertunity To Cure, Settle, Fix The Discrimination, contest Acceptance, & Transmittence of Fund(s)/Bond(s)! THAT Aver, UNDER F.R.Civ.P. 8, I, As "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, in behalf of Debtor "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953 do hereby ACCEPT THE "ANY/ALL" CHARGES "past, present, & future" FOR FULL VALUE, HONOR, & CONSIDERATION, IN RETURN PLEASE USE MY EXEMPTION(S) AS PRINCIPAL FOR POST SETTLEMENT & CLOSURE OF U.S.D.C. CASE NUMBER 3-10CR-027-B, & C.U.S.I.P. and A.U.T.O.T.R.I.S. ACCOUNT NUMBERS [SOCIAL SECURITY #: 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], AS THIS ACCOUNT IS PRE-PAID IN-FULL & IS EXEMPT FROM TAX(S), LEVY(S), LIEN(S), DEBT(S), OBLIGATION-(S), LIABILITY(S), BILL(S), PRESENIMENT(S), PRODUCT LIABILITY(S), PROCEEDING(S) OF WHATSOEVER TYPE; and the The Secretary of the Department of Treasury & The Clerk Of The Court (Dallas Division) are now to required to collect ALL Fund(s)/Bond(s) & then relinquish them to Affiant; and set Affiant & Debtor Free Entitie(s); Dated: 09/12/2012 C.E., "Jackie Harold, family of Zimmerman, Jr.", (c) 1953 as the Undersigned Secured Party, Claimant, Grantor, & Holder-In-Due Course; /s/*Jackie Harold Zimmer*_____ suijuris;

AFFIANTS STATEMENT OF CAUSE: BY A VERIFIED PLAIN STATEMENT OF FACTS;

THAT WHEREAS, I, "Jackie Harold, family of Zimmeramn, Jr.", (c) 1953, do hereby respectfully request as to the above styled & numbered cause "3-10CR-027-B", for the violation of 18 U.S.C. § 2251(a)(e) & 2422(b), that pursuant to Affiant's Motion to Dismiss, Vacate, Set Aside Verdict/Indictment by a Sentient Living Being & (person) held in Federal custody; Per A Motion Under 28 U.S.C. § 2255 To Dismiss & Vacate Sentence/Verdict/Indictment, under the Constitution of (1787) Common & Civil Law Rights, In & For The UNITED STATES OF AMERICA (1789)! By An Original Extraordinary Writ Of Quo Warranto, Habeas Corpus, & Prohibition of Errors, as to INEFFECTIVE ASSISTANCE OF COUNSEL; & by/under 28 U.S.C. § 3001, Subparagraph 15, "THAT, no corporate or juristic entity, municipality, instrumentality, affiliate, or subdivision therefrom, nor their agency(s) or Agent(s) thereto, may harm, damage, or injure a "Sovereign-In-Fact Citizen" Sentient Living Being, without committing a criminal act "Concerted Action", which is defined as "Treason By Trespass Vi Et Armis"! And Aver, Affiant will show & demonstrate that these concerted actions did cause irreputable harm, damage, & injuries to a Sentient Living Being, by the Respondent's "Collective" Concerted action(s), by and through their illegal actions against a Debtor that they were not then nor are they now the Registered and Copyrights Owners of, nor are they the Authorized Representative thereof the same said Debtor; and,

THAT WHEREAS, do to & based upon and/or Plea errors, or Affiants Attorney concerted actions in conjucions with the aid of corporate UNITED STATES & its Agent(s), to which NO Contemporaneous objection(s) were made & now is Affirmed by the Two (2) new parcels of case law stated herein now in Affiant's case, it was Attorney David Scoggins concerted actions & the manipulations of the Plea Agreement Factual Basis; and,

THAT WHEREAS, Affiant in behalf of Debtor claims under same said states Law(s) & Regulation(s) entitled to a "Redress" of this his case, pertaining to the herein states & attested to issues, that he is in-fact by/under Law entitled to redress his case on appeal; especially in light of the Two (2) New Cited: Lafler v

Cooper, BL 67236; Missouri v Frye, 2012 BL 67235 (3/21/2012), due to U.S. v Frady, 456 U.S. 152, 167-68,

102 S. Ct. 1584 through 1595 @ 71 L.Ed.2d 816 (1982): Wherein the Court did determine that a Affiant was, &

now is by law entitled to obtain Collateral relief under 28 U.S.C. § 2255 and/or on direct appeal; And

Aver, under F.R.Civ.P. 60(b)(1) through (6), requesting an order setting aside the judgment entered in this

action Dated: 03/03/2011, for 18 U.S.C. § 2251(a)&(e). & 2241(b); and, S.C. § 2251(d)(e); and,

THAT WHEREAS, extraordinary circumstances in this case requires that the judgment entered in this action

be set aside, & no other grounds other than under Rule 60(b), & that there is no other procedure available

to grant this relief that justice requires! Aver, in particular, as more fully shown in the Affiants Affi-

davit of Truth presented by Secured Party Affiant & Debtor, "Warranting Relief"; and,

THAT WHEREAS, Affiant moves this Honorable Court To Dismiss The Indictment/Cuase/True Bill Of Commerce,

Particulars, and/or Indictment, pursuant to Rule 12(b) of the F.R.Crim.P.! And Thus Aver, this Motion "A

2255" is made on the following grounds; and,

1. THAT, this Court is without jurisdction because the offence, is cognizable ONLY in The Territories of

   Corporate UNITED STATES, District Of Columbia, under the Uniform Commercial Codes; and,

2. THAT, the True Bill of Indictment, does not state the evidencuary facts/charges sufficient to constitute

   an Offense against the UNITED STATES OF AMERICA (1787 – 1789); and,

3. THAT, the Defendant/Debtor has been convicted of the offense charged in the True Bill Of Indictment in

   the case of UNITED STATES v "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953, in the District Court, Northern

   District of Texas, For The Corporate UNITED STATES, Case No.: 3-10CR-027-B; and,

4. THAT, there are Two (2) cases "Lafler v Cooper, supra, & Missouri v Frye, supra", which focuses on the

   defense counsel behaviour! Aver, in Affiant's case, Counsel "David Scoggins" did not inform/apprise Af-

   fiant of his remedys under the Uniform Commercial Codes (hereinafter: "UCC"), nor as to the Plea Offer,

   & as to the terms & legality, comprising as to, esp. waiving appeal & to amount of time to serve in Pri-

   son, as with Frye, supra, Affiant then claims his Sixth (6th) Amendment Right to Effective Assistance of

   Counsel, which was violated in this cuase by Attorney David Scoggins! Aver, had Affiant been told what

   the Plea Agreement consisted of & what it did not consist of, Affiant would have in ALL probability gone

   to a Trial By Jury, guaranteed under Article III, Section 2, Clause 3 of the UNITED STATES OF AMERICA'S

   Constitution of (1787); and THAT any/all Plea Bargains & Plea Agreements are [Un]Constitutional; and,

5. THAT, "Criminal jurisdiction of the federal courts, is restricted to federal reservations, over which

   the Federal Government has exclusive jurisdiction, as well as to forts, magazines, arsenals, dockyards,

   or other needful buildings"; Cited: United States Codes, Title 18 U.S.C. § 451, Par. 3d; and,

6. THAT, "Who Has The Jurisdiction": The presumption of law is that ALL federal Legislation is territorally

   limited to include ONLY the District of Columbia, & the territories under the "sovereignty of" & "sub-

   ject to the jurisdiction of" the United States, unless a counter intent to include the 50 States is

   specifically stated; and,

7. THAT, except for those powers specifically delegated to the federal government in the Constitution of

   (1787), each of the States is a seprate contiguous nation, subject to its own laws, with its own juris-

   diction! Aver, in discussing the subject of federal jurisdiction in Pollard v Haran, 44 U.S. 213m 221,

223 the Court ruled, as follows: "the United States never had any municipal sovereignty, jurisdiction, or a right of soil in Alabama or any of the new states which were formed; and the United States has NO Constitutional capacity to exercise municipal jurisdiction! Aver, Sovereignty or eminent domain, within the limites of a state or elsewhere, except in the cases in which it is expressly granted...Alabama is therefore entitled to the sovereignty & jurisdiction over ALL territories within her limits, & is subject to common law"; and,

8. THAT, Title 18 U.S.C. § @ 47 specifies that the "territorial jurisdiction" of the United States extends ONLY OUTSIDE the boundaries of lands belonging to any of the 50 States; and,

9. THAT, the states are sperate sovereigns with respect to the federal government"; Cite: Heath v Alabama, 474 U.S. 187; and,

10. THAT, "there is a canon of legislative construction which teaches Congress, unless a contrary intent appears [legislation] is meant to apply ONLY within the territorial jurisdiction of the United States"; Cite: U.S. v Spelar, 338 U.S. 217 @ 222" and,

11. THAT, "All legislation is prima facie territorial"; Cite: American Banana Co. v U.S. Fruit, 213 U.S. 347 @ 357-358; and,

12. THAT, Federal Jurisdiction Lies Inside The Boundaries Of A State: "In New Orleans v U.S., 35 U.S. (10 Pet.) 662 (1836), the U.S. Supreme Court Stated: "Special provision is made in the Constitution of (1787) for the cession of jurisdiction from the states over places where the federal government shall establish forts or other militray works! And Aver, it is ONLY in these places, or in territories of the United States, where it can exercise a general jurisdiction"; 10 Pet., @ 737; and,

13. THAT, Judicial Jurisdiction Is: "The AUTHORITY OF A COURT TO BEAR & DECIDE AN ACTION & THE AUTHORITY TO PROSECUTE! Aver, BEFORE A COURT CAN ACT, IT MUST HAVE JURISDICTION OVER BOTH THE PERSON & THE SUBJECT MATTER! And Aver, [IF] EITHER IS WANTING, THE COURT IS WITHOUT JURISDICTION & THE CASE MUST BE DISMISSED"; and,

14. THAT, "No sanction can be imposed absent proof of jurisdiction"; Cited: Stanard v Olesen, 74 S.Ct. 768";

15. THAT, There Are Two (2) Major types Of Jurisdiction, "personal jurisdiction" & "Subject matter Jurisdiction", and they are as follows:

a. THAT, Personal (personum) jurisdiction refers to the geographical district over which the authority of the court extends! For example; [IF] someone broke a/the law in Nevada, Utah would NOT have jurisdiction over that person! Aver, it also refers to "WHO" a statute is applicable to! And Aver, the United States DOES NOT have jurisdiction over those NOT subject to its jurisdiction"; and,

b. THAT, Subject Matter Jurisdiction is defined as the court's authority to hear a given type of case! For Example; The federal court ONLY has subject matter jurisdiction over those powers specifically delegated to it in our Constitution of (1787)! Aver, Subject matter jurisdiction also deals with the types of cases particular courts have authority to hear! For Example; A Criminal case could not be heads in the Small Claims Court; and a Divorce case could not be heard in a traffic court; and,

c. THAT, in matters of non-appropriation direct taxes on compensation for labor earned in a common, lawful & unregulated occupation, the federal government has neither personal nor subject matter jurisdiction over Citizens of the 50 Sovereign States who are NOT federal government employees; and,

JHZ08021953dc                    Page # 4

ONCE, CHALLENGED, JURISDICTION CANNOT BE "ASSUMED" IT MUST BE PROVED TO EXIST;

Cited: Stuck v Medical Examiners, 94 Ca2d 751, 211 P2 389;

16. THAT, jurisdiction. once challenged cannot be assumed. & must be decided": Cite: Maine v Thiboutot 100 S.Ct. 2502; and.

17. THAT, Federal jurisdiction cannot be assumed. but must be clearly shown; Cite: Brroks v Yawkev. 200 F. 2d 633; and.

18. THAT, the major reason Citizens of the 50 United States Of America (1789) have been punished for laws that were not applicable to them, is because they did not challenge jurisdiction! Therefore Aver, they were "presumed" to be citizens subject to the territorial jurisdiction of the United States Federal Corporate Government; and,

19. THAT, rather than challenge the validity of the states, which is a futile effort in todays court's, the Sovereign-In-Fact Citizen should ALWAYS challenge the statute over the sovereign Citizen, under the Constitution of (1787) & the Law(s) In & For The United States of America (1789); and,

20. THAT, To Corporate UNITED STATES; CONGRESS; UNITED NATIONS: WORLD LEADERS: & INTERNATIONAL COURT OF JUSTICE! Aver, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953 (hereinafter: "Secured Party"), I am a Sovereign-In-Fact Citizen, Without Subjects, & I am a Foreign Nation (NOT A PERSON) whom rules authonomously, & is NOT subject to any entity or jurisdiction anywhere! And Aver, I AM NOT A Corporate UNITED STATES CITIZEN, I am a State of Texas National; and,

21. THAT, The International Court Of Justice, Article 34 & Article 65 'does not apply' to me, for I am a "Sovereign" States National Citizen; and,

COMMERCIAL CRIMES;

22. THAT, any/all actions/complaints/transactions initiated by the State and/or Federal agent's, are commercial in nature in light of the fact that they impose a quasi-monetary fine/tax in violation of Article I § 10, & Article 11 § 1, and/of the United States, a.k.a. Corporate United States Bankruptcy; and,

23. THAT, any/all of the following types of crimes, "Whether State or Federal", as offenses against the revenue laws; burglary; counterfeiting; forgery; kidnapping; larceny; robbery; illegal sale or possession of deadly weapons; prostitution (including soliciting, procuring; pandering; white slavery, keeping house of ill fame, & like offenses); extortion; swindling; & confidence games; attempting to commit, conspiring to commit, or compounding any of the foregoing crimes! Aver, addiction to narcotic drugs & use of marihuana will be treated as [IF] such were commercial crimes; under Article I § 10, & Article 11 § 1 "ALL CRIME IS COMMERCIAL"; and,

UNCONSTITUTIONAL STATUTES ARE NULL & VOID;

24. THAT, "All Laws Which Are Repugnant To The Constitution Are Null & void; Cite: Marbury v Madison, 5 U.S. 137, 174, 176; and,

25. THAT, UNCONSTITUTIONAL: Conflicting with some provision of the U.S. Constitution! Aver, a statue found to be unconstitutional is considered void or as if it had never been, & consequently all rights, contracts or duties that depend on it are Null/Void! Aver, no can be punished for having refused obedience to an unconditional law (Barron's Legal Dictionary);

26. THAT, The ONLY reason that there is NO LAW for the Sovereign-In-Fact "Sentient" American National Citizens of the Union Of Several States, which imposes a tax on compensation or ALL civil or criminal convictions, or for labor earned, is because, our Constitution bound our Congress & prohibited them from creating such a law! Aver, it is important to understand that the Internal Revenue Code's, is NOT unconstitutional ONLY because it DOES NOT impose such a tax; and,

27. THAT, for over Eighty (80) years Americans have been paying a tax or some sort unconstitutionally, & unbacked by law that wasn't applicable to them! Aver, this is a tax, levy, lien, debt, obligation, liability and/or indenturement or one type or another, that Americans merely "assume" they owe! And Aver, a question/sift commonly asked by Americans, when they initially learn that there is NO LAW within the Internal revenue Code's or any other Corporate United States Code's:...making them liable for the graduated income tax is, "As To The Five Wives Of Man...Who, What, Where, When, & Why", "Why did not the federal government just write a law to force Americans to pay a/the tax???"! And Yet Aver, the answer is that they have tried, but our supreme court, has always stopped them cold, by "Binding them to the chains of the Constitution"! Howerver Aver, The Constitution of (1787) is the "Supreme Law Of The Land" And Aver, The Constitution For The United States Of America (1789), under Article VI, Clause 2 & 3, is the (supremacy clause), which states in part:

"This Constitution, & the laws of the United States which shall be made in pursuance thereof...shall be the supreme law of the land; and the judges in every State shall be bound thereby...The Senators & Representatives & members of every State legislatures, & all executives & judicial officers of the United States and the union of several states, shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding"; and,

   a. THAT, at present times end, there are only thirteen (13) judges vested with the original jurisdiction under Article II § Section 2, Clause 3, having the judicial authority, & they "as are ALL Judges" are properly bound by the original jurisdiction under Article VI Oath "Oath Of Office, that is to be given before each & every proceeding that matter"! Aver, original jurisdiction lies in the Admiralty Courts & The U.S. Supreme Court under "Savings To Suitors" by & through F.R.Supp.P. 9(h)! Aver, these Judges left this "escape Hatch", else they could be 'legitimately charged with treason'! Thus, Aver under Title 28 U.S.C. § 3001, Subparagraph 15, which reads in part: "That NO juristic or corporate entity, municipality, instrumentality, affiliate, subdivision thereform, their Agency(s) or Agent(s) thereof, may harm, damage, or injure a Sentient Living Being, without committing a CRIMINAL ACT...& that criminal ACT is "Treason By Trespass Vi Et Armis"; and,

28. THAT, where rights secured by the Constitution are involved, there can be no rule making or legislation which wold abrogate them"; Cite: Miranda v Arizona, 384 U.S. 436 p. 702 (1996); and,

29. THAT, The Claim and exercise of a Constitutional Right cannot be converted in-to a cime", Miller v U.S;

30. THAT, The and/or [IF] the Attorney General cannot or will not certify the law or the evidence into the record by A Writ Of Certioria...A Certificate Of Actual & Expressed Authority Coupled With A Specific or Special Interest, that is an ONE Time ONLY Explicitly Written Agreement to the Federal Prosecutor of actual innocent, so that ALL party's may give testimony void of prosecution; See: Hale v Henkel, 50 L.

Ed. 652 (1906); therefore, no legitimate conviction can be had under it...even where there was a "jury" in-

volved in the trial! Aver, [IF] the judge tries to "run interference" on this very important subject

matter, or the Attorney General refuses to answer, I will ask/demand that the Judge Certify the Law &

the Court "under the pains & penalty of perjury...Title 28 U.S.C. § 1746"! And Aver, [IF] I, as the un-

dersigned Sovereign-in-Fact Sentient Living Being, am not released, & [IF] it is not immediately forth-

coming, I will have an appealable issue, "Which will be a Willful Breach Of Contract & Trust of Fidu-

ciary Duty promised & is owing to MY under the Judge's mandatory Article VI Oath"...in/to support this

Constitution" AD 1789/1791; and aver, I will attempt to file criminal charges against ALL Respondent's

31. THAT, extrapolating from the Court's opinion in Hill v Lockhart, 474 U.S. 52 (1985), & in a more recent

decsion; Padilla v Kentucky, 2010 BL 70791 (U.S. 2010), Justice, Anthony M. Kennedy held that the Sixth

Amendment guaranteed Frye the right to effective assistance of counsel during Plea bargaining, Both Hill

& Padilla focused on their Counsel's misadvice that did negate their Guilty Pleas! Aver, My Attorney

David Scoggins did not communicate the terms of the 'formal' Plea offer to Affiant in a mannor of rea-

sonableness, that whereby Affiant did understand the actual legalities of what accepting the Plea Agree-

ment meant, & that the Judge was not bound to the said Plea Agreement! Thus Aver, Affiant will show that

there is a reasonable probility that the end result of the Criminal process would in all probility been

more favorable, by reason of a Plea to a lesser charge, or a sentence of less prison time; and,

32. THAT, a petitioner as a Sentient Being in behalf of the Debtor must show or demonstrate both cause,

excusing his procedual default, & actual prejudice resulting from errors in the P.S.I., Attorney not ex-

plaining the/all the applicable Law's to Affiant, of which he complains to, See: Frady, supra, Using

the above cause & prejudice standards mandated under Frady, supra & Strickland v Washington, 466 U.S.

688 (1984)! Aver, Affiant claims that his Defense Attorney was clearly predicial due to the vast amount

of errors committed by Respondents, as attested to herein this Motion, concerning "David Scoggins"

complete misrepresentation & total  "ineffectiveness" as Counsel for Affiant & Debtor; See: Glasser v

U.S., 315 U.S. 60 (1942); and,

33. THAT, "Under A Writ Of Quo Warranto...As Filed Herein"...Where did the Court presumed authority derive

from, & by what authority did the Court use to convict Affiant with; and,

34. THAT, "Under A Writ Of Quo Warranto...As Filed Herein"...Is the Courts presumed authority superiour to

the Authority of our Living Father, or to A Sentient Living Being's Superiour Court under the Constitu-

tion of (1787), whereby a Citizen charged with a civil or criminal crime, shall have due process that is

judicated under the Law(s) & Regulation(s) of the Articles Of Confederation of (1776), The Constitution

of (1787), & its Amended Bill Of Rights of (1791)

35. THAT appearing under or by Special or Limited Appearance, Affiant is here by filing this Acceptance

Brief without prejudice under necessity pursuant to UCC 1-308, & not in/by any agreement to any contract

created "Cestui Que Vie or Use "Constructive" Trust/Contract" against Affiant consent or that in-fact

was signed under "Threat, Duress, and/or Coercion"! Aver, Affiant at this times end moment, do hereby

rescind any/all signature concerning this herein stated Contract "Cestui Que Vie or Use "Constructive"

Trust/Contract"; and,

JHZ08021953dc

36. THAT, "I, as the undersigned Sovereign-In-Fact Sentient Living Being, & Secured Party, Grantor, Claim-
ant, Paramount Creditor, Copyrighted & Registered Owner, Holder-In-due-Course of any/all properties
known as "DEBTOR, VESSEL, FICTION, PERSON, JURISTIC ENTITY, CORPORATE ENTY, OR STRAW-MAN", i.e. "JACKIE
HAROLD ZIMMERMAN, JR.", (c) 1953", refuse to participate in the Bankruptcy Actions of the Federal Cor-
porate United States Government, under House Joint Resolution 193 of June 5th, 1933 (hereinafter: "HJR")!
Aver, All Liability is hereby Discharged as to U.S.D.C. Case #: 3-10CR-027-B; and,

37. THAT, Presentment is hereby denied and/or refuted pursuant to/of any/all Document(s)/Instrument(s)...
"Held-In-Due-Course" that did or has created any Legal or otherwise Disability pertaining to U.S.D.C.
Case #: 3-10CR-027-B; and,

38. THAT, so that I "Affiant in behalf of Debtor" may better address MY Constitution-[al] right's & My UCC
Right's, to be told who the Principal is, & I demand to know under UCC 3-403.42, & to have then & as it
is now to be granted a legal remedy under the same said Documents, as.to having U.S.D.C. Case #: 3-10CR-
027-B dismissed with prejudice or that Affiant process & service the Bid, Perfomance & Payment Bonds; &,

39. THAT, I, therefore hereby "Refuse For Fraud" any Citation/Contract/Trust Agreement and/or Presentment
without dishonor, & I am without waiving MY rights pursuant to UCC 3-501, & UCC 3-505; Refuse for good
cause for the Deficiency on Contract cause number "U.S.D.C. Case #: 3-10CR-027-B; and,

40. THAT, I, do hereby & herein "DEMAND" to see the original International contract or Presentment with the
Federal Corporate Government Evidence that I am a Federal UNITED STATES corporate citizen or federal em-
ployee, and am thereby obligated by debt to contract #: U.S.C.D. Case #: 3-10CR-027-B; and,

41. THAT, as to number 40, the Court is also mandated to show & demonstrate that I as Affiant and as Debtor
did knowingly, willingly, voluntarily, intentionally...that by being given full knowledge of the facts
pertaining to this charges cause...did then commit & then sign any contract/trust of conviction of a
dishonored debt; and,

42. THAT, I, "therefore" invoke My/the Rights under the Constitution of (1787) & UCC 3-505.4, & do hereby
counter "DEMAND" the absolute Requirement of Presenter; 1. TO: a. Show, Exhibit, & Demonstrate the ac-
tual instrument/document that did in-fact create the liability, as to Contract "U.S.D.C. Case #: 3-10CR
-027-B"; b. To demonstrate ALL authentic reasonable identification to make such presentment/contract,
[IF] made for another, as in the Secured Party for Debtor; c. That the instrument be produced for accep-
tance or payment at a place specfied within it, or [IF] there be none, at any place reasonable under
the circumstances; d. A signed receipt of the Instrument for any or all partial or full payment, or as
to the Debt/Contract/trust pertaining to Contract/Trust Account #: U.S.D.C. Case #: 3-10CR-027-B; and,
2. Therefore, any failure to complywith any as such requirement invalidates the presentment & is Null &
Void, 'ab-initio'...Not Enforceable; and,

43. THAT, I, "AS the undersigned Secured Party Affiant", now present the My Right of Law/Remedy under and
pursuant to UCC 3-601.3, and I now therefore discharge any/all presumed liability(s), & do hereby close
this matter, U.S.D.C. Case #: 3-10Cr-027-B, as my Evidence verifies that the perponderence of law in my
favor, that, NO lawful Presentment has been made against My proper party "Jackie Harold, family of Zim-
merman, Jr.", (c) 1953, & that any/all charges "past, present, or future" shall be dismissed for fail-
ure to state a lawful claim upon which relief can be granted; and,

44. THAT, the term "Unconstitutionalbility" is defined as: A Doctrine under which courts may deny enforce-ment of unfair or oppressive contracts "Cestui Que Vie "Constructive" Trust / contract", because of proce-dural abuses arising out of the contract / trust formation by the Clerk of The Court, or because of sub-stantive abuses relating to the terms of the Contract / Trust; and as such terms which violate reasona-bleness or reasonable expectations of parties, or that whcih involves gross disparities in price/debt/or payment; either abuse can be the basis for a finding of [un]constitutionability; and,

45. THAT, the basic test of "[un]constitutionability" of a contract or Trust account, is whether under the circumstances existing at the time of making of the/a Contract or a Constructive Trust Contract, & in light of general commercial background & commercial needs of particular trade or case "U.S.D.C. Case #: 3-10CR-027-B", & their clauses involved are so one-sided as to opress or unfairly surprise a party; THAT under The Larrison Rule of Criminal Law: The doctrine that a defendant – Debtor, may be entitled to a new trial on the basis of newly discovered evidence or false testimony by a government witness, or as to a Change of Law, or as to a New Court Decision, as in "Lafler v Cooper, BL 67236, & Missouri v Frye, 2012 BL 67235 (3/21/2012),  & Hill v Lockhart, 474 U.S. 52 (1985); & Padilla v Kentucky, 2010 BL 70791 (U.S. 2010)", [IF] the jury might have reached a different conclusion without the evidence & it unfair-ly surprised the defendant at trial or during or at the Plea Agreement Hearing; See: Larrison v U.S., 24 F.2d 82 (7th Cir. (1928); and,

46. THAT, Typically the case in which [un]constitutionability is found involving gross overall one-sidedness or gross one-sidedness of a term disclaiming a warranty "Want or Warrant of Whatsoever Type", limiting damages, or granting procedural advantage! Aver, in these cases one-sidedness is often coupled with the facts that the inbalance is buried in small print, & often couched in language unintelligiable to even a person "Sentient Living Being" of moderate education! And Aver, Often the seller/prosecutor deals with a particularly susceptible clientele, as when an Attocney represents a defendant – Debtor in a civil or criminal action brought about either A State or Federal Corporated Government; and,

47. THAT, "Under The Uniform Commercial Code is Conveyed As Truth": 1. [IF] the court as a matter of law finds that the contract "Cestui Que Vie or Use "Constructive" Trust / Contract Account" or any clause of the same said Contract(s), to have been [un]constitutionable at the time the Contract/Trust was made the court may refuse to enforce the Contract/Trust, or it may enforce the remainder of the Contract/Trust without the [un]constitutionable clause, or it may so limit the application of any [un]constitutionable clause as to avoid any [un]constitutionable result which could make part or all of the Contract/Trust Null & Void; 2. When it is claimed or appears to the court that the contract/trust, or any clause there-of may be [un]constitutionable, the parties shall be aforded a reasonable oppertunity to present evi-dence as to its commercial setting purpose & effect to aid the court in making the Legal Constitution –[al] determination, & under the UCC @ 2-302; and,

48. THAT, Section 2-302 should be considered in conjuction with the obligation(s) of an"implied Covenant of good faith & fair dealings" imposed at several places in the UCC; See: e.g. U.C.C. 1-203; and,

49. THAT, Restatement of Contract/Trust: [IF] a Contract/Trust or a term thereof is [un]constitutionable at the time the contract/trust is created/made, a court may refuse to enforce the contract/trust, or it

may enforce the remainder of the contract/trust without the [un]constitutional terms, or it may limit the application of any [un]constitutional term as to avoid any [un]constitutional result! "Restatement, Second, Contracts, 208; and,

50. THAT, "Unconstitutionable Bargain, contract, or trust": A Plea Bargain, Plea Agreement, Presentment, Contract or Trust, or a/any clause in the same said instrument(s), that is go grossly unfair to one of the parties, because of stronger bargaining power, "As In The State Or Federal Prosecutor...Threatens, Coerce, or places an entity under duress", of the other party(s); usually held to avoid as against public policy! Aver, one which to NO man in his senses, NOT under delusion, would make, on the one hand, & which NO fair & honest man would accept, on the other hand; See: "Also Unconstitutionability"; and,

51. THAT Unconstitutional: That which is contrary to, or in conflict with a or "WE THE PEOPLE'S CONSTITUTION of (1787)"! Aver, The Opposite of Constitutional, (q.u.); and,

52. THAT, this word is used in to different sense, is that the legislation conflicts with some recognized general principal! Aver, that this is no more than to say that it is unwise, or is based upon a wrong or unsound principle, or conflict with a generally accepted policy! And aver, the other, which may be called the American sense, is that, that the legislation conflicts with some provision of our written Constitution of (1787), which it is beyond the power of a legislative body to change; See: "Also Unlawful"; As in Article IV, Section 4 of the Constitution of (1787), which reads in part: That the Citizens for their Prosperity Shall from this date foreward enjoy a Republican Form Of Government"; and,

### UNIFORM COMMERCIAL CODES;

53. U.C.C. 1-207; The making of a valid reservation of rights preserves whatever rights the person or Sentient Living Being then posses & presents the loss of such rights by application of concept of waiver or estoppl! Aver, a reservation of rights can ONLY reserve a right that is existing, & the failure to make a reservation thereof causes a loss of that right, & bars its assertions at a LATER DATE; and,

54. Estoppl's: A restraint arises where a person or Sentient Living Being has done some act that the policy of law will not permit him to deny, or that will not permit a certain arguement because it would lead to an unjust result;and,

55. U.C.C. 1-103.6: The Code is complimentary to the common law which remains in enforce as is the Entire Constitution of (1787), except where displaced by the code! Aver, A statute should be construed in harmony with the common law(s), unless there is a clear legislative intent to abrogate the common law; &,

56. U.C.C. 3-305: Refuse to participate in the bankruptcy action of the corporate united states government! Liability discharge: Presentment denied or refuted; and,

57. U.C.C. 3-305.2(c)" Government officials have a duty to inform you "Both The Debtor & The Sovereign-in-Fact Sentient Living Being" of your rights & remedies; Officials have a responsibility to tell you of any pending responsibility on your part, & to inform you of ALL the terms of the agreement; and,

58. U.C.C. 3-305.52: Produce ALL document "held in due course" that creates any legal disability; and,

59. U.C.C. 3-401.1" No one is liable on an instrument unless they sign it without "Threat, Duress, or Coercion";

60. U.C.C. 3-403.42: You have the right to be told who the principle is, or is in the matter; And Aver, As

the Secured Party Claimant, Grantor, Guarantor, Registered & Copyrighted Trade Name/Mark Owner, Paramount Creditor, & Holder-In-Due-Course of the Properties known as "DEBTOR", I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, as per the same said Cites of Law, Regulations, & Codes, I DEMAND that this Contract/Trust Account "U.S.D.C. Case #: 3-10CR027-B, which is pre-paid in-full & that is exempt from tax, levy, lien, debt, obligation, liability, bill, procedure, product liability, or presentment of whatsoever type, be discharged for value, as principal for post settlement & closure of the same said account;

## F E D E R A L   J U R I S D I C T I O N :

PREAMBLE: The Legal effect of the Declaration of Independence was to make each new state a spearate & independant sovereign over which there was no other government of superior power or jurisdiction! Aver, this was clearly shown in M'Ilvaine v Coxe's Lessee, 8, U.S. (4 Cranch) 209, 212 (1808), where it is held:

"This opinion is predicated upon a principle which is believed to be undeniable, that the serveral states which composed this Union, so far at least as regarded their municipal regulations, became entitled, from the time when they declared themselves independent, to all the rights & powers of sovereign states, & that they did NOT derive them from concessions made by the British King! The treaty of peace contains a recognition of their independance, not a grant of it! From hence it results, that the laws of the several states governments were the laws of sovereign states, & as such were obligatory upon the people of such states, from the time they were enacted"; and,

61. And a further expression of similar import is found in "Harcourt v Gaillard, 25 U.S. (12 Wheat.) 523, 526, 527 (1827), where the court stated:

a. "There was no territory within the United States that was claimed in any other right than that of some one of the confederated states; therefore, there could be no acquisition of territory made by the United States distinct from, or independent of some one of the states; and,

b. "Each declared itself sovereign & independent, according to the limits of its territory"; and.

c. "[T]he soil & sovereignty within their acknowledged limits were as much theirs at the declaration of independance as at this hour"; and,

62. THAT, in July of 1776, the New States unequivocally possessed all sovereignty, power, & jurisdiction over all the soil & persons in their respective territorial limits; and this supreme condition of sovereignty of each State over all property & persons within the/their borders thereof continued notwithstanding the adoption of the Articles of Confederation of (1776)! And aver, In Article II of the said document it was expressly stated:

"Article II: Each state retains its sovereignty, freedom, & independance, & every Power, Jurisdiction, & Right, which is not by this confederation expressly delegated to the United States, in Congress Assembled"; and,

63. THAT, under the Articles Of Confederation, the essence of this retention of state jurisdiction was embodied in Article I, Sec. 8, Cl. 17 of the U.S. Constitution of (1787), which reads as follows:

"To exercise exclusive legislation in all cases whatsoever, over such District (not exceeding ten miles square) as may, by cession of particular States, & the Acceptance of Congress, become the Seat of the Government of the United States of America, & to exercise like Authority over all Places purchased by the

Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, & other needful things"; and,

64. THAT, perhaps on of the earliest decision as to jurisdcition was: U.S. v Bevans, 16 U.S. (3 Wheat.) 336 (1818), which involved a federal prosecution for a murder committed on board the Warship Independance! The Defense argued or complained that ONLY the State has jurisdiction to prosecute, & thusly argued that the federal Circuit Court had no jurisdcition! Aver, in the arguement before the Supreme Court, counsel for the United States admitted as follows:

"The exclusive jurisdiction which the United States has in forts & dock-yards ceded to them, is derived from the expressed assent of the State, by whom the cessions are made! It could be derived in no other mannor; because without it, the authority of the state would be supreme & exclusive therin", 3 Wheat., at 350, 351"; and,

65. THAT in holding that the State of Massachusetts had jurisdiction over crime, the Court held:

a. "What, then, is the extent of jurisdiction which a State possesses"?; and,

b. "We answer, without hesitation, the jurisdiction of a State is co-extensive with its territories; and co-extensive with its legislative power", 3 Wheat., at 386, 387; and,

c. "The article which describes the judicial power of the United States is not intended for the cession of territory or of general jurisdiction...Congress has power to exercise exclusive jurisdiction over this district, & over all places purchased by the consent of the legislature of the State in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, & other needful buildings"; and,

d. "It is observable that the power of exclusive legislation (which is jurisdiction) is united with cession of territory, which is to be the free act of the States! It is difficult to compare the two sections together, without feeling a conviction, not to be strengthened by any commentary on them, that, in describing the judicial power, the framers of our constitution had not in view any cession of territory; or, which is essentially the same, of general jurisdiction", 3 Wheat., at 388; and,

66. THAT, as in Bevens, the Court established a principle that federal jurisdiction extends ONLY over the areas wherein it possess the power of exclusive legislation, & this is a principle incorporated into all subsequent decisions regarding the extent of federal jurisdiction! Aver, to hold otherwise would destroy purpose, intent & meaning of the entire U.S. Constitution of (1787); and,

67. THAT, the decision in Bevens was closely followed in decision made in two states court & one federal court within the very next two years! Cite: Commonwealth v Young, Brightly, N.P. 302, 309 (Pa. 1818), the Supreme Court of Pennsylvania was presented with the issue of whether lands owned by the United States for which Pennsylvania had never ceded jurisdiction had to be sold pursuant to state law! In deciding that the state law of Pennsylvania exclusively controlled the sale of property, the Court held: "The legislation & authority of congress is confined to cessions by particular states for the seat of government, & purchases made by consent of the legislature of the state, for the purpose of erecting forts! The legislative power & exclusive jurisdiction remains in the several states, of all territory within their limits, not ceded to, or purchased by, congress, with the assent of the state legislature, to prevent the collision of legislation & authority between the United States & the several states"; &,

68. In People v Godfrey, 17 Johns, 225, 233 (N.Y. 1819). the court held that the fort(s) was subject to the jurisdiction of the State since the lands therefore had not been ceded to the United States! The rational of its opinion stated:

"To oust this state of its jurisdiction to support & maintain its laws, & to punish crimes, it must be shown that an offense committed within the acknowledged limits of the state, is clearly & exclusively cognizable by the laws & courts of the United States! In the case already cited, Chief Justice Marshall observed, that to bring the offense within the jurisdiction of the courts of the union, it must have been committed out of the jurisdiction of any state, it is not (he says), the offense committed, but the place in which it is committed, which must be out the jurisdiction of the state"; and the case relied upon by this court was U.S. v Bevens, supra; and,

69. THAT, the only provision in the Constitution of (1787) which permits jurisdiction to be vested in the United states is found in Article I, Sec. 8, Cl. 17, which provides the mechanism for a voluntary cession of jurisdiction from any State to the United States! Aver, when the constitution was adopted, the United States had jurisdiction over no lands within the States, possessing jurisdiction ONLY in the lands encompassed in the Northwest Territories! And Aver, shortly thereafter, Marland & Virginia ceded jurisdiction to the United States for Washington, The District Of Cloumbia! Yet Aver, as time progressed thereafter, the States at verious times ceded jurisdiction to federal enclaves within States; Yet, today, the territorial jurisdiction of the United states is found ONLY in such ceded areas, which encompass Washington, D.C, the federal enclaves within the States, & such territories & possessions which may be now owned by the United states; and yet, the above conclusion is not the mere opinion of the author of this brief, but it is likewise that of the federal government itself! For Aver, in June 1957, the government of the United States published a work entitled Jurisdiction Over Federal Areas Within The States: Reports of the Interdepartmental Committe for the Study of Jurisdiction Over Federal Areas Within The States, Part II, which report is the definitive study on this issue, where therein the Committee stated:

a. "The Constitution give express recognition to be one means of Federal Acquisition of Legislative Jurisdiction...by State consent under Article I, Sec. 8, Cl. 17...Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, & that if this mode is not pursued, no transfer of jurisdiction can take place", Id. At 41; and,

b. "It scarcely needs to be said that unless there has been a transfer of jurisdiction; 1. pursuant to clause 17 by a Federal acquisition of land with the State Consent; or 2. by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise by the State, subject to non-interference by the State with Federal functions", Id., at 45; and

### FEDERAL CRIMINAL JURISDICTION:

70. THAT, "The law of Congress in respect to those matters do not extend into the territorial limits fo the states, but have force ONLY in the District Of Coulmbia, & other places that are within the exclusive jurisdiction of the national government"; and,

71. THAT, "it is a well established principle of law that ALL federal "legislation applies ONLY within the territorial jurisdiction of the United States unless a contrary intent appears"; See: Caha v U.S., 152 U.S. 211, 215, 14 S.Ct. 513 (1894), further case, please refer to "Exhibit A-1, Federal Jurisdiction, pgs 13 & 10, primarily expresses; That "It is scarcely needs to be said that unless there has been a legally transfer of jurisdiction; 1. pursuant to clause 17 by a Federal acquisition of land with the States Legislature consent; 2. by cesssion from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, The Federal Government possess no legislative jurisdiction over any area within a State, such jurisdiction being for exercise by the State, subject to non-interference by the State with Federal functions", Id., at 45; and,

a. "The Federal government can not, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State"; Id., at 46; and,

b. "On the other hand, while the Federal Government has power under various provisions of the Constitution to define, & prohibit as criminal, certain acts or omissions occuring anywhere in the United States, it has "NO" power to punish for various crimes, "Except for (Espionage; sabotage; Interference with the mail; Destruction of Federal Property; & Fraud on the Federal Government – ONLY); See: United States Code, Title 18 § 451, par. 3d, in a letter by the then Attorney General to the Chairman of the Senate Finance Committee! Aver, this type of jurisdiction over which is retained by the State under our Federal – State system of government, unless such crime occurs on areas as to which legislative jurisdiction has been vested in the Federal Government", Id., at 107; and,

72. THAT, because the statutory language, certain federal drugs law operate extra-territorially; See: U.S. v King, 552 F.2d 833, 851 (9th Cir. 1976)! Yet Aver, the United states has territorial jurisdiction ONLY in Washington, District of Columbia, & the federal enclaves within the States, & in the territories & insular possessions of the United states! However Aver, it has NO territorial jurisdiction over non-federally owned areas inside the territorial jurisdiction of the States within the American Union of Several States! And aver, this proposition of law is supported by literally hunderds of cases;. and,

73. THAT, as a general rule of law, the power of the United States to criminally prosecute is, for the most part, confined to offenses committed within "its limiled jurisdiction, "See: # 71(b)"! Aver, this is clearly born out simply by examination of Title 18, U.S.C. § Section 5, that thereof defines the term "United States" in clear & percise jurisdictional terms/language; Section 7 of the same contains the fullest statutory definitions of the "jurisdiction of the United states"; "The U.S. District courts have limited jurisdiction of offenses occuring within the "United States" pursuant to Title 18, U.S.C. § Section 3231; (please refer to page 11 of the Federal Jurisdiction Exhibit, par. 3 & 4); which states in part; "Without proof of the requisite ownership or possession of the United States, the crime has not been made out; U.S. v Watson, 80 F.Supp. 649, 651 (E.D. Va. 1948), Which the federal criminal charges were dismissed for lack of federal jurisdiction; and,

74. THAT, [IF] a defendant contends that ONLY the federal government has jurisdiction over the offense, he, as proponent for the exercise of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed, & state cession of jurisdiction; See: State v Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977); "The State has jurisdiction over federal lands in the public domian, the state not hav-

ing ceded jurisdiction of that property to the United states; and,

JURISDICTION IS FURTHER INVOKED AT:

75. THAT, Rule 60 of the F.R.Civ.P. is Affiants independant action by an Extraordinary Writ(s): Quo Warranto; Habeas Corpus; Prohibition of Errors Coram Nobis, Under 28 U.S.C. § 2201 et seq. for Declaratory Judgment, & 28 U.S.C. § 2241 et seq., for the original writ of habeas corpus & quo warranto; which exemplifies Affiant existing case, where there is already a judgment; Thus, Affiants Motion To Vacate Judgment/indictment; and, "Exhibit A-2 "Proper Federal Indictment Procedures" for item # 76; and,

76. THAT, within the Federal Rules Of Procedure, it is important for the Court to know that the rules preserve Affiants Constitutional Secured Rights! Aver, the Authority for the Supreme Court or for an Inferiour Court to promulgate Rules of Procedure, is at 28 U.S.C. § 2072 & 2072(b) which preserve Constitution Rights: "(b)" Such rules shall not be abridges, abrogate, enlarge or modify any substantive right", & "The Federal Rules of Civil & Criminal Procedures, preserve an American National Citizens Secrued Rights"; and,

77. THAT, ALL Federal Courts, including the Supreme Court, are courts of "Limited Jurisdiction" (See: Page 14 at 71(b), 73, & 74; As to the common law jurisdiction over historically recognized crimes, etc., is reserved to court of the several States within their respective borders! And Aver, the 10th Amendment imposes this/these "limitations": 10th Amendment: The power's not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people; & which power's not enumerated in the Constitution, primarily in Article I, Sec. 8, Federal Government lacks subject matter jurisdiction within the Union of Several States! Aver, which provides the framework for what is known as the "arising under clause" at Article III, Sec. 2, Cl. 1 of the Constitution: Sec. 2: The Judicial Power shall extend to all cases, in Law & In Equity, "For It Is To Say, Indeed, Equality, Equity, & Human Dignity Is Paramount Under The Law, & Is Mandatory Under The Constitution (1787)" arising under this Constitution, the Laws of the United States, & Treaties made, or which shall be made, under their Authority; and,

78. THAT, where viewing the Constitution as a corporate charter, it enumerates powers of the Government of the United states, & with those powers distributed among three department or branches; "The Legislative, The Executive, & The Judicial", that in rare & limited cases, one branch cannot exercise power of another! See; Article I, Sec. 8, Cl. 18: [Congress shall have Power] to make all laws which shall be necessary & proper for carring into Execution the foregoing Powers, & all other Powers vested by the Constitution in the Government of the United states, or in any Department or Officer thereof; And Aver, in order for the Federal Corporate or Constitution Government to prosecute it must: 1. identify an appropriate statute; 2. prove application of a liability statute, before a penalty statute is applicable; Without these two elements, a Federal Court lacks subject matter jurisdiction to impose a penalty, whether civil or criminal! Aver, this principle applies to nearly all Federal Penalty Statutes, whether relating to tax, commerce, securities or anything else, without a preexisting liability to perform or refrain from any given activity, a Federal penalty statute does not apply, unless all elements are in place, the Department of Justice & the U.S. Attorney & The U.S. Attorney General or whatever has failed to meet threshold criteria for the burden of proof, within the effect being that the Federal Court lacks subject matter jurisdiction; and,

80. THAT, for jurisdiction to be established, there is an additional important element of proof the Federal Court must provide: "What is the geographical application of any given law or set of laws?!; See: Foley Brothers, v Filardo (1948) 336 U.S. 281; which states in part: "It is a well established principle of law that all federal legislation applies ONLY within the territorial jurisdiction of the United States, unless contrary intent appears"; See: Article I, Sec. 8 of the Constitution; That to exercise a general power enumerated power, the application is Limited to the geographical United States, i.e. territory belonging to the United States, refering to the element of proof as to the subject matter jurisdiction, & the U.S. Attorney General has the burden of proof, & it must prove the venue or geographical application of any given Statute! For Aver, Congress did not vest the Federal Courts, State Courts, or the Supreme Court, with all available jurisdictional powers enumerated in Article III, Sec. 2 of the Constitution. for in/under 28 U.S.C. § 2072(b), the Federal Rules of Procedure may not deprive anyone of his/her substantive rights;

81. THAT, at 18 U.S.C. § 3045 we find authorization for who may set the criminal prosecution process in motion via an Affidavit of Complaint: Warrants of arrest for violations of internal revenue laws may be issued by United States magistrates upon the complaint of a United States Attorney. Assistant U.S. Att., Collector, or Deputy Collector of Internal revenue or revenue agent or private Citizen: and no such warrant of arrest shall be issued upon the complaint of a private Citizen unless first approved in writting by A Writ of Certoria - A Certificate Of Actual and/or Expressed Authority Coupled With A Special Interest, that is an Explicit One Time Only Written Agreement Of Actual Innocence from the Attorney General to the U.S. Federal Prosecutor", in other words, an U.S. Attorney cannot make the Affidavit of Complaint unless he was personally involved with the investigation process, & has hands-on involvement with securing & examining evidence; and,

82. THAT, under Rule 6(b)(1), Challenges; The U.S. Attorney or a defendant may challenge the array of jurors & the Grand Jury Indictment itself, & upon cause the U.S. Attorney or the defendant may move to dismiss the indictment or stay the proceedings on the grounds of substantial failure to comply with the provisions of Title 28 U.S.C. § 1867 & 1867(e), & Rule6(b)(1); And Aver, Affiant is issuing a Facial Challenge as to the Grand Jury arrays & The Indictment itself; and,

FEDERAL JURISDICTION, SUPPLIMENT;

83. THAT, jurisdiction is further invoked at 28 U.S.C. § 2255, pertaining to "ineffective assistance of counsel", & at 28 U.S.C. § 2241(a) & 2243 in particular, the term of Federal Custody is being determined in direct violation of Article III, Section 2 Clause 3 & Article 5 of the Bills Of Rights, in that at 28 U.S.C. § 3001, subparagraph 15, states in part: "No juristic or corporate entity, their agency(s) or agent(s) therefrom/to may harm, damage, or injure a Sentient Living Being, without committing a criminal act, & that criminal act is "Treason By Trespass Vi Et Armis"; and,

84. THAT, jurisdiction is further invoked at 15 U.S.C. § 77(b) and as per a Writ of Scire Facias/Quo Warranto; By What Authority Does The Court Have To Prosecute or to proceed with the prosecution of A Sovereign-In-Fact Sentient Living Being "Citizen", also under Article IV, Section 4 of the U.S. Constitution of (1787); and at/by a Writ of Habeas Corpus; By What Body Of Evidence that was certified & read into the record before the Plea Bargain Agreement Hearing, did the Court Use To Convict Affiant/Debtor With;

85. THAT, jurisdiction is further invoked at 28 U.S.C. § 1331 & 1334, that states in part: Any Act's and/or Omissions of Act's, whether intentional or direct by & through a Public Official of a State of Federal Governmental Agency thereform the "United States Incorporated by & through an Article I Administrative Court, "Rather than an Article III Common Law Venue Court", that did cause irreparable harm, damage, or injury to Affiant by & through Debtor, by their concerted actions did violate 28 U.S.C. § 3001, subparagraph 15, of the United States codes under the U.S. Constitution of (1787); and that no Actions or acts shall be created or taken by the same said entities, & that the same said Judicial Court Systems therin shall not be abridged, abrogates, disminished, or contrifuted; and,

86. THAT, jurisdiction is further invoked at 28 U.S.C. § 1346(f), 1367, & 1391; that states in part: That the Affiant is filing in behalf of Debtor for a Declaratory Judgment, By Special Appearance, "Rather That By General Appearance", Ancillary Jurisdiction & Common Law Venue, at/in Admiralty Under Article III, Sec. 2, Cl. 3, & at 28 U.S.C. § 47: No Sitting Judge Shall Hear, nor Determine The Outcome Of An Appeal by this Defendant/Debtor, that he has sat in judgment prior to or as to this Case, before; and,

87. THAT, jurisdiction is further invoked at 28 U.S.C. § 1334(4) & F.R.Crim.P. 52(a) & 60(b); in That Affiant in behalf of Debtor, seeks a redress of the deprivatives of error's caused or committed by or in part of the Court, The Government's Prosecutor, or Affiant's Attorney; and that any errors made or committed by the Court of any of its Officers, shall be corrected by the said Court, to relected the Lawful Form Of JUSTICE, WHICH Right's were/are guaranteed by/under the U.S. Constitution of (1787), The/Its Amended Bill Of Right's of (1791), & the Articles Of Confederation of (1776); and,

88. THAT, jurisdiction is further invoked at or under F.R.Crim.P. 12(b)(3)(A)&(B), F.R.Supp.P. 9(h) & E8; & at 28 U.S.C. § 515(a) & C.F.R. 28...13, .15, .17, 50.02, 52.9, 55 & 56; & at 18 U.S.C. § 6001 to 6005 & 3331 to 3334; and,

89. THAT, Affiant in behalf of himself & in behalf of Debtor, recends any/all prior signatures from the date of Affiants/Debtors arrest & the date of any complaint is written against Debtor, or that any wants/warants was issued aginst Debtor or Affiant, that deals in any proable way with Case # 3-10CR-027-B, & that is or as that applies to any/all derivatives or veriations in the spelling of Affiant's or Debtor's names or in the appellation of same said names; and,

AFFIANTS/DEBTORS APOSTILLE AFFIDAVIT OF TRUTH: BY A VERIFIED PLAIN STATEMENT OF FACTS;
GROUNDS FOR RELIEF;

90. THAT, this Motion To Dismiss the Governments Judgment/To Vacate The Indictment, is made pursuant to the above & following Cited Articles of Confederation of (1776), The U.S. constitution of (1787) & its Amended bill of Rights of (1791), In & for The United States Of America (1789), & for its Citizens Prosperity & their Inalienable Rights of Sovereignty; and,

91. THAT, the Court's in the Northern district of Texas "The United States District Court's"..."As Apposed to the district court, In & for The United States Of America (1789)", were/are without jurisdiction of the offenses, [If] any, was & Now is [in]cognizable, in that the True Bill Of Indictment/Commerce/Particulars was never read into the record, nor was it ever certified by nor Authorized by the Corporate Federal U.S. Government, nor by its Agent(s)/Attorney General or one of is Agent(s), by a Writ Of Certiorari/Certific-

ate Of Actual and/or Expressed Authority Coupled With A Specific Interest, that Is A One Time ONLY Writ-
ten Agreement Between the U.S. Attorney & U.S. Federal Prosecutor of Actual Innocence, so that ALL par-
ties may give testimony freely & without threat of prosecution (See: Hale V Henkel, 50 L. Ed. 652); And
Aver, this instrument is also called a Certificate Of Authentication of Apostille, Verified under Title
18 U.S.C. z 6001 to 6005, & 3331 to 3334; or at 28 U.S.C. § 515(a) & 245(a)! Thus, with this being the
correct law, then the Bill Of Commerce/Indictment/Particulars was & still is this day "Fraudulant, & the
or thoes whom were running the scham, committed "Treason by Trespass Vi Et Armis"; and,

92. THAT, the Bill Of Commerence/Indictment/Particulars was never read into the record, nor did it ever state
the true facts of the governments cause, nor was it ever certified as being true, correct, accurate, cer-
tain or complete by A Writ Of Certiorari/Authentication, which did not, nor does not constitute an offen-
ce a'gainst the United States Of Amercia (1789), nor a'gainst the Corporate United States; and,

93. THAT, the Charging Instrument, "The Bill Of Commerce/Indictment/Particulars" was never authorized under
the Constitution of (1787) nor judicated in an Article III Court, under Article III, Sec. 2, Cl. 3, nor
was it ever ceritifed by the U.S. Federal Prosecutor! Thus Aver, the so-called indictment is barred by
statute of limitations, because it was not certified under Actual Innocence or filed within three years o
of the alleged offense's were committed; and,

94. THAT, Affiant, in behalf of Debtor is more than willing to make a Plea of Guilty, But ONLY Under & ONLY
[IF[ the district court, In & for The United States Of America (1789), c/o: The United States District
Court, For The Northern District Of Texas, Dallas Division, will stipulate that the Debtor by & through
Affiant can Plead as to F.R.Civ.P. 8, & that The Sitting Judge Will give An Article VI Oath under the
Constitution of (1787), & the Federal Prosecutor will certify the Charges & then read them into the re-
cord, under a Writ Of Actual Innocence; and,

AFFIANIS APPOSTILLE AFFIDAVIT OF TRUTH UPON WHICH RELIEF CAN BE GRANTED/GROUNDS FOR RELIEF;

95. THAT, one/the Court needs to look no further the Case at Law "U.S. v Morrison, 146 L.Ed. 658, 529 U.S.
(1998): To see the attempts of intrusion of/into Local & State Police Power trying to Regulate Intra-
state Commerce as Interstate Commerce, by making the possession of a local "homegrown" Pictures of Child
pronography a Federal Crime! Aver, in the Field of Criminal Law Enforcement, where State Power is Pre-
eminate, National Authority should be limited to those areas, in which interstate commerce is truely af-
fected! And aver, the police power is essentially reserved for the State, that principle must guide the
Courts review of Congress's excessive use of commerce clause power in the criminal law area; "U.S. v
Lopez, 514 U.S. 549, 131 L.Ed.2d 6261, 115 S.Ct. 1624 (1995); and,

96. THAT, "David Scoggins", was ineffective for not subjecting the government to any adversial testing, &
not having the government prove jurisdiction under United States Codes Title 18 U.S.C. § 451, Par. 3d;

a. Affiant respectfully submits that "David Scoggins", did not object to the fact that the Court did not meet
the jurisdictional element as set forth in 18 U.S.C. § 451, Par. 3d, & 2251(a), where as to meet the le-
gality of the indictment "Bill Of Commerce/Indictment", that these was no violation of the Commerce Clause
Clause 1 § 8, Cl. 3; "U.S. v McCoy, 323 F.3d 1114 (9th Cir. 2003); U.S. v Smith, 402 F.3d 1303 (5th Cir.
2005); & U.S. v Wright, 625 F.3d 583 (9th Cir. 2010); and,

b. THAT, Attorney "David Scoggins" did not make the Government prove beyond a resonable doubt the legality of the 18 U.S.C. § 451, Par. 3d, & 2251(a)&(e), which contains a jurisdictional element that the government must prove to obtain a conviction for a violation of the same said statute! Aver, wherein the government did fail to meet the requirement, by failing to produce any evidence that the defendant/debtor (s) cell phone, camera or memory card were of materials that the Defendant/Debtor knew the materials used were in-fact shipped in interstate commerce, or that they effected Interstate Commerce; "U.S. v Smith, 402 F.3d 1303 (5th Cir. 2005); By this failure Affiant submits his conviction was/now is [Un]constitutional; and,

c. THAT, The jurisdictial hook in the above statutes is patently insufficient to ensure the statutes Constitutional application under; "U.S. v Smith, supra, & U.S. v Maxwell, 386 F.3d at 1063 (5th Cir. 2004); &,

d. THAT, a memory card can not be used to produce visual depictions to establish any legal nexus conviction to the required jurisdictical hook/element within the same said statutes! Aver, "David Scoggins" failed to point out this error to the Court, thus, making Affiants/Debtor's conviction [un]constitutional; and,

e. THAT, at present time, there has not been a 5th Cir. case adhearing to this/these issues; and,

f. THAT, Affiant/Debtor did not, and could not, have produced the depictions as alledged because Debtor did not have a directional or oral role with the ultimate goal of commercial production, nor could a Debtor "as a corporate or juristice fiction, entity, person, vessel, debtor, or straw-man, possess the as such cognitive sentient ability to make an as such knowingly, willing, voluntarily & intentionally purposeful intent, sense it is not a Sentient Living Being, but it is simply a corporate entity", by the Courts con-torting of the word's "Produce by a Sentitnet Living Being" to where it does not substantilly athere to the true wbesters Dictionary Thesauras 2dn Edition 2002, Definition! And broadly construing the term, to some how make it fit in the context of same said statutes, iss stretching the commerce clause to the fur-thest of outerlimits, in order to get a conviction! Defendant/Debtor by the way Of Affiant, submits that this was not congress's intent! but is the Federal governents way to subvert & take over the States Police Power; "U.S. v McCoy, supra"; and,

g. THAT, Attorney "David Socggins" did not make the government establish any link between the alleged images & Interstate Commerce, in order to obtain Debtor's conviction! Affiant/Debtor attest that there is no link connecting the two; "U.S. v Zimmerman, 529 F.Supp. 2d 778 (5th Cir. 2007); nor did Attorney "David Scog-gins" force the government to show or demonstrate absolute lawful jurisdiction under 18 U.S.C. § 451, Par. 3d. & 2251 (a)&(e); and,

h. THAT, because Congress may conclude that a peticular activity substantially affects Interstate Commerce, does not mean it is necessarily makes it so; "Hodel v Surface Mining & Reclamation Ass'n, 452 U.S. 264, 311, 101 S.Ct. 2352, 2391 (1981); (Rehnquist, J. concurring in the Judgment); and,

i. THAT, as the Court record will show "David Scoggins" did not show any professional Skill or Knowledge as to render Affiant/Debtor (s) case Fair & Unprejudicial because of his seemingly lack of, or unfamiliarty will settled Principles of Law applicable to Affiant's/Debtor's case! Thus, subjecting Affiant/Debtor to clear & factual prejudice; "U.S.v Cowley, 349 F.3d 837, 839 (5th Cir, 2003); and,

j. THAT, "David Scoggins" Attorney did not point out to the Court that in Affiant's/Debtor's case, as in; U.S. v Smith, supra; THAT, Affiants/Debtors conduct does not substantially affect Interstate Commerce,

Because, it is a non-economic, purely intrastate criminal activity. ONLY its isolated effect may be considered, not the aggreate effect of all such activity that occurs nationwide! It is not commercial or economic in any sense of those terms; and,

k. THAT, Attorney "David Scoggins" failed by not pointing out that the U.S. Federal Corporate Government, nor the Government of the United States of America (1789) has a very limited jurisdiction under 18 U.S.C. § § 451, Par. 3d & 2251(a)&(e), they also has limited scope of authority under the Commerce Clause; See: "U.S. v Morrision, 146 L.Ed. 658, 529 U.S. (1998) & U.S. v Lopez, 514 U.S. 549. 131 L.Ed. 2d. 6261, 115 S.Ct. 1624 (1995); and as in Affiants/Debtors case, it is Proof that the court over stepped the Legislation Commerce Clause 1 § 8, Cl. 3, boundaries, either intentionally or unintentionally to manifest a conviction. When Congrees has choosen to address a moral wrong through commerce regualtion, it lacks the power to insist that the regulation be applied whenever the wrong is found! It is the "Substantial" effect on Interstate commerce, not the moral wrong, that supports Federal Jurisdiction; See: "U.S. V Smith, supra;

PROCEDURAL HISTORY:

97. THAT, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953 was charged by & through "in behalf of" Debtor "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953, with 18 U.S.C. § 2251(a)&(e) & with 2422(b), whereby Affiant did cooperate with the government & thereby Pleaded Guilty, & was Sentenced to 360 Months of Incarceration on March 03, 2011! Whereby Affiant submits in behalf of Debtor this Motion To dismiss the Indictment and/or Set Aside The Judgment, & that this Motion is being timely filed; and,

a. THAT, the United States was represented by the U.S. Atorney's Office "Lisa Miller", 1100 Commerce Street, Suite 300 Dallas, Texas [75242]; and,

b. THAT, Affiant/Debtor was represented by "David Scoggins"; at Scoggins & Scoggins – Gamez; 12225 Greenville Ave., Suite 700, Dallas, Texas [75243]; and,

c. THAT, Based on "Larrison Rule Of Law; See: Larrison v U.S., 24, f.2d (7th Cir. 1928); whereby the doctrine that a defendant/debtor may be entitled to a new trial on the basis of newly discovered evidence and/or of newly discovered evidence of false testimony by a government witness, [IF] the jury might have reached a different conclusion without the evidence & its unfairly suprised the Defendant/Debtor at Trial or during & upto the Plea Bragain or It s Plea Agreement; Also, Affiant/Debtor do hereby demand his signatures be receded/withdrawn as per his Guilty Plea, & request/demands an Evidentuary Hearing Coupled with/by a Motion To Compel Discovery & Inspection of any/all exculpatory or inculpatory evidence; and that no Wants or Warrants may be issued aginst a Sovereign–In–Fact Sentient Living Being, without his/her consent; See: Hale V Hinkel, 50 L.Ed. 652; and,

d. THAT, the undersigned Sovereign–In–Fact Sentient Living Being/Secured Party, Claimant, Grantor, Guarantor, Paramount Creditor, Registered & Copyrighted Trade Name/Mark Owner & Holder–In–Due–Course of any/all properties known as Debtor, Moves to Dismiss The Indictment and/or Vacate, Set Aside the Judgment as to his conviction(s) & sentence(s) on the grounds that the Sentence/Judgment imposed is in violation of the U.S. Constitution of (1787) "OF THE PEOPLE, BY THE PEOPLE & FOR THE PEOPLE" of the United States Of America (1789). in that the Court failed to prove lawful jurisdiction to impose the Sentence/Judgment, & that the failure of the Respondent's was a direct result of Affiants Denial of his Sixth Amendment Rights to "Ef-

fective Assistance of Counsel" which Affiant attest was monumentally caused by "David Scoggins" & His Co-Defendants/Respondents ineffectiveness as Affiant/Debtors Counsel in this same said instant subject matter "jurisdiction"! Affiant submits and urges the Court & Respondents, that he did not knowingly, willingly, voluntarily, nor intentionally waiving his rights, for Affiant/Debtor is "Without Waiving His Rights" to bring forth this Petition/Motion Pursuant to 28 U.S.C. § 2255, & the otherwise jurisdiction stated & attested to in this above Motion/Affidavit To Dismiss, Vacate, Set Aside The Judgment, Sentence, & the unlawful Bill Of Indictment/Commerce under Article 9, Sec. 10; and,

98. THAT, Affiant submits in behalf of Debtor, that the intent of Congress, in our Rights Secured by 18 U.S.C. § 3006A, is clear & governed by the Court in this matter as held in "Graham v Johnson, 168 F.3d 762, 783 (5th Cir. 2009); Thus Aver, Affiant urges the intent is for all persons/citizens to be secured the Right to Effective Assistance Of Counsel, which is also held in Rule 1.01 of the Texas Displinary Rules of the Professional Conduct as held in "Lara v Trominski, 216 F.3d 487 (5th Cir. 2000); and,

99. THAT, Affiant/Debtor respectfully submits, due to Attorney "David Scoggins" & His Co-Defendants/Respondents, irresponsibility in Affiant's/Debtor's Case is a direct result of his Ineffective Assistance of Counsel as described in the land mark Cases; U.S. v Placente, 81 F.3d 555 (5th Cir. 1996); U.S. v Span, 75 F.3d 1383 (9th Cir. 1996); U.S. v Apfel, 97 F.3d 1074 (8th Cir. 1996); & U.S. v Phillips, 210 F.3d 345, 348 (5th Cir. 2000)! And Aver, all action by counsel has affected Affiant/Debtor "Substantial" Rights; See: Puckett v U.S., 556 U.S. 129 (2009); By "David Scoggins" now obligatory stance toward Affiant's/Debtor's Human Rights, in same said Case are all direct results of Fundimental miscarriages of Justice, due to the preformance of Counsel; See: Glover v U.S., 531 U.S. 198 (2001), this is not Effective Assistance Of Counsel as described in "McMann v Richardson, 397 U.S. 759 (1970); White v Maryland, 373 U.S. 59, 10 L.Ed. 2d 193 (1963); & Reese v Georgia, 350 U.S. 85, 90 100 L.Ed. 7783 (1965); That the specific miscarrage of justice, is "David Scoggins" & the District Court assuming jurisdiction, absent the required legal proof which is the clear intent of Congress in Rights Secured by the Fifth Amendment "due Process" clause & @ 28 U.S.C. § 1861 - 1869, this is in complete opposition to the controlling case law of "U.S. v Olano, 507 U.S. 725, 730 - 732 (1993); U.S. v Bullock, 448 F.2d (5th Cir. 19971); & U.S. v Marshall, 910 F.2d 1241 (5th Cir. 1990); and,

100. THAT, as set forth in Strickland v Washington, supra, The Secured Party Affiant will explain what my Att. David Scoggins did not do for me, "As Per Exhibit A-3...American Bar Association"! Aver, I believe t that [IF] Att. Scoggins had done what was professionally Responsible under the American Bar Association Exhibit, he should have at the very least, explain to me the law pertaining to my case, & asto what he as a agent of the court "Could and/or could not...ethically & legally tell me as to my legal remedies, under the Constitution & under the UCC, also under Tort's", as are embraced in the Constitution of (1787), as to the facts listed by Affidavit, Oath, & Signature, in this Motion to "Dismiss The Indictment, Set Aside The Sentence, & Vacate The Judgment" concerning 28 U.S.C. § 3001, Subparagraph 15, & 28 U.S.C. § 2255 "Ineffective Assistance Of Counsel"; e.g. Plea Rule 11, pre-sentence report, speedy trial, pleading guilty & waiving rights to appeal, "Jury-Trial", lies & a 'promise' by Att. David Scoggins of receiving a sentence of ONLY Ten (10) years in prisons, Affiant believes that had it not been for that specific lie

JHZ08021953dc

by Att. David Scoggins, of Fraud, & his lack of professional legal Counsel, Affiant in behalf of Debtor,
would not be subjected to such "Cruel & unusual punishment"; See: U.S. v Grammas, 376 F.3d 433, 439
(5th Cir. 2004) & U.S. v Booker, 543 U.S. 200, 125 S.Ct. 738 (2005); and,

101. THAT, Att. David Scoggins did not inform Affiant, nor Debtor that the Court must address in open Court &
infer that Debtor "By The way of Affiant" understood, the mandatory minimum penalty provided by Federal
Statutory Penal Law, & the maximum possible penalty proved by the same said Law(s), Regulation(s) & Sta-
tutes, including the effect of any special term of supervised release; See: U.S. v Scott, 987 F.2d 261
(5th Cir. 1993)! Aver, Affiant @ Debtor attest he did not find out about any of these Conditions and/or
Terms until at the date of sentencing, due to the fact Affiant believes Att. David Scoggins promises of
or that Debtor would receive ONLY Ten (10) year jail sentence; See: Harmason v Smith, 888 F.2d 1527 (5th
Cir. 1989) & U.S. v Stumpf 827 F.2d 1027, 1030 (5th cir. 1987); and,

102. THAT, Affiant attest he will make a substantial showing & raise valid arguments to show that he was de-
nied his Sixth Amendments to "Effictive Assistance Of counsel" (hereinafter; "E.A.C." @ 28 U.S.C.S. § 706
which governs the standards to be applied on review & provide in part that the reviewing Court shall com-
pel agency action unlawfully withheld or reasonably delayed! Aver, the results of Att. David Scoggins in
this subject matter were failures to **prop**erly issue a facial challenge, e.g. jurisdiction, "waivers of
rights, sentence enhancements & reduction in levels for acceptance of responsibility, & for providing
substantial assistance, which by Att. Scoggins did not explain the aforesaid "Law(s), Regulation(s), &
Statutes" to Affiant, Affiant was unaware, these are his rights that are secured to him under our/the U.
S. Constitution of (1787); See: Bourjaly v U.S., 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed. 2d (1987) & U.S.
v Calverly 37 F.3d 160 (5th Cir. 1994) Citing U.S. v Patterson, 962 F.2d 409 (5th Cir. 1992); Also See:
U.S. v Okane, 52 F.3d 828 (10th Cir. 1985) & U.S. v Martin, Geraldo Perez 915 F.2d (5th Cir. 1990); See:
U.S. v Grammas, supra; and,

103. THAT, the American Bar Association & The Constitutional Standards and/or Principles governing "E.A.C."
are familiar ones as held in the 5th Circuit by the controlling case law, See: U.S. v Henderson, 72 F.3d
463, 465 (5th Cir. 1995); with regard to the issue of "waivers" based on "I.A.C." Actions, or should I
say lack thereof any appropriate, lawful or legal actions "Under Malfeasance, Misfeasance & Non feasance
Of Law", pertaining to Affiant's/Debtor's case which fell well below an objective standard of reasonable-
ness, as set forth in Strickland v Washington, supra; and,

104. THAT, It has long been recognized/held that a lawyer/attorney "MUST" perform legal services be devoting
oneself compentently to his client, so that the client understands "ALL" parts of the proceedings; See:
Gambert v Hart, 44 Cal. 542 (1872); Hill v Mynatt, 59 S.W. 163 (Tenn. 1990); & Malone v Grith, 75 N.W.
972 (Wis. 1898)! Aver, all requiring use of ordinary skill, care, & diligence commonly employed by LAw-
yers undertaking similar matters! And aver, Lawyers competency has been an explicit requirement since
1970 per "A.B.A." model "Code Of Professional Responsibility" DR6-101(A) (Failure To Act Competently;
and, The Due-diligence is closley related to competency as one often accompanies the other; SEE: People v
Primavera 942 P.2d 496 (COLA 1997); and,

105. THAT, an Attorney is expected to be familar with the well-settled principles of Law applicable/pertaining to their clients needs; See: Goldberg v Gorden, 607 P.2d 995 (COLA 1980), the proper measure of Attorney performance remains simply reasonable, under prevailing professional norms, those norms are reflected in the A.B.A. Standards; See: Strickland v Washington, Supra; and,

106. THAT, as to the rights of the accused, the accused is entitled to reasonably competent assistance of a lawyer acting as the accused's diligent & conscientious advocate! Aver, Defense Counsel is 'required' to be guided by the "A.B.A." standards, & by ethical professional standards of conduct, & also be guided by good moral charactor, & reputation, & should interalia confer with his/her client without delay & as often as necessary to elicit matters of defense, ascertained potential defenses, discuss rights, & take prompt actions to preserve clients rights! Aver, conduct investigations to determine matters of defense that can be devloped, interview available prosecution witnesses, secure information in possission of the prosecu- tion, & do adeqate research; See: U.S. v Irey (2010 CA 11 Fla.) 612 F.3d 1160, 22 FLW. FED. C 1231; There- in Att. David Scoggins did not perform his due diligence, because he ONLY met with Affiant/Debtor but a few times, & never performed the requirement of an Attorney - client Relationship under the above herein cited case law, prior to sentencing! Aver, Att. David Scoggins never discussed any defense stratigies with Affiant, Nor "Could he nor any Sentient Living Being discuss anything with a Juristic/Corporate En- tity/Fiction/Vessel/Debtor/Straw-man"! Plus Aver, Att. David Scoggins not ONLY refused to interview any potential witnesses, but in-fact he stated blatantly that he would not interview any witnesses, nor would he investigate any anomalies, witness statements, or the Public I.C.E./F.B.I. investigative data ro evidence collected. & he said it would not matter any way, because "Complainant "Doe" was under 18 years of age", & besides you will receive ten (10) years any, "And Yet Aver, Debtor Received Thirty (30) years"! For Aver, Att. David Scoggins told Affiant he had a'lot of other clients, & this is where his time was being consumed; See: Att. David Scoggins other named client...which he did relate to me; Ivan DeJesus Suastes-Cruz, _! This is why he had to reschedual Affiants original Court Date on record for the other same said client! Affiant's/Debtor's Court was delayed many/many times over & over again to accomi- date his other more important clients, & still to this date, Affiant believes the paramount reasoning be- hind Att. Scoggins continued delays, to to hender & confuse Affiant about the criminal proceedings; &,

107. THAT, C.J.S. Attorney client page 707-case law States: An Attorney's first duty is NOT to his Client, Counsel must remember that they too are Officers "Public Officials" of the Court, & Administrator's of Justice, & are Oath bound servents of society, that their first duty is NOT to the client, as many sup- pose, but is to the Court/Administration of Justice, that their Clients sucess is "wholly subordinate"; SEE: "U.S. v Frank, 53 F.2d 128, 129 Reversed 1931; U.S. v Loughlin, 57 F.2d 180 Reversed; Pearse v U.S., 59 F.2d 518; & IN RE Felly 243 F. 696, 705; Affiant will show in this Motion that Att. David Scoggins actions were in-fact his actual "I.A.C." in Affiant/Debotr's case, which by his prejudice did in-fact cause to make Affiant/Debtor "Wholly Subordinate"; and,

AFFIANTS MEMORANDUM OF LAW: POINTS & AUTHORITY OF CAUSATION IN DISPUTE;

108. THAT, Affiants/Debtor's "Movant's" Counsel "David Scoggins", (c) was ineffective in his failure to advise Affiant/Debtor (hereinafter: "Movant") about his Grand Jury & Petit Jury Rights as to an Article III Grand Jury/Petit Jury, and/or as to an Article III, Magistrate or Inferiour Court under the U.S. Supreme Court, & as to an Article III Judge, & The Article VI Oath of Office & his/her Oath that he/she will adjudicate the Court's proceedings under the U.S. Constitution of (1787) & its Amended Bill Of Rights Of (1791), plus, the Federal Prosecutor's Article IV & VI Oath Of Office & that he/she will conduct his/her Office under the U.S. Constitution of (1787), & NOT conduct his/her Court of Office as an Article I, Administrative Court or an Article I or II Judge or Court, & aver, the same said applies for any/all agents/officers of the Court & of the corporate United States, and defined as:

a. An Article I Court is defined as: 1. A Federal Legislative Court that is not bound by the or under the requirements of and/or the protection of Common Law Rights protected by & under Article III, Sec. 2 of the U.S. Constitution of (1787); 2. A Federal Legislative Court "For-Profit" that preforms functions similar to those of an Administrative Agency/Court, such as issuing advisory opinions under Article I, Sec. 8 of the U.S. Constitution (1787); and.

b. An Article I or II Judge is defined as: An Administrative Court Judge and/or a Probate or Bankruptcy Court Judge, or magistrate Court that is appointed for a term of years, "NOT for Life" as authorized by Congress under Article I & II of the U.S. Constitution of (1787); & @ 28 U.S.C.A. § 151 et seq. 631 et seq.; and,

c. Article III Court is defined as: A Lawful Federal Court that, deriving its jurisdiction from Article III, Sec. 2 of the U.S. Constitution (1787), & hears "Civil & Criminal" Cases under the Common Law Venue of the U.S. Constitution of (1787), & Its Laws & Treaties of the U.S.A. (1789) and/or Cases in which the United States (1787 - 1789) is/are a party thereto, thereof, therefrom, and/or Cases betwixt the Union Of Several States each themselves, and/or betwixt a National Citizen of the different same said States; and,

d. Article III Judge is defined as: As A U.S. Supreme Court, Court of Appeal or District Court Judges that are appointed for life under Article III, Sec. 2, Cl. 3 of the U.S. Constitution of (1787); and,

e. Alleged: Something asserted to be true as described until proven otherwise; and,

f. Assent: An Agreement, Approval that shows or demonstrates willingness by reasonable conduct as exhibited or expressed; and,

g. Assumpsit: An expressed or implied promise "Contract, Covenant, or Agreement", not under seal; Yet a Common Law Action for Breach Of Contract, Covenant, Agreement of of such a Promise; and,

h. Breach Of Contract: An Agreement/Covenent/Social Compact or Construct such as a verbal or written Contract and/or Contractual Agreement; and as to the/a violation of the same said Contractual Obligations, By Failing to preform One's Promise, or Oath Of Office; as in Article III, IV, & IV; and,

i. Covenant: A Formal Lawful Binding Contract, Agreement and/or Promise; and,

j. de jure: As A Matter of Law, Existing By Right; and,

k. Evidence: Something including as testimony, documents, & tangible Objects that tend to prove or disaprove the existance of an alleged act or an omission of an act; as in Malfeasance, Misfeasance, or Nonfeasance of Law...any wrongful or negilgent act or omission by a Public Official which in the performance of his/

her duty; and,

l. Estoppel: An Affirmative defense alleging good faith "An Implied Covenant Of Good Faith &  Fair Dealings" reliance by the defendant/debtor on a misleading representation and an/its harm, damage, or injury on a detrimental charge "Debt" in position resulting from that same said reliance; and,

m. Malfeasance: Any wrongful or unlawful act; esp. wrongdoing or misconduct by a public official while in the performance of his/her duty to perform; and/or one's office or Oath of Office; and,

n. Misfeasance: The Tort's of excessive, malicious or negligent exercise of statutory poweres by a public officer while in the preformance of his/her duty to perform one's office or Oath of Office; and,

o. Nonfeasance: The failure to act when a duty to act isist by a public official while in the performance of his/her duty to perform one's office or Oath of Office; and,

p. Feasance: The doing or execution of an Act, Condition, or obligation or promise to prefrom by a person and/or a public official while performance of his/ner duty to preform/act isist of to perform one's Office and/or Oath of Office; and,

109. THAT, as per the above 108 "a through p" definitions as to the Respondent's, to include but not limited to Affiant's/Debtor's Attorney David Scoggins, their collective concerted action and/or omissions, did in-fact harm, damage, & injure the Affiant, & The Defendant/Debtor; and,

a. Point One: The record clearly indicates that Att. Scoggins failed to make a proper "Facial Challenge" during pre-trial "Plea Agreement Hearing" as to the llegality of the Bill Of Indictment/Commerce – Particulars; & the District Court & my Att. At Law "Scoggins", failed to provide Affiant/Debtor an oppertunity to testify before the Grand Jury; See: Hale v Henkel, supra; nor was Affiant given a copy of the Grand Jury's master list or minutes of the proceedings, which is the "intent of congress" rights secured by 28 U.S.C. § 1861 – 1869! Aver, the jury selection & Service Act of 1968, to investigate the systematic exclusion of a disproportionate number of blacks, students, women, & people with Spanish and/or African Sernames; Point Two: "Affiant submits he was also denied the same said "intent of congress" in the selection of the Petit Jury, & that the violation of this "intent of congress" is all attributable to the performance of Affiant/Debtor's Att. Socggins; See: "U.S. v David T. Dellinger, 472 F.2d 340 (7th Cir. (1972); Test v U.S., 420 U.S. 28 (1975); Pinnell v Cathron, 540 F.2d 938 @ 939 (8th Cir. 1976); Griffin v U.S., supra; Castaneda v Partida, 430 U.S. 482, 494 (1977); Campbell v Lousina, 523 U.S. 382 (1988); Powers v Ohio, 499 U.S. 400 (1991); Taylor v Lousiana, 419 U.S. 522, 528 – 530 (1975); Dureen v Missouri 493 U.S. 367, 362 – 364 (1979); & U.S. v Baggot, 463 U.S. 476, 480 (1983); Point Three: The Result of the failure by Att. Scoggins, The Federal Prosecutor, & The Court, contrasts the controlling case law held in; See: Stockman v Federal Election Com'n, 138 F.3d 144, 152 N.13 & N.14 (5th Cir. 1998); and,

110. THAT, in conclusion, Att. Scoggins failed to properly explain Affiant'/Debtor's Rights Secured by 28 U.S. C. § 1861 – 1869, to issue a facial challenge as to the Grand & Petit Jury(s) proceedings in this instant subject matter & its Jurisdiction under 18 U.S.C. § 451, par. 3d; and,

111. THAT, Affiant/Debtor respectfully submits the Counsel was ineffective due to & by NOT objecting to the admissability of Affiant's/Debtor's waiving his Miranda Rights's; Point One: Att. Scoggins never asked Affiant if he understood the/his Miranda Rights he waived; and,

Point Two: Affiant and/or Debtor attest that neither he or debtor ever understood the Miranda Rights when he supposedly waived! Aver, Affiant was on an extensive amount of different drugs, & was therefore, incoherent, & that the P.S.I. Report will & does bear out Affiant's allegment; "Item 52, states in part: Abused Hydrocodone Pain Pills 5-6 years every weekend [I said also more than that used] [Besides just the weekends] use alcohol for pain: Defendant advised he was under the infulence of pain medication at time of offense, at time of arrest; he also used marijuana August through October of 2009; and,

Point Three: Affiant did not coherently wave his rights at time of offense or at time of arrest, & was pressured, threatened, coerced, put under duress by the Dectives "Lee" in his interrogation procedures, while Affiant was in the Squad car & at the Police Station in the hallway before he was taken into his office! When I related this to Att. Scoggins he did not say anything about it, nor did he attempt to investigate what I had related to him, & as to the fact that Detective Lee had turned my words around & when I signed the papers he said I need or was required to sign, I was not coherent to sign any papers, that I could not even read, let alone know what was on the form/paper I signed; See: Jackson v Denno (1964) 378 U.S. 368, 908, 84 S.CT. 1974 ALR. 3d 1205; Wainwright v Skyes, 53 L.Ed.2d 594, 433 U.S. (1972); Logner v North Carolina, 260 F.Supp. 970 (4th Cir. 1996); and,

Point Four: Att. Scoggins knew of Affiants Stroke and loss of a/some major part of Brain function, memory & cognative reasoning! Yet, Aver, he did nothing to ensure Affiant understood the Miranda Right Warning; See: Hizel v Sigler, 430 F.2d 1398 (8th Cir. 1970); and,

Point Five: As to/by Att. Scoggins "Ineffectiveness as to what should have been his Effective Assistance Of Counsel, Affiants 14th Admendment due prosess was violated; See: Beecher v Alabama, 408 U.S. 234, 33 L.Ed. 2d. 317, 92 S.Ct. 2282 (1972) & Logner v North Carolina, supra; and,

112. THAT, Affiant respectfully submits that Att. Scoggins was "Ineffective by not objecting to the legality of the Indictment, nor as to the Grand Jury or Petit Jury findings; and,

Part One: Att. Scoggins failed to make the Prosecution prove they met the jurisdictional element in the Statute: 18 U.S.C. § 2251(a)&(e) & 2422(b), that which would have validated the conviction of Debtor! The provisions in the Fed. Statute requires the government to establish specific facts/elements to justify the exercise of Federal Jurisdiction "As Affiant has demonstrated above herein" in connection with any individual application of the same said statutes! Aver, the true purpose of the jurisdictional hook is to limit the reach of a particular statute! And Aver, the jurisdictional element standing alone does not serve to shield a statute from Constitution [al] infirmites under the Commerce Clause; See; U.S. v Shipley, 560 F.Supp. 2d 7391 (8th Cir. 2008); & U.S. v Baird, 580 F.Supp. 2d 889 (8th Cir. 2008); To Wit, Att. Scoggins failed in his official Capacity to perform these required acts for Affiant/Debtor; and,

Point Two: Att. Scoggins did not verify the Federal Sentencing Guide Lines are constitutionally valid; & that the Fed. Sentencing Guide Lines for Child Explotation Offenses were not developed using any 'emprical' approch by the U.S. Sentencing Commisssion! Aver, rather, they were mainly promulgated in responce to the Statutory Directives! And the Protect Act has directly amended the U.S. Sentencing Guidelines Manual @ § 2G2 by amending the guidelines enhancements for specific offencse characterstics! Aver These modifcations do not appear to be based on any sort of emprical data, & they have no particular rationale the Court has consulted the advice of the Guide Lines, the advice in this case; See: U.S. v Shipley, 560

F.Supp. 2d 7391 (8th Cir. 2008); as in Affiants case, is less reliable than in other cases where the Guide lines are based on emprical data; See: also, Skye Phillips, Project Downward Departures, Congress & Executives Intrusion into Judicial IIndependance, 12 J.L. & Polly 947 – 84 (2004) (discussing the history of the guide lines modifications made in the Protect Act, & the fact that the changes were made without notifying or consulting the sentencing commission; See: U.S. v Baird, 580 F.Supp. 2d 1889 (8th Cir. 2008) & Shipley, supra; & U.S. v Detwiler, 338 F.Supp. 2d 1166, 1170 – 1171 (D. or 2004); discussing the Ninth Feeny amendments to the Protect Act; And Aver, Affiants contends/alleges that this Statute is an [un]constitutional Federal Enforcement; and,

Point Three: Att. Scoggins did not object to the fact or submit to the Court,The Statute 18 U.S. § 2251 (a)&(e), & 2422(b), that prohibits possession of Child Pornography made  with materials that have traveled interstate commerce, constitues an [un]constitutional exercise of Congresses power under the commerce clause U.S. Constitution, Article 1, Sec. 8, Cl. 3; and,

Point Four: Att. Scoggins ineffectiveness as counsel failed to show the court that Affiants simple possesion of Pictures of Child Pornography "Homegrown" & intended entirely for personal use, without having any intention of exchanging it for other items of child pornography, & does not substantially affect any form of interstate commerce; and the U.S. Appeals court 9th Cir. agrees with the 3rd Cir. that the limiting jurisdictional provisions, is for all practical purposes useless! Aver, it completely fails to guarantee that the final product regulated 'substantially' affects interstant commerce. The Constitution permits congress to regulate ONLY those intrastate activites which have a substantial effect on interstate commerce, and such regulations of purely intrastate activiy reaches the outer limits of Congresses Commerce Power; U.S. v McCoy, supra; Plus, the U.S. Court of Appeals for the 9th Cir. concludes that simple intrastate possession of "Home Grown" Pornography not intended for distribution or exchange is not in any sence of the phrase, economic activity for the purposes of anaylis under the commerce clause; and,

Point Five: Att. Scoggins did not provide a defense for Affiant/Debtor that demonstrated the application of the Statute does not regulate economic or commercial activity nor does it show a relationship, Attenuated or otherwise, betwixt regulated activity & interstate commerce, & certainly the type of direct or substantial relationship necessary to justify the invocation by Congress of its commerce clause, in order to regulate intrastate commerce or criminal activities; and,

Point Six: The ineffective assistance of Att. Scoggins, by not issuing a facial challenge as to the Courts assumptions that they had jurisdiction to convict Affiant for the violation of the Commerce Clause, has subjected Affiant to extreme undue prejudice, of increased jail time; See: U.S. v Grammas, Supra, from the [Un]constitutional convection of Affiant/Debtor; and,

Point Seven: Att. Scoggins was ineffective because he did not show, nor demonstrate to the Court that the 2nd & 3rd Cir. Both have found that the jurisdictional element in the statutes do not pass "Muster" as stated in "Rodia...U.S. v Matthews, 300 Supp. 2d 1200 (N.Alabama 2004), that show whether the statutes regulated activity, that substantially affect interstate commerce! The Government has failed to prove jurisdiction that would make this a Federal Crime; See: U.S. v Holston, 343 F.3d 83 (2nd Cir. 2003 (quoting U.S. v Rodia 194 F.3d 465 (3rd Cir. 1999)! Aver, Affiant & Affiants family needs help, not federal

prison time; See: U.S. v Mc Coy, supra,.Which in Affiants case neither Att. Scoggins nor the Court has deemed to help him or his family, with any guidence or psychoanalysis treatment! Aver, that Affiant did in-fact relate to Att. Scoggins to relay to Judge Boyle! All Affiant got was prison time; in this Affiant feels prejudiced from Judge Boyle, that she is wanting to end Affiant's life in prison! Affiant will explain his reason of feeling prejudiced by Judge Jane Boyle, later in this Brief to recuse Judge Boyle; &,

113. THAT Affiant's Counsel was ineffective for not issuing a facial challenge pertaining to the Courts use of the Federal Sentencing Guide Lines as mandatory & not advisory ONLY; See: U.S. v Booker, supra; and,

Point One: Att. Scoggins did not ensure that the court used or even took into account the requirement in 18 U.S.C.S. § 3553(a), as mandated, because guide lines sentence was greater than necessary to serve goals of sentencing; See Federal Law & Practice Guide; and,

Point Two: Att. Scoggins told Affiant that Judge Boyle would not, consider, Affiants history & background, including the fact of his family & community ties, lack of any criminal history, Affiant excellent employment history, 20 years at one job, working for the State of Texas, welfare department! The personal obvious shame that having engaged in criminal activity!!! The personal distinguishing character reference letters sent to judge Boyle through Att. Scoggins! Affiant now is not sure [IF] Judge Boyle ever received them, or the fact of Affiant's military schooling! Affiant also told Att. Scoggins to tell Judge Boyle that he has sought treatment on his own; for depression, sexual, alcohol & drug addition, immediately after his arrest; and,

Point Three: Neither Att. Scoggins, Probation Officer Melissa Farci, not the District Attorney told Affiant about 18 U.S.C. § 3553(a), & the federal requirement that a District Court's to follow! Affiant was never admonished about this, which leads Affiant to a conclusion that the Court did not consider the Rules in this case, because Affiant's Sentence was beyond sufficent, & greater than necessary considering all of the factors in 18 U.S.C. § 3553(a) to accomplish its goals; See: U.S. V Booker, supra; and,

Point Four: Att. Scoggins did not point out to the Court: that while Affiant's crime was a serious one, he was no where near the worst of offenders that have committed that type of crime, Affiant compares his case to; See: U.S. v Shipley, Supra, as contrast; and,

Point Five: The Advisory guide lines in Booker @ the U.S. Sentencing Manual § 2G2.1 is not a reliable indicator of the U.S.C.S. § perspective on a fair sentence for a 18 U.S.C. § 2251(a)&(e) & 2422(b) offense; See: U.S. v Shipley, supra; U.S. v Lopez, Supra; U.S. v Morrison, supra; & U.S. v Taylor, 640 F.3d 255 (7th Cir. 2011); and,

Point Six: Affiant is actually being punished twice for his one & only crime in his whole life; 1. Serving time in prison; 2. The collateral consequences of his conviction, including loss of all dignity, & self respect, also the social stigma attached to the offense, being deprived of full participation in civic life, being incarcerated during the final few years of his life, having terminal cancer & given but ten yeras to live! This is well beyond the meaning of a sentence being imposed that is greater than necessary to serve its goal! Affiant hopes the appeals court will consider all of these circumstances & compare Affiant's case with; See: U.S. v Thomas, 903 F.2d 256, 531 (7th Cir. 1991); and,

114. THAT, Att. Scoggins was Ineffective for not explaining the Pre-Sentence Report to Affiant, & failed to object to its plain & obvious errors & misleading lies of 'cintention's; and,

FACT: "NONE" of the points listed were presented to Affiant by Att. Scoggins, as to the following:

Point One: The statements in the P.S.R.; The Defendant said there would be a picture of Doe riding him! Affiant swares, attest, & for the record, states unequivocally that is a bald face outrite "LIE"! Defaming & degrading, & Affiant believes it is used in a racially motavated way to injure & prejudice Affiant ..."WHY"? Aver, 1. there is 'NO' such picture; 2. Affiant could not have said that, & did not say that there is no such picture; 3. A'gain, had Affiant been shown the P.S.R., as is, Affiant would have brought this issue up in open Court, for valuable or sufficient consideration as to it lawful material value; &, Affiant attest, for the record, that this is actual "Fraud" committed by government law enforcement & public officials, that did enter into by their collective concerted action(s) & thereby submitted to the Court in this Factual P.S.R. documant! This/these concerted actions were done willfully & purposely with their "Respondent's" full intent to prejudice & harm Affiant/Debtor, this is a "Fraudulant Action" because the government/Respondents was/is making that particular type of claim, while making sure the government/ Respondent's claim's were not compromised, by hindering, impeding, & obstructing Affiant discovery of any/ all exculpatory/inculpatory "Brady" & "Jencks" material and/or submission to the "Court" of the same said evidence, "Document(s), Material(s), Instrument(s), Presentment(s), Information(s), Record(s), Picture(s), Video(s), Tape(s), Transcript(s), and/or that may otherwise be in the possession of the State of Texas or in the possession of the Federal Corporate Government"; SEE: U.S. v Ruiz, 536 U.S. 622, 71 Crl 383 (2002), and/or the same said evidencing that would or could impeach the police, or federal agents statement(s) or their testimony, also as to the probation officer & federal prosecutor (s); And Aver, [IF] the Court will allow Affiant an Evidentuary hearing, "One That He Never Has Had", in this Motion, Affiant intends to and will prove that this "Fraudulant Concerted actions on the part of Respondents", & that Affiant did not receive any assistance from Att. Scoggins in these matters! As pertaining to this reason, Affiant has been denied his Sixth Amendment Rights to lawful Effective Assistance of Counsel as is expressed in Exhibit A-3 also his Fifth Amendment Rights to due process of law, & Affiant did not have a lawful trial under Article III, Sec. 2, Cl. of the U.S. Constitution of (1787)! Therefore Aver, Affiant urges the Court to predicate disciplinary actions against Respondent's, though Att. Scoggins in particular, e.g. See: Florida Bar v Sandstrom, 609 SO. 2d 583 (FLA. 1992); & also stated is the duty of all Judges & Attorneys to report such conduct to the appropriate authorities & cause an investigation of such conduct; See: ABA RPC, Rules 8.3 & 8.4, & accomping the Ethics Rules; See: Judical Cannons & accomping Ethics Rules; Plus, Fraud distroys the validity of every thing into which it enters! It also affects even the most solemn judgments & decrees; TRA NUDD V GEORGE BURROWS, 91 U.S. 426 at 440 (1875); Fraud is one of the things that the government can be Sued over; and,

Point Two: The first time Affiant saw the P.S.R. was on 3/24/2012, & at the Federal Butner Medical Center where Case Manager Mr. Sanborn was doing his quarterly review, & showed Affiant his P.S.R. & general files! This is when Affiant learned about the enhancements, & the obvious errors & outrite lies;

a. Att. Scoggins should have seen the errors & objected to them, but he chose to over look them; and,

b. Att. Scoggins did not go over the P.S.R. & its a'many errors with Affiant, he only said to Affiant that Affiants name was not listed as Jr. & Affiant's fathers name was not listed as Sr., & I asked for him to have it changed, this is an obvious error; and, it was never challenged; and,

Point Three: The date of confinement in state and/or federal custody is wrong! The P.S.R. has it as 12/11/2010 & it should be 12/11/2009, that is over a whole year of confinement or a year off Affiants Sentence;

Point Four: Att. Scoggins did not issue a facial challenge to the Court, requiring the Court to prove the validity of the enhancement that pertained to the use of Affiants computor, as stated in the P.S.R. at #15, which reads: "There were no pornographic images found on Affiants/Debtor's computor; nor were there any web sites or any web Id's or Domain Id. that linked Affiants computor to any site listed in the P.S.R.! Affiant did not use a computor & Affiant did relate this to Att. Scoggins, but now seeing the P.S.R. & the enhancement, Affiant sees that Att. Scoggins completely disregarded Affiants pleas as to Att. Scoggins fraud & the Respondent's concerted copus actions; and,

Point Five: Att. Scoggins did not point out to the Court nor did he object to the obvious errors on the P.S.R. as to statement # 2, which reads: Debtor/Defendant appeared before the Judge Wm **Sandover** on 1/20/2010, Docket number 0006-BH, States that the defendant did not appear before Judge Wm Sanderson, 1/20/2010 as there was no dention hearing "Obvious error"; and,

Point Six: Att. Scoggins did not point out or object to the Courts obstruction of justice, as it was based on herasay pertaining to my **ex-wife's** statement to Detective Lee as to: destroying video tapes/cassettes, as per Fed. Rule 802; hearsay is not admissable, except as provided by the Fed. Rules of evidence or by other Rules prescribed by the U.S. Supreme Court, pursuant to Statutory authority or by an act of Congress, & neither Fed. Rule 802, nor any otherwise rules or statutes create an exception; And Aver, Fed. Rules of Evidence 801(c) "Hearsay": [IF] the assertion were intended! The evidence would be excluded! [IF] not. it would be admissible! This result is implicit in the drafters of the Fed. Rules of Evidence; See: S. Saltzbury & K. Redden, Fed. Rules of Evidence Manual 456 (2nd Ed. 1977); See: U.S.A. v Zenni, 492 F.Supp. 464 (6th Cir. 1980); That the touchstone for hearsay is the intention to make an assertion; &,

Point Seven: P.S.R. Statement # 5, states the Defendant cooperated with the government! Att. Scoggins did not object to Affiant not receiving a Three level reduction on his Sentence! Affiant did in-fact cooperate fully with the government, & gave them substantial information that they have used to prosecute others by. Att. Scoggins, Lisa Miller, Detective Lee, & a person from I.C.E. were as the meeting when Affiant gave them information! Detective Lee even thanked Affiant, & said the information would be helpful; and,

Point Eight: Att. Scoggins did not object to the statements on the P.S.R. saying that Defendant/Debtor said he took a "certain number" of pictures & videos to Detective Lee! That is a contentious lie! Affiant never made these statement to detective Lee nor the Probation Officer, not to any otherwise agent of the State or Federal corporate U.S. government, Affiant never said he took any pictures, much less a certain number of pictures! [IF] provable, then where is the so-called evidence or where did it come from; and,

Point Nine: @ P.S.R. # 14 states: Defendant "Whom is a juristic corporate entity created by corporate United States Federal Government...So explain how can a corporate fiction...speak...???", said he thought about having sex with minors in the past! This is another contentious lie, manifested by detective Lee,

Affiant never said that, nor thought that! A'gain, Affiant claims Fraud perpetrated a'gainst him by the same said Respondents by their concerted actions, though mainly by detective Lee; and,

Point Ten: P.S.R. statement # 3, defendant/debtor did not comply with detective Lee's commands, that is another contentious lie, for Affiant nor debtor did comply at first site, & command of Officer. Detective Lee leaves out the fact it was 0600 hrs approximately, in a dimly lit area, & no moon or sun; and,

Point Eleven: P.S.R. Statement #14 is stated in a way that construes the words to make it sound like the defendant/debtor knew "Doe" was a minor, & continued to meet with "Doe"! Doe said her age was eighteen; &,

Point Twelve: P.R.S. Statement #14 states/ says that debtor said his cell phone has pictures of under age girls on it, and camera has pictures of "Doe", & that is a lie, Affiant never made either statement! For Affiant said only there were no pictures of anyone under eighteen on either, because there are none; and,

Point Thirteen: P.S.R. statement # 17 is a contentious lie! Affiant, nor debtor did not persuade "Doe" to meet! It was "Doe" who first asked to meet defendant, after she told defendant/debtor she was eighteen, & "Doe' made the statement on statement #14 that she told defendant/debtor she was in-fact eighteen! And Aver, Affiant related this to Att. Scoggins, & detective Lee, but all they/he said was it does not matter, she was under eighteen, & with Affiant not knowing the law, did not know Affiant could issue a challenge upon appeal! Att. Scoggins never told Affiant this was his right; and,

Point Fourteen: P.S.R. statement # 4: Defendant stipulated to the accuracy of the factual resume, which is another contentious lie! Att. Scoggins never show defendant the P.S.R. document when it was completed, or Affiant would never have took the plea in behalf of Defendant/Debtor, of 360 months; and,

Point Fifteen: P.S.R. statement # 14 & 17: that the defendant/debtor knew "Doe's" true age at that time of the meeting, which is another contentious lie; See: P.S.R. # 14 for the contridiction to that statement which reinforces that Affiant did not know "Doe" true age at time; and,

115. THAT, Affiant's Att. Scoggins was Ineffective for failing to issue a facial challenge to the obstruction of justice enhancement; "Fact: This was five months after Affiant/Debtor was arrested"; and,

Point One: P.S.R. Statement # 19, is factually incorrect, & the taped phone call from Mansfield Jail, in its probativeness will depect the Defendant/debtor "Whom can not speek" did not say to his wife, that she should distroy tapes,; And Aver, in truth, Affiant "Not Debtor" told his wife to collect the tapes, so that his daughter "Andrea" would not find the tapes & see what was on them; Plus, there were ONLY Three tapes, not four, as stated in # 19 of the P.S.R.; and,

Point Two: P.S.R. statement # 19, also states that it appears that the girls ages 13 to 17, there was no investigation into these tpaes, therefore, these statement are hearsay, & not admissible in court, nor for enhancement purposes! Aver, Att. Scoggins complete negligence with/in handling this, has caused Affiant an unreasonable hardship due to the enhancement of his prison sentence, when in-fact, Affiant attest that Att. Scoggins had almost one full year to have this investigated, yet, he never did, nor did he go to the Court with this information for the court to investigate; Not A single individual "Melissa Farci, U.S. Probation officer & Asst. D.A. Lisa Miller" was ever contacted by Att. Scoggins, therefore, this/these evry important issues were never adjicated by an investigation, thus, they are hearsay, & not admissiable for enhancement purpose's, or to convect Affiant/Debtor by; and,

Point Three: P.R.S. statement # 19, in relationship to Att. Scoggins never told Affiant that these depictions could be used to enhance Affiant/Debtor, this is a delibert action or omission, which is Malfeasance, Misfeasance, & Nonfeasance of Law by a Public Official, & by every Respondent by their conplicit concerted action in conjunction with Att. Scoggins, because He & "They, by their concerted actions" said, "There was nothing to worry about, because they are over eighteen years of age", which they were, & had there been an investigation into the so-called damning tapes, this would have beared fruit! Att. Scoggins was playing on Affiants faulty memory, & could thougnt Affiant would forget about said conversation, which I did until 3/24/2012, when Affiant saw the P.S.R. for the first time 'as-is'; See: U.S. v Kosmel, (2001) (Ca 7111) 272 F.3d 501 reh den (2002) CA 7111) 2002 U.S. app. Lexis 85; and, Kosmel

Point Four: Att. Scoggins failure to object to the obstruction of justice, that was based on hearsay; and which subjected Affiant to under harm, damage, and/or injury, See: title  28 U.S.C. § 3001, subparagraph 15: "That NO Juristic or Corporate Entity, or municipality/instrumentality, or affiliate or subdivision therefroe, not Agency or agent thereof/of, may harm, damage, or injury a Sentient Living Being, without committing a criminal act, & that criminal act is Treason By Trespass Vi Et Armis; This is why both the Debtor & Affiant are injured third party plaintiffs, which casued harm to Affiant by the increased prison sentence, which by far meets the Stricland Test, to show Att. Scoggins "Ineffectiveness" as Counsel: See: Jackson v Denno, Supra, & Strickland v Washington, supra; and,

Point Four A: Obstruction of Justice can only be given when a defendant has "willfully" obstructed justice! The ordinary meaning of "willfully" in 3C1.1 is delibertly or intentionally, but not negligenty, in advertenly or accidently. Affiant did not obstruct the federal proceedings; See: U.S. v Kosmel, supra; And Aver, Affiant makes his stand on/in "Booker", that would be held in Affiants Case; See: Strickland v Washinton, supra; and,

Point Five: There are NO Standards of or Evidencing thereof Proof as to the allegations pertaining to the charge/enhancement of "Obstruction of Justice"; Affiant did not know of the charge of obstruction of Justice, & Att. Scoggins never told this fact or alleged fact to Affiant! Affiant attest as to the fraudulant concerted actions by Att. Scoggins & Respondents, as to the factual errors that amount to fraud; Thus The enhancement are/were unconstitutional; U.S. v Okane, supra, & U.S. v Kirlin, 360 F.3d 456 (4th Cir. 2004); and,

Point Six: Att. Scoggins ineffectiveness as counsel, let the Court err in receiving the unsworn assertions of the prosecutor; See: U.S. V Calverley, supra citing, U.S. v Patterson, supra; For the proposition that the unsworn assertations of the governments prosecutor, do not prove themselves, a sufficently reliable basis on which to sentence the defendant or increase with enhancement his sentence level! Aver, In Affiant's case charges his with this enhancement, being also that he did not object in Court, Affiant points to the Case; See: U.S.A. v Martin Geralda Perez, 915 F.2d 947 (5th Cir. 1990); and,

Point Seven: Affiants wife could not have told Lee, that she knew the ages of females on the tapes, "One, she did not know them", P.S.R. statment # 19, she says that they appear to be between 13 & 17 years of age, which is a blatant, "Malfeasance, Misfeasnace, & Nonfeasance" Lie; and,

Point Eight: There is no proof by testimony, nor evidence that can certify that the persons on the tapes

are under the age of eighteen, or no validity as to any investigation that in turned validatied that the persons on the tapes were under the age of eighteen! ONLY inveigh statements maliciously made to malign Affiant; See: U.S. v Smith, 347 U.S. App DC. 392, 267 F.3d 1154, 1160 (D.C. 2001); and,

Point Nine: The concerted actions by the actors/respondents violated Affiants Sixth Amendment Rights & subjected Affiant/Debtor to extreme prejudice by an increase in sentence under "Ineffective Assistance of Counsel: See: U.S. v Booker, supra; Glover v U.S., supra; & U.S. v Villegas, 404 F.3d 355, 2005 U.S. Lexis 45-17-N0003-2012, 2005 Wl 627963 @ 7 (5th Cir. 2005); and,

Point Ten: Att. Scoggins did not object or question Rule 3C1.1 "Obstruction Of Justice", where hearsay must be given under Oath, otherwise misapplied! A hearing is required in a State or Federal Trial or even A Plea Agreement Sentencing Hearing, prior to admission of an inculpatory/exculpatory out-of-court Statements! Where in Affiants/Debtors case, there is no actual proof that any statement by my exwife was made concerning this matter; as relayed in the P.S.R.! Thus Aver, Affiant has not lost his right to assert such a claim, by failing to object at trial "His Plea Agreement Hearing" Sentencing; See: Pinnell v Cathron, 540 F.2d 938 @ 939 (8th Cir. 1976); and aver, any unswron assertations do not in themselves provide reliable basis to sentence a defendant, or deny a defendant a reduction in sentence levels; and certainly not to increase a defendants levels with enhancements; See: U.S. v Patterson, supra; U.S. v Calverly, supra; which in all reality is under 28 U.S.C. § 3001, Subparagraph 15, supra; and,

116. THAT, in determining whether a Plea Agreement has been reached or valid, a Court must decide what the Parties reasonably "understood" to be the terms of the agreement! remembering that any ambiguity should be resolved against the government; See: The Supreme Court Case concerning Plea Agreements, as to a critical stage in jurisprudence; See: Lafler V Cooper, BL 67236 (U.S. 3/21/2012) & Missouri v Frye, BL 67235 (U.S. 3/21/2012); where the Court recognized that, plea bargaining lies at the heart of the way that current criminal Justice System Operates; And Yet Aver, under Article III, Section 2, Clause 3, Plea Agreement & the Plea Bargaining is [Un]Constitutional; Plus, an Attorney's Client has a Right to a conflict-free representation (emphasis added) derives from the Sixth Amendment; See: Garcia v Bunnell, 33 F.3d 1193 (9th Cir. 1994; Yet, a criminal defendant is entitled to counsel whose undivided loyalties lie with the client (not with the government0; See: Spreitzer v Peters, 114 F.3d 1435 (7th Cir. 1997); For it is to say, Indeed, "Quite obviously, the alleged "Defense Counsel" is a government agent sitting at the "Defense Table" not the "accuse(s)" guaranteed by the Sixth Amendment "effective assistance of counsel", or "guaranteed by the Sixth Amendment" "conflict free representation"! Aver, the Attorney must inform the accused of the his/her limitations & conflicts regarding his/her conduct, & as to whom he truely represents (representation or assistance); See: R.P.C. Rule 1.2(e); RPC rule 1.8(f), & ER-4; RPC Rule 1.7(a)&(b), Plus, Ethics Rules 4, 5, 7, & 10! Whereby, [IF] the Attorney/Lawyer is not allowed to disclose the "his/her" conflicts of interest, he/she cannot rightfully (morally or lawfully) ask the accused to agree to his/her representation, (R.P.C. Rule 1.7, ER-5), & must also have a release from the Court & the government "His/Her True Boss", allowing him/her to compromise the governments case! Further, given the conflict caused by being an officer of the court/government, & a government agent, which the Court is well aware of, & it is the Courts duty to inform the accused of as such conflicts of interest, & inquire [IF] the accused, having now been informed, voluntarily agrees to waive the conflicts of interest rules; and,

the Courts obligations to the accused, & it is the Defendants Counsel duty to inform the accused of his obligations to the Court first, & to his Client last! [IF] the Court or the Attroney refuses consent to inform the accused, it is his/her legal & moral duty to "refuse" to "represent" the accused; See; U.S. v Tweel, 550 F.2d 297, 299-300, has this to say about such silence: "Silence can only be equated with fraud when there is both a legal & moral duty to speek / perform"; See; Malfeasance, Misfeasance, & Nonfeasance of Law; wherein the U.S. Supreme Court says: Reversal is mandated when prejudice is proven on Attorney – Client relationship; See: U.S. v Morrison, 449 U.S. 361, 66 L.Ed.2d. 564, 101 S.Ct. 665 (1981); And Aver, by the words of the supreme court & the AMERICAN BAR ASSOCIATION, extreme prejudice exist, because, without a written release consent from both the courts & the government, a claim of "representation of the accused" is a major fraud upon the client, because the government & its agents is making that claim, while making sure the governments claim/case is not compromised, by hendering, impeding, & obstructing discovery of "Brady" & "Jencks" materials and/or submission to the "court" of exculpatory & inculpatory evidence which would impeace police, prosecutors, witnesses, & the court/government; and,

116-B. THAT, there can be no greater prejudice than when you have a government spy "The Clients Attorney" controlling acquisition of evidence, submission of evidence, & presenting issues & arguements under the guise of "representation of the accused"! This government spy's purposes is proven by the U.S. Attorney Manual (USAM) Title 6-1287; which provides in part: "The entry of judgment alones does not create a judgment lien! A judgment lien comes into existance only when a certified copy of the abstract judgment is provided the clients Attorney & is properly filed by same; See: 28 U.S.C. § 3201, formerly 28 U.S.C. § 1962! Accordingly, a trial attorney must take the steps necessary to obtain the judgment lien! An abstract of the judgment lien, cover letter to the U.S. Attorney, & instructions are attached as exhibit A-3; And Yet Aver, [IF] or since an accused is prosecuted by a U.S. Attorney, then why would same need a trial attorney to provide an absrtact of the judgment form, cover letter, (& just what is contained within that cover letter), & why would such U.S. Attorney need "instructions"??? Obviously, there are numerous reasons as to the Five Wives Of Man "Who, What, Where, When, & Why" for concealment of these thing in "Talon & Lions", because it contains both "Brady & Jencks Material", which would require the release of the accused! And Aver, the Corporate U.S. Government uses what it calls a "superlien" to "forfiet the person/vessel/fiction/debtor/straw-man" along with all substantial & insubstantial personal rights "from the time of the alleged commission of the alleged criminal act/crime", in/by a process which was outlawed by the First Congress, which/because it is a "Bill Of Attainder"; Plus Aver, the legislative history of the "Organized Crime Control Act & Title II of the Comprehensive Drug Abuse Prevention & Control Act of 1970" show at page 4; show the "super" judgment Lien, while at page 81-82, contains foot notes 174-185; which provides: "...At Common Law, a person convicted of treason & certain other felonies automatically forfeited to the Crown/Government his personal goods & chattels! Furthermore, when a person has been attained "175" for an act of high treason "176" of outlawry "177", all his interest "Debtor" in real property "Debtor" held at that time of the offense or acquired since that time were/are forfeited to the Crown/Government, accordingly to Blackstone, the rationale for criminal forfeiture was held that..."..."He

whom hath thus violated the fundamental principles of government, & broke his part of the original contract betwixt the King & People, hath abandoned his connection with society, & hath no longer any rights to those advantages, which before belonged to him purely as a member of the community; among which social property to others is one of the chief! Such forfeitures moreover, whereby posterity must suffer as well as himself, will help to restrain a man, not only by the sence of his duty, & dread of personal punishment, but also by his passions & natural affections! More over, the common law "Bill of Attainder" was abolished by Statute 33 & 34 Vict. Ch. 23, & the passage of such bills are expressly forbidden by the Constitution, Article I, Sec. 9, Cl. 3; and what is enlightening is that Congress compares itself to the English Crown, & aasumes the posture of "KING" over the "We The People"! Forgive me for my next unlightened comment, but did not our forefathers fight a revolutionary war so they would be free from such despotice tyranny??? And Aver, I do seen to remember two (2) "Declarations Of Rights"...a "Declaration Of Independence", "Articles Of Confederation", & a third...a "Constitution & its Amended bill of Rights" which did/has forbidden exercising any powers not delegated to it by its people "Congress", along with a prohibitionon "Bills Of Attainders"! To Wit Aver, the afore mentioned footnotes also make it clear that the federal governments forfeiture is an action "as near admiralty as possible"! However Aver, I also seem to remember the "Declaration of Indenpendence" complained about the "KING/GOVERNMENT" expanding the ancient admiralty jurisdiction & bringing it onto land guised as common law, creating a multitude of new offices to eat out the peoples substance; and our defense counsel helped do this to us! Which was done under the "Federal Debt Collection Act", & I seem to remember reading something about activities like this in 18 U.S.C. § § 1001, 1341, & 1343, where it is called a scheme or ponzi scheme, or artifice to defraud, which is defined at 18 U.S.C. § 1346 & as the U.S. Attorney Manual says: RICO, applies to anyone, whether they be a Sentient Living Being or a Juristic/Corpoarte Entity! I also seem to remember that telephones & the use of mail to facilitate and/or carry this fraud into completion; See: 18 U.S.C. §§ 1961, 1962, 1963, 1964, 1965, & 1966; and aver, it is also the stated duty of ALL Judges & Attorneys to report any as such conduct of the above & herein stated violations of whatsoever kind to the appropriate authorities & cause an investigation into/of such conduct; See: ABA RPC, Rule 8.3, 8.4, & accompanying Ethics Rules; See: Judicial Canons & Accompanying Ethics Rules; and,

117. THAT, in this Brief I minimally cover: 1. A Simple list of duties the Court Says an Attorney owes his Client...The Accused; 2. The use of Ethics Rules as evidence of the duty a/an "lawyer/Attorney" owes his (alleged) "Client" as an accused; 3. A Cite from "In re Meeker", showing that the canons (rules) of professional ethics 'must be enforced by the Court Itself', & I, "As A Sovereign-In-Fact Sentient Living Being & Secured Party Claimant/Agent", simply title this "Conflicts of Interest...Betwixt Respondent's & Accused/Client/Debtor", & the following are such conflicts of Interest:

a. The Law "Constitution of (1787)" has long recognized that a lawyer/attorney must perform legal services competently, and under the Law as a Contract Betwixt His Client & Himself; See: e.g. Gambert v Hart, supra; Hill v Myratt, supra; Malone v Girth, supra; & Kissam v Brenerman, 44 A.D. 588 (N.Y. 1899); ALL requiring use of ordinary skills, care, & diligence commonly employed by lawyers undertaking such similar matters; See: Model Code of Professional Responsibility, DR 6-101(A) (Failure To Act Competently) "To, For, & On/In Behalf of same said Client/Accused"! Thus, disciplinary relies upon DR 6-101(A)(2) (Requir-

ing adquate preparation); See: In re Cohn, 800 N.Y.S. 2d 501 (App. Div. 1993), whereby, neglect may be considered a species of failure to act competently (applying appropriate state's code); and,

b. The duty of diligence is closely related to competence, as often accompanies the other; See: People v Primavera, 942 R.2d 496 (Cola. 1997); Florida Bar v Flowers, 672 S.2d 526 (Fla. 1996), In re Capps, 942 P.2d 583 (Kan. 1997); In re Moore, 494 S.E.2d 804 (S.C. 1997); Also. Restatement (Third) of the Law Governing Lawyers, § 28 (1996); "Lawyers duties of competence & diligence are contained within the same rule"; and (Please See American Bar Association Exhibit A-3...Page 11 # 1 through Page 13 # 9, as to Affiant's contentions of what a Lawyer Ethics Rules To His Client are"; and,

118. THAT, Affiant submits that Att. Scoggins was "Ineffective" for failing to inform Affiant of the "True" Terms , & ALL aspects in the Plea Agreement; Aver, Att. Scoggins purposely gave Affaint false & misleading advice, and information concerning the same said plea agreement, by promising Affiant he would receive ONLY Ten (10) Years; See: Harmason v Smith, supra; Lafler v Cooper, supra; & Missouri v Frye, supra! Nor did Att. Scoggins ever tell Affiant that by "Waving" a Trial By Jury, & pleading "Guilty...By A Plea Agreement/Contract", Affiant would be "Barred...To prevent, esp. by legal objection" from the appeal process, not did he tell Affiant that this was written in the Plea Agreement; See: Hill v Lockhart, supra; Padilla v Kentucky, supra; U.S. v Fadl, 498 F.3d 862 (8th Cir. 2007); & U.S. v Henderson, supra; And Aver, had Affiant known this/these items were or that would have barred Affiant from filing certain types of appeals, Affiant would have demand/opted for a Trial By Jury, and/or had the Fed. Prosecutor produced complaints against Affiant, & made them prove jurisdiction to/that met the legality of the Indictment, & taken the chance that Affiants conviction & sentence would have been less prison time; See: McMann v Richardson, supra; Arizona v Fulminate, 499 U.S. 279, 310 (1991); and aver, this/Affiant's plea, as in all pleas of guilty should be carefully examined by the Court; See: Jackson v Denno, supra; U.S. v Pineda, 2001 U.S. Dist. Lexis 27469 (11th Cir. 2001); Nor did Att. Scoggins ensure that Rule 32(i) sentencing, (a) to (d) were carried out for Affiant, as he made no objections, nor did he object to the fact that the Court did not inquire of the Defendants/Debtors, & ensure that Affiant/debtor understood Rule 11(b)(1) (a-m) with special consideration on (f) waiver of trial rights, & (m) sentencing factors under 18 U.S.C. § 3553(a)! To Wit, the Court sentenced Affiant to 360 Months, which does not comport with the requirements as set forth in paragraph (2) 18 U.S.C. § 3553, that states: A Court Shall impose a sentence "sufficent" but not greater that necessary to accomplish its goals; See: U.S. v Booker, supra; U.S. v Jimenez, 509 F.3d 682 (5th Cir. 2007); & U.S. v Perkins, 364 Fed. Appx. 133 (5th Cir. 1010) (citing Booker) and,

119. THAT, Affiant respectfully submits to the Court that counsel was "ineffective" in all areas of evidence procedures, by not making the government produce any evidence, nor was the Charge or its evidencing ever Certified or read into the record, that which is required under Law, whereby the Defendant has a right to review & then confront/cross examine any/all evidence that is intended to be used by the governments in its pursuit of a conviction of a Defendant/Debtor, by & through A Sentient Living Being; See: U.S. v Klaw, 350 F.2d 155 (2nd Cir. 1964); Whereby Att. Scoggins under the ethics rules & under the sixth Amendment; See: F.R.Crim.P. 44; 18 U.S.C.A. § 3006A; whereby Counsel shall make the government produce the evidence under the Burden of Proof, & by not performing this requirement, these concerted actions by Counsel & the

Respondent's, did aversly affect the fairness & integrity of the judical proceedings; See: U.S. v Smith, supra; nor did Attorney Scoggins ever issue a facial challenge as to the sufficence of the evidence to determine whether any Rational Teir of Fact could have provided the essential elements of the crime beyond a reasonable doubt; See: U.S. v Bass, 310 F.3d 321, 325 (tth Cir. 2002); and,

120. THAT, Affiants submits that he was denied his substantive rights secured by Acts of Congress! to Wit, 28 U.S.C. § 144, 351, 453 & 455, which all secure a "Fair & Impartial Judge"; and aver, pursuant to 28 U.S. C. § under Judiciary & Judicial Procedures, Part 1 § 144; When ever a party to any proceedings. "Whether Civil Or Criminal", in a district court "In & For the United States of America (1789)" and/or a District Court of corporate United States makes & files a timely & sufficent Affidavit before the Judge whom is presiding and/or pending, has a personal bias or prejudice against the Affiant/Debtor, such Judge shall proceed no further, but another Judge shall be assigned to hear such proceedings; See: 28 U.S.C. § 47; And Yet Aver, there has been cases; See: Hagan v Coggins, 77 F.Supp. 2d 776 (5th Cir. 1999), in re: by a reference to the Honorable Jane Boyle, a magistrate Judge in the same Dallas Division, for handling of pretrial matters! Wherein, specific factual allegations were made aginst Judge Buchmeyer, are that he did caused, reviewed, consulted with and encouraged Magistrate Judge Jane Boyle to prepare a misleading report in a fashion to confuse Hagan & deny Hagan fair treatment in her court! Thus, as I have stated & attested to, there have been cases in the 5th Cir. involving Judge Jane Boyle, that would cause a reasonable person to harbor doubts about the presiding in Judge Jane Boyle's Court, which causes doubt as to Judge Jane Boyle's ability to be impartial towards this defendant/debtor and/or Affiant! Thus Aver, Affiant's submits that Judge Jane Boyle's sentencing "Held March 3, 2011" to be invalid, for it was personal & bias as opposed to judicial correct in nature, which amounts to being Judicially Prejulice; and aver, the record in this case will show & demonstrate that Magistrate Judge Jane Boyle did prepair misleading reports in such a fashion to confuse the Defendant/Debtor and/or Affiant, thus, denying the Defendant/Affiant a fair & impartial treatment as to Affiant's/Debtor's cause; and yet, Jane Boyle's actions in the afore mentioned case were actual documents were prepared, which in Affiant's case verified by Hagans v Coggins case; and,

121. THAT, Affiant in behalf of Defendant did ask of Att. Scoggins, "What Happened In Court"...You promised me, that I was to receive or would receive ONLY Ten (10) Years Sentence, that was our contractual agreement, was it not??? Then Att. Scoggins made a qualified Attestment, when he stated "Judge Jane Boyle said of you, & I quote"..."She Hated You", & "[IF] she could have, she would given you an even greated sentence" & "They ALL hated You"! Based upon these revelations, I conclude that ALL of the Respondent's hated me, & that is why Judge Jane Boyle enhanced my sentence, when she never met the requirement of Judicial Notice of the Ten (10) day rule of Notification of Enhancement! For, from the date that the Plea Agreement is presented to the Defendant in Court, the Judge is required to give his/her Judicial Notice that he/she plans to enhance the Defendant, just as the Prosecutor and/or The Probation Officer is required to give a (30) Thirty day advance judicial notice of enhancement! Which in Affiant's/Defendant's case makes Debtor's enhancement, not just illegal, but also [Un]constitutionally Null & Void! To Wit, this then causes reasonable doubt even as to Defendant's/Debtor's and/or Affiant's conviction(s)! Which makes them liable for their both Public & Private "Produce Liability, for an Illegal conviction and/or enhancement; Therein Aver, by/un-

der Judge Jane Boyle's & the collective concerred actions by the Respondent's & Affiant's own Counsel, Af-
fiant has shown & demonstrated both bias & prejudice on their part towards Affiant...Defendant/Debtor, in
which the same said concerted actions by the Actor's in this case, "Att. Scoggins & Respondnet's" seriously
affected the fairness, integrity, & public reputation of the Judicial System & Affiant's proceedings in this
matter; See: Puckett v U.S., supra! Thus Aver, by Att. Scoggins & Respondent's holding back this informa-
tion from Affiant/Debtor until "After" sentencing & the plea hearing, they, the Actor's/Respondent's did/
have "Commited Fraud", & had Affiant known about this information prior to the Plea Hearing & Plea Senten-
cing, Affiant would have opted to have gone to a Trial By Jury; See: McMann v Richardson, 397 U.S. 759 (19-
70), which pertains to the Sixth Amendment Right To Effective Assistance Of Counsel Implicitly recognizes
that the criminal defense counsel must be competent; I, as the undersigned Sovereign-In-Fact Sentient Liv-
ing Being, & the Secured Party Claimant "By, Of, For, & As To" Defendant/Debtor, must Query by a Affidavit
Sift, is this not "Ineffective Assistance Of Counsel & Fraud" upon the concerted actions of the Actor's/
Respondent's & Affiant's Att. Scoggins; and,

122. THAT, Affiant based upon the foregoing Apostille Affidavit of Truth, By A Verified Plain Statement Of
Facts, Affiant respectfully request/demands that Judge Jane Boyle & the Entire Prosecutorial team that did
prosecute the Defendant, be Recused from hearing Affiant's 2255 Motion! And Avers, to similar past § 2255
Motions, I offer the following Two Cited Cause to support Affiant's reasoning; See: Ruston v Cruz, 3: 10-11
-CV-01869-B; & Buenrostro v U.S., 4:08-Cv-0101-HLM (N.D. Georgia Sept. 2009); @ 28 U.S.C. § 47; and,

C A V E T ;

123. THAT, In The Above Styled & Numbered Cause, Affiant offers the following Caveat/Sumation! That the Quoted
Jurisdictions, specify that the Federal Corporate United States Government & ALL of its Municipalities/In-
strumentalities, Affiliates or Subdivisions thereform, and their respective Agency(s) & Agent(s), do not
have lawful jurisdiction over this cause and/or over a Sentient Living Being, esp. a Sovereign-In-Fact
American National Citizen under the Constitution of (1787) & its Amended Bill Of Rights of (1791), as pur-
suant to the Cited Case Law, Cites, & Lawful United States Federal Jurisdiction quoted above & herein! Aver,
that under Title 28 U.S.C. § 3001, Subparagraph 15; "No Juristic or corporate entity, nor any of their
subdivision, Agency(s) or Agent(s), may harm, damage, or injure a Sovereign-In-Fact Sentient Living Being,
without committing a criminal act, & that criminal act is "Treason By Trespass Vi Et Armis"! Affiant does
believe that the Government "Shall / Must" refut/rebut this Apostille Affidaivt Of Truth In Support Of Af-
fiant's Tort's Action(s) & Claim(s), item for item, point for/by point, line by line, attestment by attest-
ment, contention by contention, presentment by presentment, quote by quote, "AND" [IF] NOT or [IF] the
Court fails to refut/rebut Affiant's same said Apostille Affidavit Of Truth, By a Verified Plain Statement Of
Facts...With Its Own "Apostille Affidavit of Truth, By A Verified Plain Statement Of Facts...With any/all
appropriate cited case law, then every one of the Respondents as in Default & Dishonor, & that they have
Defaulted/Dishonored Affiant, & did cause irreputiable harm to Affiant, which makes the Respondent's Lia-
abe under the Constitution of (1787) & under the U.C.C. § 28: 7-102 through 7-609, & under verious Statutes
for Fraud, due to, & I quote..."Attorney's at Law are considered "Officers of the Court"; See: infra,
Page 3, 7 C.J.S., page 707 case law), Whereby, Judges, Prosecutors & Private (whether in their Public or

Private) Practice Lawyers/Attorneys...are Attorney's At Law! And Aver, the Courts are empowered by respec-
tive Constitution of The States of the Union (Republic) (See: Constitution In & For The United States Of
America (1787 - 1789), Article IV, Section 4; The Citizens for their Prosperity Shall From This Date For-
ward Shall Enjoy A Republican Form Of Government, & be free from Taxation, levy or lien, without due pro-
cess or just cause"; Therefore, [IF] Attorneys are "officers of the court", then they are, in-fact, govern-
ment agents! This fact is borne out by fact & was pointed out by "Henry J. Freindly, in University of
Pennsylvania Law Review, Vol. 123, 1267, page 1288, which in parts reads: The apperanace of counsel for the
Citizen is likely to provide or lead to the government to provide one — or at least to cause the govern-
ment to act like one; (emphasis added)! Which means quite Obviously, the alleged "Defense Counsel" is a
government agent sitting at the "Defense Table", Not the "accused(s)" guaranteed by the Sixth amendments"
"Effective Assistance Of Counsel", or "guaranteed by the Sixth Amendment"; and,

124. THAT, [IF] the government hold that a federal defendant's unknowing & unintentional actions have substan-
tial affected Commerce; (as to where-with-out any factual proof) by stretching the interstate commerce
statute to the/its outer-most-limits, unconscionable limits of space, on an otherwise wholly State : crime,
to make it a federal crime! Thereby, all means, the government shall be held to prove that Affiant has
substantially affected the obstruction of justice & substantially provided substantial NOTaccepted responsi-
bility, or show Affiant how he has NOT substantially provided substantial assistance to the government, and
prove how Affiant has substantially affected our Nations Interstate Commerce in a purely Intrastate action!
Aver, in the field of criminal law enforcement, where State powers is pre-eminate, & National Authority be-
limited to those areas in which Interstate Commerce is truely affected.(Please see the jurisdiction above
herein as to Federal Jurisdiction...What is federal jurisdiction...and what is not federal jurisdiction...&
how the presumed corporate federal jurisdiction...is not the lawful/legal/proper jurisdiction for Affiant,
nor Defendant/Debtor to be, or to have a Trial By Jury under...which makes Defendant's/Affiant's Plea Hear-
ing & Sentencing...[UN]Constitutional)! the police power is essentially reserved to the states! Aver, that
principle 'must' guide the courts review of congresses excessive use of the Commerce Clause power in the
area of criminal law; See: U.S. v McCoy, supra,

125. THAT, in Affiant's/Defendant's case this action does not affect or regulate economic or commercial activ-
ities & Interstate Commerce, & certaintally not the type of direct or substantially relationship necessary
to justify the invocation by congress of its commerce power in order to regulate Intrastate Criminal Activ-
ties; See: U.S. v Shipley, supra; U.S. v Lopez, supra; U.S. v Morrison, supra; & U.S. v Zimmerman, supra;
And aver, the mere existance of Congressional findings is not sufficient by itself to substain the Consti-
tutionality of Legislation, as applied under the Commerce Clause; See: U.S. Constitution, Article 1 § 8,
Cl. 3! Affiant activitiy was not of the type demonstrated to be substantially connected or related to In-
terstate Commerce; Thus, Affiant urges the Court, that for the lack of Federal Jurisdiction as described
above & herein, under Federal Jurisdiction, & under 18 U.S.C.S. § 2251(a)&(e) & 2422(b), was [UN]constitu-
tionally applied; See: United States District Judge Ted Stewarts opinion & ruling held @ U.S. v Bautista,
319 F.Supp. 2d 1272 (10th Cir. 2004); See: Florida Bar v Sandstrom, 609 So. 2d 583 (Fla. 1992); which reads
in part: Ineffective Assistance Of Counsel may serve as the predicate for disciplinary actions, although

reversal of a clients conviction on grounds of ineffective assistance of counsel, will not always result in determination of ethical misconduct; In re Agrillo, 604 N.Y.S. 2d 171 (App. Div. 1993); and,

126. THAT, under 28 U.S.C. § 2201 et seq. for Declaratory Judgment, & 28 U.S.C. § 2241 et seq. for the Original Writ Of Quo Warranto, Habeas Corpus or Prohibition Of Errors Coram Nobis, ALL via an Extraordinary Writ, by application of/to a Motion To Dismiss The Indictment/Vacate The Judgment/Set Aside Verdict and/or Sentencing, within an existing case where there is already a judgment, should be styled as a simple motion to dismiss! Which the Defendant/Affiant must then within same said Motion, present a question by declaration as to "What is the geographical application of any given law or set of laws, which is an additional important element of proof; See: Foley Brothers v Filardo (1948) 336 U.S. 281; where We/The Court will find that It is a well established principle of law that ALL federal legislation applies ONLY within the territorial limited of the United States, unless contrary intent appears! Aver, Congress can ONLY exercise a general power enumerated in Article 1, Sec. 8 of the Constitution, but the application of the jurisdiction of law is limited to the geographical United States, i.e., territory belonging ONLY to the United States! And Aver, the other element of burden of proof, i.e., proof of subject matter jurisdiction, whereby the Advocate, in this case is the U.S. Attorney General or the U.S. Attorney, whom must prove the venue or geographical application of any given statute as it applies to subject matter jurisdiction! And Yet Aver, the U.S. Federal Corporate District Courts under 28 U.S.C. § 2072(b), reads in part: That Federal Rules of procedure may not deprive anyone "Esp. A Sovereign-In-Fact Sentient Living Being, that is an American National Citizen" of their substantive rights! Thus Aver, these Rights are secured by the Fourth, Fifth, & Sixth Amendments, & are literally carved in stone, & they are cumulative, & they are NOT independant or elective unless someone knowingly, willingly, voluntarily and/or intentionally chooses "Without being under Threat, Duress, or Coercion" to forfeit one or more of these specified rights! Also Aver, the Fourth Amendment requirement for probable cause, "Shall Be Supported By An Oath of By An Affirmation", which the jumping off point is that "No Want's or Warrants Shall be issued, but upon probable cause, supported by an Oath and/or An Affimation; See: Hale v Hinkel, 50 L.Ed. 652; and,

## C O N C L U S I O N :

That WHEREAS, Affiant has proven beyond any reasonable doubt, that the named Respondent's, & the Named Individuals/Partys, did by their collective concerted actions, Under Malfeasance, Misfeasance, & Nonfeasance of Law, did knowingly, willingly, voluntarily, & intentionally commit A'many Fraudulant Acts & the Omission of Acts, "Duty's that required their performance of their job discription"! Aver, with their concerted actions under 28 U.S.C. z 3001, subparagraph 15, & the rest of the unlawful violations, "Constitutional Fraud against an agent of the federal Corporate Government, & against a Sovereign-In-Fact American National Citizen & Sentient Living Being, then by these compounding concerted actions, the acts & omissions are criminal & commercial in nature, which Affiant hold them to their product liability! Thus Aver, this Motion/Writ is hereby a Commercial & Judicial Notice of Fault & Lien, for their Fraud committed against a Sentient Living being, this as to whether their Public or Private capacity! Albeit Aver, Affiant request/demands the following remedy upon which relief can be granted! The Court shall dismiss the indictment, vacate the judgment, set aside the verdict & sentencing, & then grant Affiant a New Trial By Jury, but ONLY under The U.S. constitution of (1787)

JHZ08021953                           Page # 40

and ONLY under F.R.Civ.P. 8; whereby Affiant will make a plea as to his name in both upper & lower case
letters, i.e. "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, in bar of Propria Persona, & as to the In-
dictment & Charge's, Affiant Will Plead In Bar Of Coram Non Sub Judex, unless the Honorable court will grant
Affiant the right to Plead Under Actual Innocence, under F.R.Civ.P. 8 as granted under the U.S. Constitution
of (1787), & its amended Bill Of Rights of (1791); otherwise this court & its public officers will again
commit Fraud & Treason By Trespass By vi Et Armis; This also applies equally to all Respondent's & named In-
dividuals, named within this Motion/Writ: and,

THAT WHEREAS, States, Attest, & Affirms that this Motion/Writ & the corrected wrongs, with proper subject
matter jurisdiction, with the noticed errors committed by Att. Scoggins, & the Named Respondnet's within, is
thereby what relief can be granted thereupon, & it is also the remedy upon which relief can ge granted! Aver,
that relief is to Grant Affiant, "by & through Debtor "JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953", the Dismissal
of the Original & any Subsequently Indictment(s), To Vacate The Judgment, & To Set Aside The Verdict and Sen-
tencing By Motion of the Court & Affiant, By & Through Writ's of Quo Warranto, Habeas Corpus, & of Prohibition
Error's Coram Nobis & Judex "A 2241 & 2243 Writ's", under 28 U.S.C. § 3001, subparagraph 15; § 47; § 2255 & a
Motion 2255 Ineffective Assistance of Counsel, & as applied to every member of the then Court, to include the
Clerk Of The Court, Whom is the "Both Public & Private" Entity, "As A Corporate/Juristic (person, vessel, fic-
tion, debtor, & straw-man...Public Capacity...also to include his Private Capicity, As a Sentient Living Be-
ing), & all named Respondent's within this filing!

THAT WHEREAS, the Relief sought & that is to be granted, is that Defendant/Debtor...by & through Affiant be
Granted a Trial By Jury...after this cause "Plea Agreement, & As To The Government's Breach Of Contract", is
over turned, Summarily/With Prejudice, For Want Of Prosecution...this also aply applies to the Verdict, Judg-
ment, & Sentencing...Under An [UN]Constitutional Plea Agreement "Article III, Sec. 2, Cl. 3...due to the Known
Fact, That An Article I Court, & an Article I of II Judge can not hold his office for Life, nor can he/she
Give an Article VI Oath as to his/her office, nor as to Adjudicate any cause as an Article III Court or as an
Article III Judge...& Affiant is sure that this court does not want to commit the same said "Treason By Tres-
pass Vi Et Armis"! This Brief is being filed by Affiant "In Bar Of Propria Persona...As To His GOD Given Sen-
tient Living...Certificate Of Live Birth Name, e.g. "Jackie Harold, family of Zimmerman", & as to the Charges,
Pleads..."In Bar Of Coram Non Sub Judex" as to the same said Certificate Of Live Birth Name! And Aver, will
Make An Conditional Plea of Guilty, but ONLY asto F.R.Civ.P. 8, supra!

THAT WHEREAS, this Statement/Presentation...Motion To Dismiss The Indictment; Vacate The Judgment; Set
Aside The Verdict & Sentencing...Summerally With Prejudice, For Want Of Prosecution, upon the Presentation To
The Filing Officer "Clerk Of The Court", & Is Considered To Be FILED FOR RECORD in the district court In & For
The United States Of America; c/o: THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF TEXAS, DALLAS DIV-
ISION; "BY": "Jackie Harold, family of Zimmerman, Jr." (c) 1953; /s/ _Jackie Harold Zimmerman_ sui juris;
Dated: September __, 2012 C.E.! Under U.C.C. 28: 1-308 Rev., 3-419; 9-401 & 9-403(1)

NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL, & NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT;

THAT WHEREAS, THIS COURT & ITS OFFICERS HAVE BEEN DULY, ACTUAL & CONSTRUCTIVE NOTICED, & have knowledge of the
law & of the product liability in event of any violation of my being and/or my rights and/or the unauthorized
use of my Constitution of (1787), & its Amended Bill Of Rights of (1791), & as to my Copyrighted Trade Name's
& Trade Mark's; and,

Further Affiant Saith Naught: Attestation At Common Law:



THAT WHEREAS, This "Affidavit", "Notice", "Motion", & "Writ" is executed NUNC PRO TUNC, this the ___ day of September, 2012 C.E., & this "Affidavit", "Notice", "Motion", & "Writ" is placed under/in the Original Jurisdiction pursuant to the Constitution of (1787) in the district court, In & for The United States Of America (1787 - 1789), & the Amended Bill Of Rights of (1791), hereby under the Common-Law-Venue, & is "Without" The Venue Of The Corporate/Corporation of the United States; and,

### D E C L A R A T I O N   O F   I N D E P E N D A N C E ;

THAT WHEREAS, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, in the name of the Almighty Creator "Yahweh, by my Declaration of Independance, solemnly published & declared my rights to Expatriate absolute, my res in trust to the foreign jurisdiction known as the municipal corporation of the District Of Columbia, a Democracy, & return to the Republic, any/all past, present, & future and/or present political ties implied by operation of law, or otherwise in trust with the Democracy is hereby "DISSOLVED"! THAT, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, do hereby declare that I have full power to contract & establish commerce as guaranteed & granted under/by the full Ten (10) Amendments to the Bill Of Rights to the Constitution of the de jure United States of America, a Republic; and,

### O A T H ,   S I G N A T U R E ,   &   V E R I F I C A T I O N ;

THAT WHEREAS, I, "As The Undersigned Secured Party Affiant/Claimant, "Jackie Harold, family of Zimmerman, Jr." (c) 1953, does herewith certify & swear on the Undersigned's unlimited commercial liability that the Undersigned issued this ACTUAL & CONSTRUCTIVE COMMERCIAL & JUDICIAL NOTICE OF FAULT & LIEN with the sincere intent, that the Undersigned is competent to state, make, & give testimony to the facts of the matters set forth herein, that the contents are true, accurate, correct, certain, & complete, that they are not meant nor intended to mislead this to the best of my knowledge, beliefs, & understandings, pursuant to the pains & penalty of perjury, under title 28 U.S.C. § 1746, that they are the truth, the whole truth, & nothing but the truth...So Help Me GOD...; and,

NOTE: Maxim of Law: 1. In Commerce, Truth Is Sovereign; 2. For a matter to be resolved or to have a remedy, it must first be presented; 3. Point of Law...Silence Equates To An Agreement; Whereby the Undersigned Secured Party / Sovereign-In-Fact American National Citizen, "NOT" having the status of Unites States Citizen, being without the Jurisdiction & Venue of the District Of Columbia, having by my "Certificate Of Live Birth" the actual status of Non-Resident Alien, & having secured said status & inalienable Rights of the Sovereign, do hereby DECLARES NULL, VOID, & FRAUDULENT said "Contract's, Covenant's, Agreement's, Social Compact's and/or Construct's, & do hereby request/deamand that ALL records, files, account(s), bond(s)/fund(s), fixtures, debentures, indentures, derived therefrom & as to the government cause/case/charges "Case #: 3-10CR-027-B, are to be released to the Secured Party Claimant...IMMEDIATELY;, and,

THAT WHEREAS, This Instrument/Document Is A Private & Non-Negotiable Instrument Betwixt Two Party(s);

### T H E   C O N S T I T U T I O N   O F   T H E   U N I T E D   S T A T E S   O F   A M E R I C A ;

"WE THE PEOPLE of the United States of America, in order to form a more perfect union, establish justice, insure domestic tranquility, provide for the domain defense, promote the general welfare, & ensure the blessing of liberty to ourselves & our prosterity, do ordain & establish this Constitution for the United States Of America"; Whereas, a Sovereign American/ Free Inhabitant of the de jure United States Of America, I have reminded them of the circumstances of their repeated assult on our person & the de jure Constitution! Aver, I have appealed to their native justice & magnanimity & I have conjured them by our ties to a common knowledge to disallow these usurpations which would inevitably interrupt our connections & correspondence; and,

THAT, they have been deaf to the voice of justice & consanguinity! I, therefore, acquiesce in the necessity appealing to the Supreme Judge of this world for the rectitude of my intention due in the name by the authority of the good "people" of this County solemnly published & declared that as a Sovereign American State

Citizen & pledge to the de jure "People" of the Constitution of (1787), In & for The United States Of America of (1787 - 1789) C.E., my Life, Liberty, Fortune, & Sacred Honor; and,

THAT, When the context so requires, the masculine gender, includes the feminine and/or neuter, & the singular numbers include the plural; and,

BY. /s/ _____ ens legis,
"JACKIE HAROLD ZIMMERMAN, JR.", (c) 1953;
Fed. Reg. #: 39657-177 / Butner II
Federal Correctional Institution, II
P.O. BOX 1500 / Old Highway 75
BUTNER, N.C. [27509]      "DEBTOR"

BY. /s/ Jackie Harold Zimmerman _____ sui juris;
"Jackie Harold, family of Zimmerman, Jr.", (c)
1953; As Secured Party, Claimant, Paramount Cer-
ditor, Grantor, Guarantor, Proprietary Trade Name
& Mark Copyrighted Owner, & Holder-In-Due-Course
of any/all property(s) known as DEBTOR

J U R A T :

STATE OF NORTH CAROLINA]

COUNTY OF GRANVILLE      ]ss:

Subscribed, Affirmed, & Sworn To Before Me a Notary, on this the 20th day of September, 2012 C.E., that "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, did personally appear before with verified Identification to be the "MAN" whose name is subscribed to the above & foregonig Instrument/Motion/Writ; and do hereby wish to ex-ecute this Instrument/Motion/Writ in the district court, In & For The United States Of America (1789); and,

Notary Public Name: ___ Elizabeth Haithcock ___ ; GIVEN UNDER MY HAND & OFFICIAL SEAL:

Notary Public Signature: Elizabeth Haithcock ___ ;

My Commission Expires On: _ 09-29-2014 _____ ;

Affiant is not a licensed Attorney, therefore, this Court can not expect Affiant to be held to the same said Lawful and/or Legal Standards of a Licensed Bar Attorney;

BY: /s/ Jackie Harold Zimmerman ____ sui juris;
"Jackie Harold, family of Zimmerman, Jr.", (c) 1953;

Pre-Paid - Priority Exempt From Tax, Levy, Lien, Debt, Obligation, Liability or Product Liability, Bills, Presentment, Procedures, and/or otherwise Instruments of whatsoever type; Perfered Stock; and,

C E R T I F I C A T E   O F   S E R V I C E :

THAT WHEREAS, I, "Jackie Harold, family of Zimmerman, Jr.", (c) 1953, (hereinafter: "Affiant"), do hereby cer-
tify that on the 27 day of Septmeber, 2012 C.E., I, "Affiant", did place in the R&D Mail Room Depository, An
Original Copy of the Motion: "Motion To dismiss The Indictment, Vacate The Judgment, Set Aside The Verdict and
Sentencing; Plus, Two (2) certified & notorized documents/instruments of the same, & did Mail by Certified Re-
urn Mail Receipt, to the district court, In & For The United States of America (1787 - 1789), c/o: The United
States District Court, For The Northern District of Texas, Dallas Division; and,


To: district court, In & for The United States of America (1787 - 1789);

    c/o: The United States District Court;
    In & For The Northern District of Texas;
    Dallas Division,
    1100 Commerce St.

    Dallas, Texas, [75242] Use Of Zip Code Does Not Grant
    nor authorized anytype or form of jurisdiction, to
    nay interested party;


BY: /s/ _Jackie Harold Zimmerman_     sui juris;
    "Jackie Harold, family of Zimmerman, Jr.", (c)

# Federal Jurisdiction

In the United States, there are two separate and distinct jurisdictions, such being the jurisdiction of the States within their own territorial boundaries and the other being federal jurisdiction. Broadly speaking, state jurisdiction encompasses the legislative power to regulate, control and govern real and personal property, individuals and enterprises within the territorial boundaries of any given State. In contrast, federal jurisdiction is extremely limited, with the same being exercised only in areas external to state legislative power and territory. Notwithstanding the clarity of this simple principle, the line of demarcation between these two jurisdictions and the extent and reach of each has become somewhat blurred, due to popular misconceptions and the efforts expended by the federal government to conceal one of its major weaknesses. Only by resorting to history and case law can this obfuscation be clarified and the two distinct jurisdictions be readily seen.

The original thirteen colonies of America were each separately established by charters from the English Crown. Outside of the common bond of each being a dependency and colony of the mother country, England, the colonies were not otherwise united. Each had its own governor, legislative assembly and courts, and each was governed separately and independently by the English Parliament.

The political connections of the separate colonies to the English Crown and Parliament descended to an unhappy state of affairs as the direct result of Parliamentary acts adopted in the late 1760's and early 1770's. Due to the real and perceived dangers caused by these various acts, the First Continental Congress was convened by representatives of the several colonies in October, 1774, the purpose of which was to submit a petition of grievances to the British Parliament and Crown. By the Declaration and Resolves of the First Continental Congress, dated October 14, 1774, the colonial representatives labelled these Parliamentary acts of which they complained as "impolitic, unjust, and cruel, as well as unconstitutional, and most dangerous and destructive of American rights," and the purpose of which were designs, schemes and plans "which demonstrate a system formed to enslave America." Revolution was assuredly in the formative stages absent conciliation between the mother country and colonies.

Between October, 1775, and the middle of 1776, each of the colonies separately severed their ties and relations with England, and several adopted constitutions for the newly formed States. By July, 1776, the exercise of British authority in any and all colonies was not recognized in any degree. The capstone of this actual separation of the colonies from England was the more formal Declaration of Independence.

The legal effect of the Declaration of Independence was to make each new State a separate and independent sovereign over which there was no other government of superior power or jurisdiction. This was clearly shown in M'Ilvaine v. Coxe's Lessee, 8 U.S. (4 Cranch) 209, 212 (1808), where it was held:

> "This opinion is predicated upon a principle which is believed to be undeniable, that the several states which composed this Union, so far at least as regarded their municipal regulations, became entitled, from the time when they declared themselves independent, to all the rights and powers of sovereign states, and that they did not derive them from concessions made by the British king. The treaty of peace contains a recognition of their independence, not a grant of it. From hence it results, that the laws of the several state governments were the laws of sovereign states, and as such were obligatory upon the people of such state, from the time they were enacted."

And a further expression of similar import is found in Harcourt v. Gaillard, 25 U.S. (12 Wheat.) 523, 526, 527 (1827), where the Court stated:

"There was no territory within the United States that was claimed in any other right than that of some one of the confederated states; therefore, there could be no acquisition of territory made by the United States distinct from, or independent of some one of the states.

"Each declared itself sovereign and independent, according to the limits of its territory.

"[T]he soil and sovereignty within their acknowledged limits were as much theirs at the declaration of independence as at this hour."

Thus, unequivocally, in July, 1776, the new States possessed all sovereignty, power, and jurisdiction over all the soil and persons in their respective territorial limits.

This condition of supreme sovereignty of each State over all property and persons within the borders thereof continued notwithstanding the adoption of the Articles of Confederation. In Article II of that document, it was expressly stated:

"Article II. Each state retains its sovereignty, freedom, and independence, and every Power, Jurisdiction and right, which is not by this confederation expressly delegated to the United States, in Congress assembled."

As the history of the confederation government demonstrated, each State was indeed sovereign and independent to the degree that it made the central government created by the confederation fairly ineffectual. These defects of the confederation government strained the relations between and among the States and the remedy became the calling of a constitutional convention.

The representatives which assembled in Philadelphia in May, 1787, to attend the Constitutional Convention met for the primary purpose of improving the commercial relations among the States, although the product of the Convention produced more than this. But, no intention was demonstrated for the States to surrender in any degree the jurisdiction so possessed by the States at that time, and indeed the Constitution as finally drafted continued the same territorial jurisdiction of the States as existed under the Articles of Confederation. The essence of this retention of state jurisdiction was embodied in Art. I, Sec. 8, Cl. 17 of the U.S. Constitution, which read as follows:

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."

The reason for the inclusion of this clause in the Constitution was and is obvious. Under the Articles of Confederation, the States retained full and complete jurisdiction over lands and persons within their borders. The Congress under the Articles was merely a body which represented and acted as agents of the separate States for external affairs, and had no jurisdiction within the States. This defect in the Articles made the Confederation Congress totally dependent upon any given State for protection, and this dependency did in fact cause embarrassment for that Congress. During the Revolutionary War, while the Congress met in Philadelphia, a body of mutineers from the Continental Army surrounded the Congress and chastised and insulted the members thereof. The governments of both Philadelphia and Pennsylvania proved themselves powerless to remedy the situation, and the Congress was forced to flee first to Princeton, New Jersey, and finally to Annapolis, Maryland. Thus, this clause was inserted into

the Constitution to give jurisdiction to Congress over its capital, and such other places as Congress might purchase for forts, magazines, arsenals, and other needful buildings wherein the State ceded jurisdiction of such lands to the federal government. Other than in these areas, this clause of the Constitution did not operate to cede further jurisdiction to the federal government, and jurisdiction over unceded areas remained within the States.

While there had been no real provisions in the Articles which permitted the Confederation Congress to acquire property and possess exclusive jurisdiction over such property, the above clause filled an essential need by permitting the federal government to acquire land for the seat of government and other purposes from certain of the States. Such possessions were deemed essential to enable the United States to perform the powers conveyed by the Constitution, and a cession of lands by any particular State would grant exclusive jurisdiction of such lands to Congress. Perhaps the most cogent reasons and explanations for this clause in the Constitution were set forth in Essay No. 43 of The Federalist:

"The indispensable necessity of complete authority at the seat of government carries its own evidence with it. It is a power exercised by every legislature of the Union, I might say of the world, by virtue of its general supremacy. Without it not only the public authority might be insulted and its proceedings interrupted with impunity, but a dependence of the members of the general government on the State comprehending the seat of the government for protection in the exercise of their duty might bring on the national councils an imputation of awe or influence equally dishonorable to the government and dissatisfactory to the other members of the Confederacy. This consideration has the more weight as the gradual accumulation of public improvements at the stationary residence of the government would be both too great a public pledge to be left in the hands of a single State, and would create so many obstacles to a removal of the government, as still further to abridge its necessary independence. The extent of this federal district is sufficiently circumscribed to satisfy every jealousy of an opposite nature. And as it is to be appropriated to this use with the consent of the State ceding it; as the State will no doubt provide in the compact for the rights and the consent of the citizens inhabiting it; as the inhabitants will find sufficient inducements of interest to become willing parties to the cession; as they will have had their voice in the election of the government which is to exercise authority over them; as a municipal legislature for local purposes, derived from their own suffrages, will of course be allowed them; and as the authority of the legislature of the State, and of the inhabitants of the ceded part of it, to concur in the cession will be derived from the whole people of the State in their adoption of the Constitution, every imaginable objection seems to be obviated.

"The necessity of a like authority over forts, magazines, etc., established by the general government, is not less evident. The public money expended on such places, and the public property deposited in them, require that they should be exempt from the authority of the particular State. Nor would it be proper for the places on which the security of the entire Union may depend to be in any degree dependent on a particular member of it. All objections and scruples are here also obviated by requiring the concurrence of the States concerned in every such establishment."

Since the time of the ratification and implementation of the present U.S. Constitution, the U.S. Supreme Court and all lower courts have had many opportunities to construe and apply the above provision of the Constitution. And the essence of all these decisions is that the States of this nation have exclusive jurisdiction of property and persons located within their borders, excluding such lands and persons residing thereon which have been ceded to the United States.

Perhaps one of the earliest decisions on this point was United States v. Bevans, 16 U.S. (3 Wheat.) 336

(1818), which involved a federal prosecution for a murder committed on board the Warship, Independence, anchored in the harbor of Boston, Massachusetts. The defense complained that only the state had jurisdiction to prosecute and argued that the federal Circuit Courts had no jurisdiction of this crime supposedly committed within the federal government's admiralty jurisdiction. In argument before the Supreme Court, counsel for the United States admitted as follows:

> "The exclusive jurisdiction which the United States have in forts and dock-yards ceded to them, is derived from the express assent of the states by whom the cessions are made. It could be derived in no other manner; because without it, the authority of the state would be supreme and exclusive therein," 3 Wheat., at 350, 351.

In holding that the State of Massachusetts had jurisdiction over the crime, the Court held:

> "What, then, is the extent of jurisdiction which a state possesses?

> "We answer, without hesitation, the jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power," 3 Wheat., at 386, 387.

> "The article which describes the judicial power of the United States is not intended for the cession of territory or of general jurisdiction. ...Congress has power to exercise exclusive jurisdiction over this district, and over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings.

> "It is observable that the power of exclusive legislation (which is jurisdiction) is united with cession of territory, which is to be the free act of the states. It is difficult to compare the two sections together, without feeling a conviction, not to be strengthened by any commentary on them, that, in describing the judicial power, the framers of our constitution had not in view any cession of territory; or, which is essentially the same, of general jurisdiction," 3 Wheat., at 388.

Thus in Bevans, the Court established a principle that federal jurisdiction extends only over the areas wherein it possesses the power of exclusive legislation, and this is a principle incorporated into all subsequent decisions regarding the extent of federal jurisdiction. To hold otherwise would destroy the purpose, intent and meaning of the entire U.S. Constitution.

The decision in Bevans was closely followed by decisions made in two state courts and one federal court within the next two years. In Commonwealth v. Young, Brightly, N.P. 302, 309 (Pa. 1818), the Supreme Court of Pennsylvania was presented with the issue of whether lands owned by the United States for which Pennsylvania had never ceded jurisdiction had to be sold pursuant to state law. In deciding that the state law of Pennsylvania exclusively controlled this sale of federal land, the Court held:

> "The legislation and authority of congress is confined to cessions by particular states for the seat of government, and purchases made by consent of the legislature of the state, for the purpose of erecting forts. The legislative power and exclusive jurisdiction remained in the several states, of all territory within their limits, not ceded to, or purchased by, congress, with the assent of the state legislature, to prevent the collision of legislation and authority between the United States and the several states."

A year later, the Supreme Court of New York was presented with the issue of whether the State of New

York had jurisdiction over a murder committed at Fort Niagara, a federal fort. In People v. Godfrey, 17 Johns. 225, 233 (N.Y. 1819), that court held that the fort was subject to the jurisdiction of the State since the lands therefore had not been ceded to the United States. The rationale of its opinion stated:

> "To oust this state of its jurisdiction to support and maintain its laws, and to punish crimes, it must be shown that an offense committed within the acknowledged limits of the state, is clearly and exclusively cognizable by the laws and courts of the United States. In the case already cited, Chief Justice Marshall observed, that to bring the offense within the jurisdiction of the courts of the union, it must have been committed out of the jurisdiction of any state; it is not (he says,) the offence committed, but the place in which it is committed, which must be out of the jurisdiction of the state."

The case relied upon by this court was U.S. v. Bevans, supra.

At about the same time that the New York Supreme Court rendered its opinion in Godfrey, a similar fact situation was before a federal court, the only difference being that the murder committed in the case occurred on land which had been ceded to the United States. In United States v. Cornell, 25 Fed.Cas. 646, 648 No. 14,867 (C.C.D.R.I. 1819), the court held that the case fell within federal jurisdiction, describing such jurisdiction as follows:

> "But although the United States may well purchase and hold lands for public purposes, within the territorial limits of a state, this does not of itself oust the jurisdiction or sovereignty of such State over the lands so purchased. It remains until the State has relinquished its authority over the land either expressly or by necessary implication.
>
> "When therefore a purchase of land for any of these purposes is made by the national government, and the State Legislature has given its consent to the purchase, the land so purchased by the very terms of the constitution ipso facto falls within the exclusive legislation of Congress, and the State jurisdiction is completely ousted."

Almost 18 years later, the U.S. Supreme Court was again presented with a case involving the distinction between State and federal jurisdiction. In New Orleans v. United States, 35 U.S. (10 Pet.) 662, 737 (1836), the United States claimed title to property in New Orleans likewise claimed by the city. After holding that title to the subject lands was owned by the city, the Court addressed the question of federal jurisdiction and stated:

> "Special provision is made in the Constitution for the cession of jurisdiction from the States over places where the federal government shall establish forts or other military works. And it is only in these places, or in the territories of the United States, where it can exercise a general jurisdiction."

In New York v. Miln, 36 U.S. (11 Pet.) 102 (1837), the question before the Court involved the attempt by the City of New York to assess penalties against the master of a ship for his failure to make a report as to the persons his ship brought to New York. As against the master's contention that the act was unconstitutional and that New York had no jurisdiction in the matter, the Court held:

> "If we look at the place of its operation, we find it to be within the territory, and, therefore, within the jurisdiction of New York. If we look at the person on whom it operates, he is found within the same territory and jurisdiction," 36 U.S., at 133.

"They are these: that a State has the same undeniable and unlimited jurisdiction over all persons and things within its territorial limits, as any foreign nation, where that jurisdiction is not surrendered or restrained by the Constitution of the United States. That, by virtue of this, it is not only the right, but the bounden and solemn duty of a State, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation which it may deem to be conducive to these ends; where the power over the particular subject, or the manner of its exercise is not surrendered or restrained, in the manner just stated. That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called internal police, are not thus surrendered or restrained; and that, consequently, in relation to these, the authority of a State is complete, unqualified and exclusive," 36 U.S., at 139.

Some eight years later, in Pollard v. Hagan, 44 U.S. (3 How.) 212 (1845), the question of federal jurisdiction was once again before the Court. This case involved a contest of the title to real property, with one of the parties claiming a right to the disputed property via a U.S. patent; the lands in question were situated in Mobile, Alabama, adjacent to Mobile Bay. In discussing the subject of federal jurisdiction, the Court held:

"We think a proper examination of this subject will show that the United States never held any municipal sovereignty, jurisdiction, or right of soil in and to the territory, of which Alabama or any of the new States were formed," 44 U.S., at 221.

"[B]ecause, the United States have no constitutional capacity to exercise municipal jurisdiction, sovereignty, or eminent domain, within the limits of a State or elsewhere, except in the cases in which it is expressly granted," 44 U.S., at 223.

"Alabama is therefore entitled to the sovereignty and jurisdiction over all the territory within her limits, subject to the common law," 44 U.S., at 228, 229.

The single most important case regarding the subject of federal jurisdiction appears to be Fort Leavenworth R. Co. v. Lowe, 114 U.S. 525, 531, 5 S.Ct. 995 (1885), which sets forth the law on this point fully. There, the railroad company property which passed through the Fort Leavenworth federal enclave was being subjected to taxation by Kansas, and the company claimed an exemption from state taxation. In holding that the railroad company's property could be taxed, the Court carefully explained federal jurisdiction within the States:

"The consent of the states to the purchase of lands within them for the special purposes named, is, however, essential, under the constitution, to the transfer to the general government, with the title, of political jurisdiction and dominion. Where lands are acquired without such consent, the possession of the United States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor. The property in that case, unless used as a means to carry out the purposes of the government, is subject to the legislative authority and control of the states equally with the property of private individuals."

Thus, the cases decided within the 19th century clearly disclosed the extent and scope of both State and federal jurisdiction. In essence, these cases, among many others, hold that the jurisdiction of any particular State is co-extensive with its borders or territory, and all persons and property located or found therein are subject to such jurisdiction; this jurisdiction is superior. Federal jurisdiction results only from a conveyance of state jurisdiction to the federal government for lands owned or otherwise

possessed by the federal government, and thus federal jurisdiction is extremely limited in nature. And there is no federal jurisdiction if there be no grant or cession of jurisdiction by the State to the federal government. Therefore, federal territorial jurisdiction exists only in Washington, D.C., the federal enclaves within the States, and the territories and possessions of the United States.

The above principles of jurisdiction established in the last century continue their vitality today with only one minor exception. In the last century, the cessions of jurisdiction by States to the federal government were by legislative acts which typically ceded full jurisdiction to the federal government, thus placing into the hands of the federal government the troublesome problem of dealing with and governing scattered, localized federal enclaves which had been totally surrendered by the States. With the advent in this century of large federal works projects and national parks, the problems regarding management of these areas by the federal government were magnified. During the last century, it was thought that if a State ceded jurisdiction to the federal government, the cession granted full and complete jurisdiction. But, with the ever increasing number of separate tracts of land falling within the jurisdiction of the federal government in this century, it was obviously determined by both federal and state public officers that the States should retain greater control over these ceded lands, and the courts have acknowledged the constitutionality of varying degrees of state jurisdiction and control over lands so ceded.

Perhaps one of the first cases to acknowledge the proposition that a State could retain a degree of jurisdiction over property ceded to the federal government was Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455 (1930). In this case, a state attempt to assess an ad valorem tax on Army blankets located within a federal army camp was found invalid and beyond the state's jurisdiction. But, in regards to the proposition that a State could make a qualified cession of jurisdiction to the federal government, the Court held:

> "[T]he state undoubtedly may cede her jurisdiction to the United States and may make the cession either absolute or qualified as to her may appear desirable, provided the qualification is consistent with the purposes for which the reservation is maintained and is accepted by the United States. And, where such a cession is made and accepted, it will be determinative of the jurisdiction of both the United States and the state within the reservation," 281 U.S., at 651, 652.

Two cases decided in 1937 by the U.S. Supreme Court further clarify the constitutionality of a reservation of any degree of state jurisdiction over lands ceded to the jurisdiction of the United States. In James v. Dravo Contracting Company, 302 U.S. 134, 58 S.Ct. 208 (1937), the State of West Virginia sought to impose a tax upon the gross receipts of the company arising from a contract which it had made with the United States to build some dams on rivers. One of the issues involved in this case was the validity of the state tax imposed on the receipts derived by the company from work performed on lands to which the State had ceded "concurrent" jurisdiction to the United States. In the Court's opinion, it held that a State could reserve and qualify any cession of jurisdiction for lands owned by the United States; since the State had done so here, the Court upheld this part of the challenged tax notwithstanding a partial cession of jurisdiction to the U.S. A similar result occurred in Silas Mason Co. v. Tax Commission of State of Washington, 302 U.S. 186, 58 S.Ct. 233 (1937). Here, the United States was undertaking the construction of several dams on the Columbia River in Washington, and had purchased the lands necessary for the project. Silas Mason obtained a contract to build a part of the Grand Coulee Dam, but filed suit challenging the Washington income tax when that State sought to impose such tax on the contract proceeds. Mason's argument that the federal government had exclusive jurisdiction over both the lands and such contract was not upheld by either the Supreme Court of Washington or the U.S. Supreme Court. The latter Court held that none of the lands owned by the U.S. were within its jurisdiction and thus Washington clearly had jurisdiction to impose the challenged tax; see also Wilson v. Cook, 327 U.S. 474, 66 S.Ct. 663 (1946).

Some few years later in 1943, the Supreme Court was again presented with similar taxation and jurisdiction issues; the facts in these two cases were identical with the exception that one clearly involved lands ceded to the jurisdiction of the United States. This single difference caused directly opposite results in both cases. In Pacific Coast Dairy v. Department of Agriculture of California, 318 U.S. 285, 63 S.Ct. 628 (1943), the question involved the applicability of state law to a contract entered into and performed on a federal enclave to which jurisdiction had been ceded to the United States. During World War II, California passed a law setting a minimum price for the sale of milk, which law imposed penalties for sales made below the regulated price. Here, Pacific Coast Dairy consummated a contract on Moffett Field, a federal enclave within the exclusive jurisdiction of the United States, to sell milk to such federal facility at below the regulated price. When this occurred, California sought to impose a penalty for what it perceived as a violation of state law. But, the U.S. Supreme Court refused to permit the enforcement of the California law, holding that the contract was made and performed in a territory outside the jurisdiction of California and within the jurisdiction of the United States, a place where this law didn't apply. Thus, in this case, the existence of federal jurisdiction was the foundation for the ruling. However, in Penn Dairies v. Milk Control Commission of Pennsylvania, 318 U.S. 261, 63 S.Ct. 617 (1943), an opposite result was reached on almost identical facts. Here, Pennsylvania likewise had a law which regulated the price of milk and penalized sales of milk below the regulated price. During World War II, the United States leased some land from Pennsylvania for the construction of a military camp; since the land was leased, Pennsylvania did not cede jurisdiction to the United States. When Penn Dairies sold milk to the military facility for a price below the regulated price, the Commission sought to impose the penalty. In this case, since there was no federal jurisdiction, the Supreme Court found that the state law applied and permitted the imposition of the penalty. Thus, these two cases clearly show the different results which can occur with the presence or absence of federal jurisdiction.

A final point which must be made regarding federal jurisdiction involves the point as to when such jurisdiction ends or ceases. This point was considered in S.R.A. v. Minnesota, 327 U.S. 558, 66 S.Ct. 749 (1946), which involved the power of a State to tax the real property interest of a purchaser of land sold by the United States. Here, a federal post office building was sold to S.R.A. pursuant to a real estates sale contract, which provided that title would pass only after the purchase price had been paid. In refuting the argument of S.R.A. that the ad valorem tax on its equitable interest in the property was really an unlawful tax on U.S. property, the Court held:

"In the absence of some such provisions, a transfer of property held by the United States under state cessions pursuant to Article I, Section 8, Clause 17, of the Constitution would leave numerous isolated islands of federal jurisdiction, unless the unrestricted transfer of the property to private hands is thought without more to revest sovereignty in the states. As the purpose of Clause 17 was to give control over the sites of governmental operations to the United States, when such control was deemed essential for federal activities, it would seem that the sovereignty of the United States would end with the reason for its existence and the disposition of the property. We shall treat this case as though the Government's unrestricted transfer of property to non-federal hands is a relinquishment of the exclusive legislative power," 327 U.S., at 563, 564.

Thus, it appears clearly that once any property within the exclusive jurisdiction of the United States is no longer utilized by that government for governmental purposes, and the title or any interest therein is conveyed to private interests, the jurisdiction of the federal government ceases and jurisdiction once again reverts to the State.

The above principles regarding the distinction between State and federal jurisdiction continue through today; see Paul v. United States, 371 U.S. 245, 83 S.Ct. 426 (1963), and United States v. State Tax

Commission of Mississippi, 412 U.S. 363, 93 S.Ct. 2183 (1973). And what was definitely decided in the beginning days of this Republic regarding the extent, scope, and reach of each of these two distinct jurisdictions remains unchanged and forms the foundation and basis for the smooth workings of state governmental systems in conjunction with the federal government. Without such jurisdictional principles which form a clear boundary between the jurisdiction of the States and the United States, our federal governmental system would have surely met its demise long before now.

In summary, jurisdiction of the States is essentially the same as that possessed by the States which were leagued together under the Articles of Confederation. The confederated States possessed absolute, complete and full jurisdiction over property and persons located within their borders. It is hypocritical to assume or argue that these States, which had absolved and banished the centralized power and jurisdiction of the English Parliament and Crown over them by the Declaration of Independence, would shortly thereafter cede comparable power and jurisdiction to the Confederation Congress. They did not and they closely and jealously guarded their own rights, powers and jurisdiction. When the Articles were replaced by the Constitution, the intent and purpose of the States was to retain their same powers and jurisdiction, with a small concession of jurisdiction to the United States for lands found essential for the operation of that government. However, even this provision did not operate to instantly change any aspect of state jurisdiction, it only permitted its future operation wherein any State, by its own volition, should choose to cede jurisdiction to the United States.

By the adoption of the Constitution, the States jointly surrendered some 17 specific and well defined powers to the federal Congress, which related strictly to external affairs of the States. Any single power, or even several powers combined, do not operate in a fashion as to invade or divest a State of its jurisdiction. As against a single State, the remainder of the States under the Constitution have no right to jurisdiction within the single State absent its consent.

The only provision in the Constitution which permits jurisdiction to be vested in the United States is found in Art. I, Sec. 8, Cl. 17, which provides the mechanism for a voluntary cession of jurisdiction from any State to the United States. When the Constitution was adopted, the United States had jurisdiction over no lands within the States, possessing jurisdiction only in the lands encompassed in the Northwest Territories. Shortly thereafter, Maryland and Virginia ceded jurisdiction to the United States for Washington, D.C. As time progressed thereafter, the States at various times ceded jurisdiction to federal enclaves within the States. Today, the territorial jurisdiction of the United States is found only in such ceded areas, which encompass Washington, D.C., the federal enclaves within the States, and such territories and possessions which may be now owned by the United States.

The above conclusion is not the mere opinion of the author of this brief, but it is likewise that of the federal government itself. In June 1957, the government of the United States published a work entitled Jurisdiction Over Federal Areas Within The States: Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within the States, Part II, which report is the definitive study on this issue. Therein, the Committee stated:

"The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction – by State consent under Article I, section 8, clause 17 .... Justice McLean suggested that the Constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued, no transfer of jurisdiction can take place," Id., at 41.

"It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, the Federal Government possesses no

legislative jurisdiction over any area within a State, such jurisdiction being for exercise by the State, subject to non-interference by the State with Federal functions," Id., at 45.

"The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State," Id., at 46.

"On the other hand, while the Federal Government has power under various provisions of the Constitution to define, and prohibit as criminal, certain acts or omissions occurring anywhere in the United States, it has no power to punish for various other crimes, jurisdiction over which is retained by the States under our Federal-State system of government, unless such crime occurs on areas as to which legislative jurisdiction has been vested in the Federal Government," Id., at 107.

Thus, from an abundance of case law, buttressed by this lengthy and definitive government treatise on this issue, the "jurisdiction of the United States" is carefully circumscribed and defined as a very precise portion of America. The United States is one of the 51 jurisdictions existing on this continent, excluding Canada and its provinces.

# FEDERAL CRIMINAL JURISDICTION

It is a well established principle of law that all federal "legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears;" see Caha v. United States, 152 U.S. 211, 215, 14 S.Ct. 513 (1894); American Banana Company v. United Fruit Company, 213 U.S. 347, 357, 29 S.Ct. 511 (1909); United States v. Bowman, 260 U.S. 94, 97, 98, 43 S.Ct. 39 (1922); Blackmer v. United States, 284 U.S. 421, 437, 52 S.Ct. 252 (1932); Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575 (1949); United States v. Spelar, 338 U.S. 217, 222, 70 S.Ct. 10 (1949); and United States v. First National City Bank, 321 F.2d 14, 23 (2nd Cir. 1963). And this principle of law is expressed in a number of cases from the federal appellate courts; see McKeel v. Islamic Republic of Iran, 722 F.2d 582, 589 (9th Cir. 1983) (holding the Foreign Sovereign Immunities Act as territorial); Meredith v. United States, 330 F.2d 9, 11 (9th Cir. 1964) (holding the Federal Torts Claims Act as territorial); United States v. Cotroni, 527 F.2d 708, 711 (2nd Cir. 1975) (holding federal wiretap laws as territorial); Stowe v. Devoy, 588 F.2d 336, 341 (2nd Cir. 1978); Cleary v. United States Lines, Inc., 728 F.2d 607, 609 (3rd Cir. 1984) (holding federal age discrimination laws as territorial); Thomas v. Brown & Root, Inc., 745 F.2d 279, 281 (4th Cir. 1984) (holding same as Cleary, supra); United States v. Mitchell, 553 F.2d 996, 1002 (5th Cir. 1977) (holding marine mammals protection act as territorial); Pfeiffer v. William Wrigley, Jr., Co., 755 F.2d 554, 557 (7th Cir. 1985) (holding age discrimination laws as territorial); Airline Stewards & Stewardesses Assn. v. Northwest Airlines, Inc., 267 F.2d 170, 175 (8th Cir. 1959) (holding Railway Labor Act as territorial); Zahourek v. Arthur Young and Co., 750 F.2d 827, 829 (10th Cir. 1984) (holding age discrimination laws as territorial); Commodities Futures Trading Comm. v. Nahas, 738 F.2d 487, 493 (D.C.Cir. 1984) (holding commission's subpoena power under federal law as territorial); Reyes v. Secretary of H.E.W., 476 F.2d 910, 915 (D.C.Cir. 1973) (holding administration of Social Security Act as territorial); and Schoenbaum v. Firstbrook, 268 F.Supp. 385, 392 (S.D.N.Y. 1967) (holding securities act as territorial). This was perhaps stated best in Caha v. United States, 152 U.S., at 215, where the Supreme Court stated as follows:

"The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force only in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government."

But, because of statutory language, certain federal drug laws operate extra-territorially; see United States

v. King, 552 F.2d 833, 851 (9th Cir. 1976). The United States has territorial jurisdiction only in Washington, D.C., the federal enclaves within the States, and in the territories and insular possessions of the United States. However, it has no territorial jurisdiction over non-federally owned areas inside the territorial jurisdiction of the States within the American Union. And this proposition of law is supported by literally hundreds of cases.

As a general rule, the power of the United States to criminally prosecute is, for the most part, confined to offenses committed within "its jurisdiction". This is born out simply by examination of Title 18, U.S.C. Section 5 thereof defines the term "United States" in clear jurisdictional terms. Section 7 contains the fullest statutory definition of the "jurisdiction of the United States." The U.S. District Courts have jurisdiction of offenses occurring within the "United States" pursuant to Title 18, U.S.C., Sec. 3231.

Examples of this proposition are numerous. In Pothier v. Rodman, 291 F. 311 (1st Cir. 1923), the question involved whether a murder committed at Camp Lewis Military Reservation in the State of Washington was a federal crime. Here, the murder was committed more than a year before the U.S. acquired a deed for the property in question. Pothier was arrested and incarcerated in Rhode Island and filed a habeas corpus petition seeking his release on the grounds that the federal courts had no jurisdiction over an offense not committed in U.S. jurisdiction. The First Circuit agreed that there was no federal jurisdiction and ordered his release. But, on appeal to the U.S. Supreme Court, in Rodman v. Pothier, 264 U.S. 399, 44 S.Ct. 360 (1924), that Court reversed; although agreeing with the jurisdictional principles enunciated by the First Circuit, it held that only the federal court in Washington State could hear that issue. In United States v. Unzeuta, 35 F.2d 750 (8th Cir. 1929), the Eighth Circuit held that the U.S. had no jurisdiction over a murder committed in a railroad car at Fort Robinson, the state cession statute being construed as not including railroad rights-of-way. This decision was reversed in United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284 (1930), the court holding that the U.S. did have jurisdiction over the railroad rights-of-way in Fort Robinson. In Bowen v. Johnson, 97 F.2d 860 (9th Cir. 1938), the question presented was whether jurisdiction over an offense prosecuted in federal court could be raised in a petition for habeas corpus. The denial of Bowen's petition was reversed in Bowen v. Johnston, 306 U.S. 19, 59 S.Ct. 442 (1939), the Court concluding that such a jurisdictional challenge could be raised in a habeas corpus petition. But, the Court then addressed the issue, found that the U.S. both owned the property in question and had a state legislative grant ceding jurisdiction to the United States, thus there was jurisdiction in the United States to prosecute Bowen. But, if jurisdiction is not vested in the United States pursuant to statute, there is no jurisdiction; see Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122 (1943).

And the lower federal courts also require the presence of federal jurisdiction in criminal prosecutions. In Kelly v. United States, 27 F. 616 (D.Me. 1885), federal jurisdiction of a manslaughter committed at Fort Popham was upheld when it was shown that the U.S. owned the property where the offense occurred and the state had ceded jurisdiction. In United States v. Andem, 158 F. 996 (D.N.J. 1908), federal jurisdiction for a forgery offense was upheld on a showing that the United States owned the property where the offense was committed and the state had ceded jurisdiction of the property to the U.S. In United States v. Penn, 48 F. 669 (E.D.Va. 1880), since the U.S. did not have jurisdiction over Arlington National Cemetery, a federal larceny prosecution was dismissed. In United States v. Lovely, 319 F.2d 673 (4th Cir. 1963), federal jurisdiction was found to exist by U.S. ownership of the property and a state cession of jurisdiction. In United States v. Watson, 80 F.Supp. 649, 651 (E.D.Va. 1948), federal criminal charges were dismissed, the court stating as follows:

> "Without proof of the requisite ownership or possession of the United States, the crime has not been made out."

In Brown v. United States, 257 F. 46 (5th Cir. 1919), federal jurisdiction was upheld on the basis that

the U.S. owned the post-office site where a murder was committed and the state had ceded jurisdiction; see also England v. United States, 174 F.2d 466 (5th Cir. 1949); Krull v. United States, 240 F.2d 122 (5th Cir. 1957); Hudspeth v. United States, 223 F.2d 848 (5th Cir. 1955); and Gainey v. United States, 324 F.2d 731 (5th Cir. 1963). In United States v. Townsend, 474 F.2d 209 (5th Cir. 1973), a conviction for receiving stolen property was reversed when the court reviewed the record and learned that there was absolutely no evidence disclosing that the defendant had committed this offense within the jurisdiction of the United States. And in United States v. Benson, 495 F.2d 475, 481 (5th Cir. 1974), in finding federal jurisdiction for a robbery committed at Fort Rucker, the court stated:

> "It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor."

In two Sixth Circuit cases, United States v. Tucker, 122 F. 518 (W.D.Ky. 1903), a case involving an assault committed at a federal dam, and United States v. Blunt, 558 F.2d 1245 (6th Cir. 1977), a case involving an assault within a federal penitentiary, jurisdiction was sustained by finding that the U.S. owned the property in question and the state involved had ceded jurisdiction. In In re Kelly, 71 F. 545 (E.D.Wis. 1895), a federal assault charge was dismissed when the court held that the state cession statute in question was not adequate to convey jurisdiction of the property in question to the United States. In United States v. Johnson, 426 F.2d 1112 (7th Cir. 1970), a case involving a federal burglary prosecution, federal jurisdiction was sustained upon the showing of U.S. ownership and cession. And cases from the Eighth and Tenth Circuits likewise require the same elements to be shown to demonstrate the presence of federal jurisdiction; see United States v. Heard, 270 F.Supp. 198 (W.D.Mo. 1967); United States v. Redstone, 488 F.2d 300 (8th Cir. 1973); United States v. Goings, 504 F.2d 809 (8th Cir. 1974) (demonstrating loss of jurisdiction); Hayes v. United States, 367 F.2d 216 (10th Cir. 1966); United States v. Carter, 430 F.2d 1278 (10th Cir. 1970); Hall v. United States, 404 F.2d 1367 (10th Cir. 1969); and United States v. Cassidy, 571 F.2d 534 (10th Cir. 1978).

Of all the circuits, the Ninth Circuit has addressed jurisdictional issues more than any of the rest. In United States v. Bateman, 34 F. 86 (N.D.Cal. 1888), it was determined that the United States did not have jurisdiction to prosecute for a murder committed at the Presidio because California had never ceded jurisdiction; see also United States v. Tully, 140 F. 899 (D.Mon. 1905). But later, California ceded jurisdiction for the Presidio to the United States, and it was held in United States v. Watkins, 22 F.2d 437 (N.D.Cal. 1927), that this enabled the U.S. to maintain a murder prosecution; see also United States v. Holt, 168 F. 141 (W.D.Wash. 1909), United States v. Lewis, 253 F. 469 (S.D.Cal. 1918), and United States v. Wurtzbarger, 276 F. 753 (D.Or. 1921). Because the U.S. owned and had a state cession of jurisdiction for Fort Douglas in Utah, it was held that the U.S. had jurisdiction for a rape prosecution in Rogers v. Squier, 157 F.2d 948 (9th Cir. 1946). But, without a cession, the U.S. has no jurisdiction; see Arizona v. Manypenny, 445 F.Supp. 1123 (D.Ariz. 1977).

The above cases from the U.S. Supreme Court and federal appellate courts set forth the rule that in criminal prosecutions, the government, as the party seeking to establish the existence of federal jurisdiction, must prove U.S. ownership of the property in question and a state cession of jurisdiction. This same rule manifests itself in state cases. State courts are courts of general jurisdiction and in a state criminal prosecution, the state must only prove that the offense was committed within the state and a county thereof. If a defendant contends that only the federal government has jurisdiction over the offense, he, as proponent for the existence of federal jurisdiction, must likewise prove U.S. ownership of the property where the crime was committed and state cession of jurisdiction.

Examples of the operation of this principle are numerous. In Arizona, the State has jurisdiction over federal lands in the public domain, the state not having ceded jurisdiction of that property to the U.S.; see State v. Dykes, 114 Ariz. 592, 562 P.2d 1090 (1977). In California, if it is not proved by a defendant

in a state prosecution that the state has ceded jurisdiction, it is presumed the state does have jurisdiction over a criminal offense; see People v. Brown, 69 Cal. App.2d 602, 159 P.2d 686 (1945). If the cession exists, the state has no jurisdiction; see People v. Mouse, 203 Cal. 782, 265 P. 944 (1928). In Montana, the state has jurisdiction over property if it is not proved there is a state cession of jurisdiction to the U.S.; see State ex rel Parker v. District Court, 147 Mon. 151, 410 P.2d 459 (1966); the existence of a state cession of jurisdiction to the U.S. ousts the state of jurisdiction; see State v. Tully, 31 Mont. 365, 78 P. 760 (1904). The same applies in Nevada; see State v. Mack, 23 Nev. 359, 47 P. 763 (1897), and Pendleton v. State, 734 P.2d 693 (Nev., 1987); it applies in Oregon (see State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918) and State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987)); and in Washington (see State v. Williams, 23 Wash.App. 694, 598 P.2d 731 (1979)).

In People v. Hammond, 1 Ill.2d 65, 115 N.E.2d 331 (1953), a burglary of an I.R.S. office was held to be within state jurisdiction, the court holding that the defendant was required to prove existence of federal jurisdiction by U.S. ownership of the property and state cession of jurisdiction. In two cases from Michigan, larcenies committed at U.S. post-offices which were rented were held to be within state jurisdiction; see People v. Burke, 161 Mich. 397, 126 N.W. 446 (1910) and People v. Van Dyke, 276 Mich. 32, 267 N.W. 778 (1936); see also In re Kelly, 311 Mich. 596, 19 N.W.2d 218 (1945). In Kansas City v. Garner, 430 S.W.2d 630 (Mo.App. 1968), state jurisdiction over a theft offense occurring in a federal building was upheld, and the court stated that a defendant had to show federal jurisdiction by proving U.S. ownership of the building and a cession of jurisdiction from the state to the United States. A similar holding was made for a theft at a U.S. missile site in State v. Rindall, 146 Mon. 64, 404 P.2d 327 (1965). In Pendleton v. State, 734 P.2d 693 (Nev. 1987), the state court was held to have jurisdiction over a D.U.I. committed on federal lands, the defendant having failed to show U.S. ownership and state cession of jurisdiction.

In People v. Gerald, 40 Misc.2d 819, 243 N.Y.S.2d 1001 (1963), the state was held to have jurisdiction of an assault at a U.S. post-office since the defendant did not meet his burden of showing presence of federal jurisdiction; and because a defendant failed to prove title and jurisdiction in the United States for an offense committed at a customs station, state jurisdiction was upheld in People v. Fisher, 97 A.D.2d 651, 469 N.Y.S.2d 187 (A.D. 3 Dept. 1983). The proper method of showing federal jurisdiction in state court is demonstrated by the decision in People v. Williams, 136 Misc.2d 294, 518 N.Y.S.2d 751 (1987). This rule was likewise enunciated in State v. Burger, 33 Ohio App.3d 231, 515 N.E.2d 640 (1986), in a case involving a D.U.I. offense committed on a road near a federal arsenal.

In Kuerschner v. State, 493 P.2d 1402 (Okl.Cr.App. 1972), the state was held to have jurisdiction of a drug sales offense occurring at an Air Force Base, the defendant not having attempted to prove federal jurisdiction by showing title and jurisdiction of the property in question in the United States; see also Towry v. State, 540 P.2d 597 (Okl.Cr.App. 1975). Similar holdings for murders committed at U.S. post-offices were made in State v. Chin Ping, 91 Or. 593, 176 P. 188 (1918), and in United States v. Pate, 393 F.2d 44 (7th Cir., 1968). Another Oregon case, State v. Aguilar, 85 Or.App. 410, 736 P.2d 620 (1987), demonstrates this rule. And finally, in Curry v. State, 111 Tex. Cr. 264, 12 S.W.2d 796 (1928), it was held that, in the absence of proof that the state had ceded jurisdiction of a place to the United States, the state courts had jurisdiction over an offense.

**Lowell H. Becraft, Jr.**                    Page #18 of
**209 Lincoln Street**
**Huntsville, Alabama 3580**

Attachment M   n/a

## Proper Federal Indictment Procedure
By Dan Meador (Rev. 1, April 14, 2000)
(Dan passed away in November, 2003)

People across the country have called for research concerning Federal indictments and how to defend against or attack them. So far as I can tell, there probably hasn't been a legitimate Federal indictment in the last two or three decades. Consequently, nearly all Federal criminal prosecution should be aborted and verdicts vacated, with the effect of defendants and prisoners being discharged. Therefore, this memorandum is timely.

I haven't completed research to support each position with case law, but the basic flaws in Federal prosecution default subject matter jurisdiction. If a court lacks subject matter jurisdiction, the action, judgment, or whatever is void, it is a nullity, so where there is a judgment, it should be vacated. Lack of subject matter jurisdiction can be raised at any time without time limit. Rule 60 of the Federal Rules of Civil Procedure is the key to opening old civil or criminal cases. Rule 12(a) & (b) of the Federal Rules of Criminal Procedure should be used for pre-trial motions. Lack of subject matter jurisdiction can be attacked within the existing action, or by an independent action, i.e., via extraordinary writs, including habeas corpus, writ of error *coram nobis*, writ of prohibition or whatever. See particularly, 28 U.S.C. 2201 et seq. for declaratory judgment, and 28 U.S.C. 2241 et seq., for the original writ of habeas corpus. Motions within an existing case where there is already judgment should be styled "Motion to Vacate Judgment", or within an active case, a simple motion to dismiss.

In the course of this memorandum, I will use the phrase "subject matter jurisdiction" to the point readers will probably be sick of it, but this is the key to the Federal prosecution riddle. The basic jurisdictional elements are jurisdiction over the person and jurisdiction over subject matter. Venue, or territorial jurisdiction, is also a consideration, but isn't treated exhaustively in this discourse.

When working within Federal rules of procedure, it is important to know that the rules preserve constitutionally secured rights. Authority for the Supreme Court to promulgate rules of procedure is at 28 U.S.C. 2072, and 2072(b) preserves rights: "(b) Such rules

Proper Federal Indictment Procedure

shall not abridge, enlarge or modify any substantive right." Federal rules of civil and criminal procedure preserve constitutionally secured rights. Therefore, it is necessary to know and understand the three Amendments that govern Federal criminal prosecution. The Fourth, Fifth and Sixth Amendments follow: Amendment IV: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Amendment V: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Amendment VI: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

The first thing to understand is that all Federal courts, including the Supreme Court, are courts of limited jurisdiction. So-called common law jurisdiction over contracts, historically recognized common crimes, etc., is reserved to courts of the several States within their respective territorial borders. The Tenth Amendment imposes this limitation: Tenth Amendment: The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

If a power is not enumerated in the Constitution, primarily in Article 1 8, Federal government lacks subject matter jurisdiction within the Union. This provides the framework for what is known as the "arising under clause" at Article III 2, clause 1 of the Constitution: Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority.

View the Constitution as a corporate charter. It enumerates powers of the Government of the United States, with those powers distributed among three departments or branches, the legislative, executive and judicial. Except in very rare and limited cases, one branch cannot exercise power of another. This is called "separation of powers doctrine." Each of the powers enumerated, regardless of what branch it is enumerated for, must be set in motion by legislation, the legislation being in the form of a "statute" or law. This is specified at Article I 8, clause 18: [The Congress shall have Power] To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

Coming to grips with Article I 8.18 in the context of the "arising under clause" at Article III 2.1 sheds light on United States judicial power and understanding of "due process of law." Unless a law vests authority in Federal administrative agencies, or the courts themselves, courts of the United States do not have subject matter jurisdiction. And in nearly all cases, the law is complex, not simple. In other words, in very few instances does any given statute stand alone. Tax law serves as an example. United States v. Menk at 260 F.Supp.784 articulates the point: "It is immediately apparent that this section alone does not define the offense as the defendant contends. But rather, all three of the sections referred to in the information - Sections 4461, 4901 and 7203 - must be considered together before a complete definition of the offense is found. Section 4461 imposes a tax on persons engaging in a certain activity; Section 4901 provides that payment of the tax shall be a condition precedent to engaging in the activity subject to the tax; and Section 7203 makes it a misdemeanor to engage in the activity without having first paid the tax,

and provides the penalty. It is impossible to determine the meaning or intended effect of any one of these sections without reference to the others." Any of the crimes listed in Chapter 75 of the Internal Revenue Code ( 7201 et seq.) such as failure to file, failure to withhold, and the like, is not a stand-alone statute. In order to prosecute the Government must (1) identify a taxing statute, and (2) prove application of a liability statute, before a penalty statute is applicable. Without the first two elements, a Federal court lacks subject matter jurisdiction to impose a penalty, whether civil or criminal. This principle applies to nearly all Federal penalty statutes, whether relating to tax, commerce, securities or anything else. Without a preexisting liability to perform or refrain from any given activity, a Federal penalty statute doesn't apply. Unless all elements are in place, the Department of Justice, U.S. Attorney or whatever has failed to meet threshold criteria for burden of proof, with the effect being that the Federal court lacks subject matter jurisdiction.

Although I'm not going to get into the subject in this memorandum, it is also necessary for a department or agency of Federal government to prove standing. For instance, the Department of the Interior doesn't have authority to enforce revenue laws. If an agency isn't vested with authority by law, it lacks standing to bring a complaint, so the court lacks subject matter jurisdiction. We'll see this in the Code section that specifies who has authority to make complaints under revenue laws.

I'll restate the obvious: All courts of the United States are statutory courts, i.e., courts of limited jurisdiction. Due process of law is predicated on statutes of the United States that either compel or prohibit a given activity. The statutory authority is usually complex rather than simple, i.e., the need for all elements being on the table in order to establish subject matter jurisdiction.

There is also an additional important element of proof: What is the geographical application of any given law or set of laws? In Foley Brothers v. Filardo (1948) 336 U.S. 281, we find that "It is a well established principle of law that all federal legislation applies only within the territorial jurisdiction of the United States unless contrary intent

appears." Congress has two distinct characters: Where States of the Union are concerned, Congress may legislate only within the framework of constitutionally enumerated powers, but where territory belonging to the United States is concerned, Congress operates with the combined authority of state and national governments much on the order of European governments, and may do whatever the Constitution does not expressly or implicitly prohibit. Where States of the Union are concerned, Congress' authority is restrictive; where the District of Columbia, Puerto Rico, the Virgin Islands, Guam, American Samoa, the Northern Mariana Islands, and smaller insular possessions are concerned, Congress has plenary or near-absolute power.

It may be that Congress exercises a general power enumerated in Article I Section 8 of the Constitution, but application is limited to the geographical United States, i.e., territory belonging to the United States. This, then, is another element of burden of proof, i.e., proof of subject matter jurisdiction. The advocate, in this case the Attorney General or U.S. Attorney, must prove the venue or geographical application of any given statute.

Just because the Constitution enumerates powers United States Government may exercise doesn't mean the power has to be exercised. For example, prior to the Civil War, Congress exercised power to impose direct taxes only twice, and until after the Civil War, if then, Congress did not vest Federal courts, including the Supreme Court, with all available jurisdictional powers enumerated in Article III Section 2 of the Constitution. Although it is beyond the scope of this memorandum, I am convinced that by 1948 virtually all Federal statutory authority was withdrawn from the Union and ever since has been applicable only in United States maritime and territorial jurisdictions.

We will now turn to essentials of due process of law as prescribed in the Fourth, Fifth, and Sixth Amendments.

We saw at 28 U.S.C. 2072(b) that Federal rules of procedure may not deprive anyone of substantive rights. In a manner of speaking, rights secured by the Fourth, Fifth, and Sixth Amendments are carved in stone, and they are cumulative, they are not independent or



elective unless someone knowingly chooses to forfeit one of the specified rights. If one of the constitutionally secured rights is bypassed, administrative offices, including the Department of Justice and the U.S. Attorney, and courts of the United States, lack or lose subject matter jurisdiction. This is the essence of the Fifth Amendment guarantee that no person shall be deprived of life, liberty or property without "due process of law." Here we see two distinct elements: Not only does there have to be law which compels or prohibits any given activity, but procedure or process must conform to that prescribed by the "Constitution and laws of the United States." The Fourth, Fifth and Sixth Amendments secure mandatory minimum requirements of due process.

The Fourth Amendment requirement for probable cause, "supported by Oath or affirmation, "is the jumping-off point:" No Warrants shall issue, but upon probable cause, supported by Oath or affirmation.

Here are two secured rights: There must be an oath or affirmation, a complaint, that specifies key elements of a crime, and a committing magistrate must issue a warrant based on the complaint. The complaint is made in a probable cause hearing. Unless or until these threshold requirements are met, there can be no Federal prosecution.

We will use Federal tax law as an example. At 18 U.S.C. 3045 we find authorization for who may set the criminal prosecution process in motion via an affidavit of complaint: "Warrants of arrest for violations of internal revenue laws may be issued by United States magistrates upon the complaint of a United States attorney, assistant United States attorney, collector, or deputy collector of internal revenue or revenue agent, or private citizen; but no such warrant of arrest shall be issued upon the complaint of a private citizen unless first approved in writing by a United States attorney." This Code section needs an amount of qualification: Whoever makes the affidavit of complaint must have personal knowledge. In other words, an U.S. Attorney cannot make the affidavit of complaint unless he was personally involved with the investigation process and has hands-on involvement with securing and examining evidence.



Our concern is whether or not the Federal Rules of Criminal Procedure preserve this constitutionally secured right. We find that they do. Rule 3 of the F.R.Crim.P. is specific: "Rule 3. The Complaint "The Complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a magistrate judge." We then go to Rule 4, "Arrest Warrant or Summons Upon Complaint".

Rules 3 through 9 of the Federal Rules of Criminal Procedure preserve the proper procedural sequence of the Fourth, Fifth and Sixth Amendments. If any portion of any of these rules, i.e., of any of the three amendments, is defective, Courts of the United States lose subject matter jurisdiction.

Before continuing with what should happen, I'll review what normally happens.

The first most people know of a Federal investigation is when they receive a "summons" in the mail, with something akin to an "indictment" attached, or they are arrested on a warrant with an indictment attached. Occasionally a U.S. Attorney, the Criminal Division of the Internal Revenue Service, the FBI or another Federal agency will notify the target of an investigation, and sometimes the target will be offered the opportunity to testify to a grand jury. However, whether arrested or summoned, the target's first court appearance is at the alleged arraignment after the grand jury has supposedly issued an indictment. At the hearing, the defendant is asked to enter a plea. If the defendant refuses to enter a plea, the presiding magistrate, usually a United States Magistrate Judge enters a plea for him. After that ritual, the U.S. Magistrate Judge will either set or deny bond.



Where is the affidavit of complaint, probable cause hearing, et al? Has the defendant had the opportunity to examine witnesses and evidence against him, call his own witnesses and present contravening documentary or other evidence? As we will see, current Federal prosecution practice for all practical purposes trashes Fourth, Fifth, and Sixth Amendment due process rights, and it employs the services of quasi-judicial officers who don't have lawful authority to do what they're doing. In sum, current Federal prosecution practice amounts to a criminal conspiracy among administrative and judicial officers.

Federal criminal prosecution must begin with the affidavit of criminal complaint required by the Fourth Amendment and Rule 3 of the Federal Rules of Criminal Procedure. Without the affidavit of complaint, courts of the United States do not have subject matter jurisdiction, so whatever ensuing verdict, judgment and/or sentence there might be is a nullity, it is void and should be vacated.

We then go to Rule 4, the warrant issued subsequent to the probable cause hearing. Warrants for seizure and/or arrest must issue following, they cannot issue without a probable cause hearing.

The Federal courts are presently relying on Rule 9(a), "Warrant or Summons Upon Indictment or Information". Rule 9(a), in relative part, stipulates that, "Upon the request of the attorney for the government the court shall issue a warrant for each defendant named in an information supported by a showing of probable cause under oath as is required by Rule 4(a), or in an indictment. More than one warrant or summons may issue for the same defendant. When a defendant arrested with a warrant or given a summons to appear initially before a magistrate judge, the magistrate judge shall proceed in accordance with the applicable divisions of Rule 5." They then jump to Rule 10, the arraignment, rather than dropping back to Rule 5, as Rule 9 specifies. Rule 5 is "Initial Appearance Before the Magistrate Judge." Grand juries have certain investigative powers. If in the course of investigating a cause of action that is lawfully before them, grand jury members may find evidence sufficient to recommend additional charges, or name additional defendants, by way of presentment. However, if the original complaint against the primary defendant for a specific offense is not before it, the grand jury has no basis for initiating an investigation. There must be original probable cause determined by a committing magistrate, with the finding of probable cause being predicated on the antecedent complaint.

We're going to use Rule 6(b)(1) to demonstrate this point: "(1) Challenges. The attorney for the government or a defendant who has been held to answer in the district court may

A-2

challenge the array of jurors on the ground that the grand jury was not selected, drawn or summoned in accordance with law, and may challenge an individual juror on the ground that the juror is not legally qualified. Challenges shall be made before the administration of the oath to the jurors and shall be tried by the court." The right to challenge grand jury array (composition) and individual jurors is antecedent to individual jurors being administered the oath required prior to a grand jury being formally seated. The government attorney and the defendant, or the defendant's counsel, both have the right to challenge array and disqualify grand jury candidates prior to the grand jury being seated. If this right has been denied, there is a simple solution at Rule 6(b)(2): "(2) Motion to Dismiss. A motion to dismiss the indictment may be based on objections to the array or on the lack of legal qualification of an individual juror, if not previously determined upon challenge. It shall be made in the manner prescribed in 28 U.S.C. 1867(e) and shall be granted under the conditions prescribed in that statute. An indictment shall not be dismissed on the ground that one or more members of the grand jury were not legally qualified if it appears from the record kept pursuant to subdivision (c) of this rule that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment." Rule 6(c) requires the grand jury foreman to record the vote, and then file a letter or certificate of concurrence with the clerk of the court.

* If the original defendant or his counsel did not have the opportunity to challenge the grand jury array (composition selection process) and individual grand jurors prior to the grand jury being seated, they're all disqualified as the qualification process is among the defendant's constitutionally secured due process rights. By consulting Chapter 121 of Title 28 generally, and 28 U.S.C. 1867 specifically, we find that there is no distinction in the voir dire examination and other jury qualification process for grand juries or petit trial juries: "(a) In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury." If a defendant doesn't know a grand jury is investigating him, he doesn't have the opportunity to

A-2



challenge the grand jury array, or individual grand jurors. Consequently, he has been deprived of substantive due process, which is expressly prohibited by 28 U.S.C. 2072(b).

We have an adversarial judicial system. All parties to any given action, the government included, stand on equal ground. The system isn't set up for convenience of the government. Government always has the burden of proof, whether in civil or criminal matters. The defendant has the right to challenge the qualifications and competency of everyone involved in the prosecution process, inclusive of grand and petit jurors selected from "peers" who ultimately have responsibility for determining indictable offenses and/or final liability. If and when government personnel deprive the Citizen of any of these rights, constitutionally secured due process of law is abridged. In that event, courts lose subject matter jurisdiction.

Now consider Rule 6(f), Federal Rules of Criminal Procedure (F.R.Crim.P.)

(f) Finding and Return of Indictment. An indictment may be found only upon concurrence of 12 or more jurors. The indictment shall be returned by the grand jury to a federal magistrate judge in open court. If a complaint or information is pending against the defendant and 12 jurors do not concur in finding an indictment, the foreperson shall so report to a federal magistrate judge in writing forthwith." This section of Rule 6 specifies foundation necessities: Federal government may prosecute felony crimes only on a valid affidavit of complaint that has been presented in a probable cause hearing (Rules 3 & 4). Only corporations can be prosecuted via "information." Rule 6(f) preserves the antecedent affidavit of complaint and probable cause hearing in the second sentence: The grand jury may proceed only on "complaint" or "information" that has previously been formally processed. Additionally, if the grand jury issues an indictment, the return must be made in open court to a magistrate judge.

*pre existing previous (antecedent)*

The return should appear on the case docket, and a transcript of the hearing should be available. A return of an indictment is the same as the petit trial jury return of a verdict.



A-2

In practice, any given grand jury returns several indictments at once. However, when we understand the indictment process, it is clear that the grand jury pool may be held over for several months, but any given grand jury is empanelled to consider only one charge or set of charges in related cases. To date, we haven't found where an indictment for any single case or set of related cases has been returned in open court, and a transcript of the proceeding made available.

Rule 8 governs limits of the reach of any given grand jury, Rule 8 being "Joinder of Offenses and of Defendants." During any court or jury session, any given juror might sit on one or more grand or petit juries, but each jury has limited subject matter jurisdiction. Where the grand jury is concerned, it may proceed only from an original complaint where probable cause has been found to issue additional indictments and/or name additional defendants where the crimes "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." (Rule 8(a)) Rule 8(b) specifies criteria for naming additional defendants.

*If others here in jail for to the money being caught DID the original crime AND common scheme or plan to Join offenses or Defendants*

Here is where our reservation of rights in Rule 9(a) comes in: "When a defendant arrested with a warrant or given a summons appears initially before a magistrate judge, the magistrate judge shall proceed in accordance with the applicable subdivisions of Rule 5." We will first consider Rule 5(b) and the first portion of Rule 5(c): "(b) Misdemeanors and Other Petty Offenses. If the charge against the defendant is a misdemeanor or other petty offense triable by a United States magistrate judge under 18 U.S.C. 3401, the magistrate judge shall proceed in accordance with Rule 58.

"(c) Offenses not Triable by the United States Magistrate Judge. If the charge against the defendant is not triable by the United States magistrate judge, the defendant shall not be called upon to plead.

What is now known as the United States Magistrate Judge was originally a national park commissioner. The name of the office has changed, but the nature of the office hasn't.

This is an administrative, not a judicial office. It's equivalent to what used to be the police court magistrate. Today the only offenses triable by a United States Magistrate Judge are traffic violations and other misdemeanor and petty offenses committed on military reservations, in national parks and forests, etc., under regulations promulgated by the Department of Defense and the Department of the Interior. Don't capture wild burrows and mustangs in national parks without a permit, as that is a misdemeanor offense triable by a United States Magistrate Judge.

United States Magistrate Judges in the several States have "venue" jurisdiction solely over offenses committed on Federal enclaves where United States Government has exclusive or concurrent jurisdiction ceded by one of the several States. And as Rule 5(c) specifies, they cannot even ask for, much less make a plea for a defendant charged with a felony crime. This prohibition is effective under Rules 5, 9, 10 & 11. When and if a United States Magistrate Judge asks for or makes a plea for a defendant in a felony case, he has usurped power vested in Article III judges of the United States. When this quasi-judicial officer exceeds authority Congress vested in him by law, the United States loses subject matter jurisdiction and there are grounds to pursue lawful remedies, both civil and criminal. Government officials, regardless of capacity, enjoy the cloak of immunity only to the outer reaches of their lawful authority. The notion of blanket judicial or any other absolute immunity is nothing more than a convenient fiction.

*quasi-judicial - act performed an official who is not a judge*

Rule 5(c), second paragraph, also stipulates that, "A defendant is entitled to a preliminary examination, unless waived, when charged with any offense, other than a petty offense, which is to be tried by a judge of the district court." We're going to continue with this subsection, but it is useful to understand the term "magistrate judge" as opposed to "United States Magistrate Judge" or "United States magistrate judge." The President of the United States is the nation's highest "magistrate." In other words, the "magistrate" is a ministerial, not a judicial office. All lawful judges function in a magistrate capacity when they preside at probable cause hearings, initial appearances and the like. In a sense, this is an "extra-judicial" capacity that within proper context can be vested in or exercised by administrative or judicial officers. The United States Magistrate Judge is an

A-2

administrative office with quasi-judicial capacity limited to specific subject matter, where the "district judge" of the United States is vested with the full range of United States judicial authority, i.e., his extra-judicial capacity as magistrate judge extends to Federal offenses of all stripes.

Essentials of the preliminary hearing or examination are prescribed at Rule 5.1(a) of the Federal Rules of Criminal Procedure: "(a) Probable Cause Finding. If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the federal magistrate judge shall forthwith hold the defendant to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine adverse witnesses and may introduce evidence."

Now we go back to Rule 5(c) second paragraph: "A defendant is entitled to a preliminary examination, unless waived, when charged with any offense, other than a petty offense, which is to be tried by a judge of the district court. If the defendant waives preliminary examination, the magistrate judge shall forthwith hold the defendant to answer in the district court. If the defendant does not waive the preliminary examination, the magistrate judge shall schedule a preliminary examination. Such examination shall be held within a reasonable time but in any event not later than 10 days following the initial appearance if the defendant is in custody and no later than 20 days if the defendant is not in custody, provided, however, that the preliminary examination shall not be held if the defendant is indicted or if an information against the defendant is filed in district court before the date set for the preliminary examination.

If a defendant is joined to an indictment under Rule 8, he has the right to a preliminary hearing under Rule 5.1. This assures his opportunity to challenge witnesses and present evidence before being subjected to the trial process. The right is particularly important where government prosecutors routinely play "let's make a deal" to secure incriminating testimony from questionable witnesses.

A-2

We will now summarize indispensable or "substantive" elements of Federal criminal prosecution: The criminal prosecution process may commence if and only if there is an affidavit of criminal complaint submitted under oath in a probable cause hearing. (Rule 3, F.R.Crim.P.) A committing magistrate judge must issue a warrant or summons after finding probable cause. (Rule 4, F.R.Crim.P.) The defendant may be arrested and "returned" by the appropriate Federal authority. (Rule 4, F.R.Crim.P.) The defendant then has an initial appearance at which he is asked to enter a plea, and bond, if any, is set. If the offense is a felony offense, a United States Magistrate Judge may not ask for or enter a plea. The defendant is entitled to a preliminary hearing unless an indictment or information (against a corporation) is returned prior to a preliminary hearing. In the event that the defendant is "joined" by a grand jury under Rule 8 and has not previously been arrested, the Federal criminal prosecution process begins here, and the defendant is entitled to a preliminary hearing. (Rule 5, F.R.Crim.P.) If the defendant exercises his right to a preliminary hearing, he has the opportunity to cross-examine adverse witnesses and he may introduce his own evidence, whether the evidence is via witnesses or is documentary in nature. (Rule 5.1, F.R.Crim.P.) The preliminary examination may be bypassed only in the event that the defendant waives the right, or indictment issues subsequent to the initial appearance.

The defendant, or his counsel, has the right to challenge array of the grand jury pool and voir dire individual grand jury candidates prior to the grand jury being sworn in. (Rule 6(b), F.R.Crim.P. & 28 U.S.C. 1867).

In the course of its investigation, based on an affidavit of complaint and the finding of probable cause, a grand jury may by "presentment" issue additional indictments and/or join additional defendants in compliance with provisions of Rule 8, F.R.Crim.P.

The grand jury must return indictments in open court, and the grand jury foreman must file a letter or certificate of concurrence with the clerk of the court. (Rule 6(f), F.R.Crim.P.) A warrant or summons may issue against additional parties joined to an original complaint under provisions of Rule 8 subsequent to grand jury deliberation and

return of indictment in accordance with Rule 6. (Rule 9, F.R.Crim.P.) After all previous conditions are met, as applicable, a defendant may be arraigned and called on to plead. (Rules 10 & 11, F.R.Crim.P.) From my research, it appears that the Department of Justice and United States Attorneys are convening grand juries under auspices of the "special grand jury" provisions in Chapter 216 (3331-3334) of Title 18. However, this is misapplication of law as special grand jury investigation authority extends only to criminal activity involving government personnel, and the grand jury is limited to issuing reports. Defendants and prospective defendants are afforded the opportunity to rebut or correct the reports prior to public release. Although evidence unearthed by the special grand jury may be used as the basis of criminal prosecution, the special grand jury does not have indictment authority.

It appears that the first steps toward securing secret indictments were taken during prohibition days to shield grand jury members from reprisal. Although secret indictments were and are patently unconstitutional, the extreme remedy in the midst of highly volatile and dangerous circumstance was rationalized in the midst of what amounted to domestic war with organized crime. Unfortunately, as other such rationalizations, those who found the extraordinary process convenient incorporated it as routine practice.

Rule 60(b) of the Federal Rules of Civil Procedure preserves causes to challenge judgments. They are as follows: Mistake, inadvertence, surprise, or excusable neglect; Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; The judgment is void; The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or Any other reason justifying relief from the operation of the judgment.

The rule then specifies, "The motion that shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding

$A$-2

was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of the court to entertain an independent action or relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. 1655, or to set aside a judgment, for fraud upon the court. Writs of *coram nobis*, bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." There are two keys in Rule 60(b). First, Rule 60(b)(4), where the "judgment is void," opens the door to vacating a judgment at any time, and second, the void judgment may be attacked "by motion as prescribed in these rules or by an independent action." A judgment is void where the court lacked subject matter jurisdiction. The court lacks subject matter jurisdiction when and if the administrative agency has proceeded without statutory authority, or the administrative agency has deprived the defendant of substantive due process rights. Where the court lacked subject matter jurisdiction, the judgment is void; it has no lawful effect, so it should be vacated. The defendant may proceed by motion at any time, without the encumbrance of time limitation, or may initiate collateral attack via the extraordinary writs, i.e., an independent action.

# # #

Exhibit A-3

# PREFACE

When raising contract violations, the only questions the court can consider are: was the contract violated; what were the violations; and how many violations were there. Excuses made by attorneys are not considered. I would like to direct your attention to ABA RPC, Rule 1.7, Ethics Rule (Comment) [5], which in part provides:

> ....*When more than on client is involved, the question of conflict must be resolved as to each client. Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when the lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.*

This would be such as when the courts refuse to allow the lawyer to disclose the conflict to the "client" and when the government refuses to allow the lawyer to disclose the conflicts and the courts haven't provided a release allowing the lawyer to compromise the courts jurisdiction, and the lawyer cannot plead to the court's jurisdiction and cannot advise the 'client" to do so, and the government has not provided a release allowing the lawyer to compromise the government's case, and the lawyer is not allowed to tell the "client" about needing the releases. The Contract is entered into under the State's supervisory Commerce Jurisdiction, and Rule 1.7 applies, as does all the other rules. Once these violations are proven, it cannot be argued that a fraud has not been perpetrated upon the alleged "client."

The local State Bar can and usually does provide the local Bar Rules free, and these rules have been adopted into the State's Court Rules, making them law. A copy of the Annotated ABA Rules of Professional Conduct can be purchased from the ABA at:

American Bar Association
750 North Lake Shore Drive
Chicago, Illinois 60611

These are rather expensive for an individual who is incarcerated, but well worthwhile. Each of the Rules are broken down similar to what is enclosed. This book currently contains 733 pages, and combined with the state bar rules, will give case law to support virtually any

argument necessary to prove contract violations, and defines each part of each rule. Having discovered this book, I would not be without it.

I hope I have been of some assistance to others in dealing with their lawyers. I know there are people here who are using the article that appeared in the American's Bulletin March/April 2002 (contained herein) giving their lawyers a wake-up call. Hopefully, others in other places are doing the same. It just may be a few more similar articles that will begin to free some of them, or at least obtain some relief.

# EFFECTIVE ASSISTANCE OF COUNSEL
# Part I

An accused is entitled  to reasonably competence assistance of a lawyer acting as the accused's diligent and conscientious advocate. Defense counsel should be guided by the American Bar Association (ABA) standards, should interalia, confer with client without delay and as often as necessary to elicit matters of defense, ascertain potential defenses discuss potential strategies and tactical choices with client, promptly advise client of rights and take prompt action to preserve client's rights.  Conduct investigations to determine matters of defense that can be developed, interview available prosecution witnesses, secure information in possession of the prosecution and do adequate research. See, e.g., **United States v. DeCoster,** 487 F. 2d 1197 (D.C. Cir. 1973).

*The proper measure of attorney performance remains simply reasonable under prevailing professional norms. Those norms are reflected in the American Bar Association ("ABA") standards.* **Strickland v. Washington,** *466 U.S. 688, 80 L.Ed. 2d 674, 104 S.Ct. 2052 (1984).*

*See also:* **Sanders v. Ratelle,** *21 F. 3d 1446, 1460 (9th Cir. 1994);* **Coleman v. Calderon,** *150 F 3d 1105 (9th Cir. 1998) (citing* **Strickland**).

The ABA Standards consist of the ABA Rules of Professional Conduct, 9RPC) preceded by a **Preamble,** which is broken down into three sections. Sections 1 & 2 contain 21 Ethics Rules (ER), broadly defining a lawyers responsibilities and scope, and there is (3) a terminology section. The RPC themselves are simply written rules, each of which are followed by a number of ER's which specifically define that particular RPC.

*The canons of professional ethics must be enforced by the courts and must be respected by members of the Bar if we are to maintain public confidence in the integrity and impartiality of the administration of justice.* **In re Meeker,** *76 N.M. 354, 357, 414 P. 2d 862, 864 (1996) appeal dismissed 383 U.S. 449 (1997).*

Ethic Rules are evidence of the scope of duties that a lawyer owes his or her client or former client, **Mirabiti v. Liccardo,** 5 Cal. Rptr. 2d 571 (Ct.App. 1992); and may be incorporated to show that lawyer breached his or her fiduciary duty to client, **Walderman v**

Levine, 544 A. 2d 693 (D.C. 1998); for determining what standard of care is appropriate, **Alen v. Lefkoff, Duncan, Grimes & Dermer, P.C.**, 453 S.E.2d 719 (Ga. 1995); to address specific harm client suffered, and lawyer disciplinary rules may be quoted to same extent as statutes and ordinances in negligence case, **Mayol v. Summers, Watson & Kimpel**, 585 N.E.2d 1176 (Ill.App.Ct.) appeal denied, 596 N.E.2d 630 (Ill. 1992). Court found it stated a claim for relief based upon breach of common law fiduciary duty, using Bar Rules merely to provide some evidence of standard of care, **Sargent v. Buckley**, 697 A.2d 1272 (Me. 1997). "If plaintiff can demonstrate that disciplinary rule intended to protect one in his position, violation may be some evidence of lawyer negligence; expert "properly could base his opinion on attorney's failure to conform to disciplinary rule;" rules are admissible evidence, on par with liquor laws, workers compensation, and building codes." **Fishman v. Brooks**, 487 N.E.2d 1377, 1381-82 (Mass. 1996). Failure to comply with rules of Professional conduct is not evidence of negligence per se, but is circumstances to be considered in determining whether lawyer exercised reasonable care in fulfilling his or her legal duties to client. **McNair v. Rainsford**, 499 S.E.2d (S.C. Ct.App. 1998). **Glasser v. U.S.** 315 U.S. 60 (1942) makes it clear that effective assistance of counsel is guaranteed by the Sixth Amendment to the Constitution, which Constitution, in the pertinent part provides:

>    In all criminal prosecutions, the accused <u>shall</u> (emphasis added) enjoy **the right...** (emphasis added) to have **the assistance of counsel for his defense.** (emphasis added).

This says that, "**the accused shall have**," which is mandatory, "**the right**," which may be waived, declined, or refused, "**to have the assistance of**," which is not the same thing as "**representation by**" counsel (counsel does not mean the same thing as BAR licensed Attorney). No provision of the Constitution mandates "**compulsory representation by**" a BAR licensed Attorney. "**REpresentation by**" a BAR licensed "**Attorney**" requires the "**fully informed consent**" by both the "**client**" (the accused) **and the Attorney** and creates a "**specific performance contract**" between the "**Attorney**" and the "**client**" (The accused). ABA RPC, Rule 1.8(f) and [ER-4] provides:

(f)    A lawyer **shall not** ([mandatory] emphasis added) accept compensation for representing a client <u>from one other than the client</u> (emphasis added) unless: (1) <u>**The client consents after consultation;**</u> (2) <u>***there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship***</u>. ([Mandatory] emphasis added).

[ER-4] Paragraph (f) requires disclosure of the fact that the lawyer's services are being paid for by a third party. <u>**Such an arrangement must also conform to...Rule 1.7 concerning conflict of interest**</u>. ([mandatory] emphasis added).

Rule 1.7(a)(1) and [ER-3] provides:

(1)    <u>**A lawyer shall not represent a client if the representation will be directly adverse to another client,**</u> ([mandatory] emphasis added) unless: (2) <u>**each client consents after consultation.**</u> ([mandatory] emphasis added)

[ER-3] As a general proposition, <u>**loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent.**</u> (emphasis added).

7 C.J.S. Attorney Client, page 707—case law cited shows:

First duty not to client, "counsel must remember that they too, are officers of the court, administrators of justice, oath-bound servants of society; that their first duty is not to their clients, as many suppose, but is to the administration of justice; that their client's success is wholly subordinate; <u>**U.S. v. Frank**</u>, 53 F.2d 128, 129, reversed on other grounds; <u>**U.S. v. Loughlin**</u>, 57 F.2d 1080, Reversed on other grounds; <u>**Pearse v. U.S.,**</u> 59 F.2d 518; <u>**In re Kelly**</u>, 243 F. 696, 705.

In case of conflict between attorney's duty to client and that to court, his duty to the court must prevail. <u>**State v. Barto**</u>, 232 N.W. 553, 202 Wis. 329.

This is the basis for the release shown to be necessary at 7 C.J.S. Attorney client, § 105(d). Rule 1.7 Ethich Rules continue with:

[ER-4] Loyalty to a client is so impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client <u>**because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.**</u> (emphasis added).

<u>Just such a conflict is pleadings which may be made. One such pleading is "in propria persona"</u>, which is defined by BLACK'S LAW DICTIONARY:

<u>FIFTH EDITION, at page 712: ...a rule in pleading that pleas to the jurisdiction of the court must be plead *in propria persona*, because if pleaded by an attorney they admit the</u> jurisdiction, as an attorney is an officer of the court, and he is presumed to plead after having

obtained leave, which admits the jurisdiction.

Rule 1.7, ER-S provides:

A client may consent to representation notwithstanding a conflict. However, as indicated in paragraph (a) (1) and paragraph (b) (1) with respect to material limitations on the representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved <u>cannot properly ask such agreement or provide representation on the basis of the client's consent. When more than one client is involved, the question of conflict must be resolved as to each client.</u> ([mandatory] emphasis added) . <u>Moreover, there may be circumstances where it is impossible to make the disclosure necessary to obtain consent. For example, when lawyer represents different clients in related matters and one of the clients refuses to consent to the disclosure necessary to permit the other client to make an informed decision, the lawyer cannot properly ask the latter to consent.</u> (emphasis added).

while ER-10 provides:

A lawyer may be paid from a source other than the client, <u>if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty to the client. See, Rule 1.8(f).</u> (emphasis added).

and ER-7 provides:

Paragraph (a) prohibits representation of opposing parties in litigation.

and Rule 1.2(e) provides:

When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer <u>shall consult with the client regarding the relevant limitations on the lawyer s conduct.</u> ([Mandatory] emphasis added)

Attorney's at Law are considered "officers of the courts" (See: infra, page 3, **7 C.J.S., page 707 case law**). **Judges, prosecutors and private practice lawyers are Attorneys at Law.** The courts are empowered by respective Constitutions of the States of the Union (Republic) (see: Constitution for the United States of America, Article IV, Section 4). Therefore, if Attorneys are "officers of the court," then they are, in fact, government agents. This fact was pointed out by Henry J. Friendly, in University of Pennsylvania Law Review, Vol. 123, 1267, page 1288, which in part provides:

The appearance of counsel for the citizen is likely to lead the government to

provide one - or at least to cause the government's representative to act like one. (emphasis added).

Quite obviously, the alleged "Defense Counsel" is a government agent sitting at the "Defense Table", not the "accused(s)" "guaranteed by the Sixth Amendment" "effective assistance of counsel", or "guaranteed by the Sixth Amendment" "conflict-free representation".

Right to conflict-free representation(emphasis added) derives from Sixth Amendment. **Garcia v. Bunnell**, 33 F.3d 1193 (9th Cir. 1994)

Criminal defendant is entitled to counsel whose undivided loyalties lie with client. (not the government) **Spreitzer v. Peters**, 114 F.3d 1435 (7th Cir. 1997).

The Attorney must inform the accused of the limitations and conflicts regarding his or her conduct (representation or assistance) (see. RPC, Rule 1.2(e); RPC, Rule 1.8(f) & ER-4; RPC, Rule 1.7(a) & (b), Ethicks Rules 4, 5, 7, & 10). If the lawyer is not allowed to disclose the conflicts, he or she cannot rightfully (morally or lawfully) ask the accused to agree to his or her representation, (RPC, Rule 1.7, ER-5), and must also have a release from the court and the government allowing him or her to compromise the government's case. Further, given the conflict caused by being an officer of the court and a government agent, which the court is well aware of, it is the courts duty to inform the duty of the court to inform the accused of such conflict and inquire if the accused, having now been informed, voluntarily agrees to waive the conflicts.

District court's initial obligation to inquire into potential conflict of interest arises whenever district court is sufficiently apprised of even possibility of conflict of interest. **U.S. v. Jiang**, 140 F.3d 124 (2nd Cir. 1998); **U.S. v. Taylor**, 139 F.Jd 924 (D.C. Cir. 1998)

Trial judges are required to determine whether third parties are paying fees of retained counsel when defendant is indigent, and, if so, whether defendant understands potential conflict of interest that may exist in such arrangement and voluntarily waives conflict. **Quintero v. United States**, 33 F.3d 1133 (9th Cir. 1994).

A lawyer cannot be compelled to "Represent" an accused, see, e.g., **Mallard v. U.S.**

Dist. Court for S. Pist. of Iowa, 490 U.S. 296, 104 L.Ed.2d 318, 109 S.Ct. 1814 (1989).

Representation that would be impaired by influence of a third party must be declined, See,

e.g. United States v. Locassio, 6 F.3d 924 (2nd cir. 1993), where "acceptance of fee from

third party could subject lawyer to undesirable outside influence, particularly in criminal

matters," cert. denied, 511 U.S. 1070 (1994); In re Grand Jury Subpoena, 759 F.2d 968,

977, 984 n.9 (2nd Cir. 1985), where "[a]ccepting payment of clients' fees from third party

may subject an attorney to undesirable outside influence, particularly where the attorney is

representing clients in criminal matters...."; United States v. Rodriquez, 929 F.2d 747 (1st

Cir. 1991), where: law under fee-payment scheme may inhibit "client" from offering

testimony or taking action contrary to fee payer's interest; Wood v. Georgia, 450 U.S. 261,

269 (1981), where "[c]ourts and commentators have recognized the inherent dangers that arise

when a criminal defendant is represented by a lawyer hired and paid by a third party,...."; see

generally: Roszkewycz, **Third Part Payment of Criminal Defense Fees: What Lawyers**

**Should Tell Potential Clients and Their Benefactors pursuant to (an amended) Model**

**Rule 1.8(f), 7 Geo. J. Legal Ethics 573 (1993).**

Law firm that represents operating division of chemical and film manufacturer
cannot represent another client in antitrust litigation against manufacturer without written
informed consent of both clients. (emphasis added). Image Technical Services, Inc. v.
Eastman Kodak Co., 820 F.Supp. 1212 (N.D. Cal. 1993).

A BAR licensed Attorney has an immediate, major conflict of interest, which both he

and the courts ignore and do not disclose, even though they are both legal and moral duty to

inform an accused of this conflict:

First duty not to client, (emphasis added) "counsel must remember that they
too, are officers of the court, administrators of justice, oath-bound servants of society; that
their first duty is not to their clients, as many suppose, but is to the administration of justice;
that their clients success is wholly subordinate; (emphasis added) U.S. v. Frank, 53 F.2d 128,
129, reversed on other grounds; U.S. v. Loughlin, 57 F.2d 1080, reversed on other grounds;
Pearse v. U.S., 59 F.2d 518; In re Kelly, 243 F. 696, 705.

In case of conflict between attorney's duty to client and that to court, his duty
to the court must prevail. State v. Barto, 232 N.W. 553, 202 Wis. 329.

Because of this conflict of interest, and not having a release (signed consent), A *BAR* licensed Attorney is not allowed to inform the accused that he can make a "special appearance," "in propria persona, making a plea of: "*I plea in bar coram non judice.*"" This plea would be all that is needed to stop this alleged court dead. Nor is the *BAR* licensed Attorney allowed to inform the accused about the several defects in the indictment, because neither the court or the "government" will give written consent (release). The fact that the Attorney is a government agent, with no written consent (release) , he or she can neither inform the accused, or, compromise the government's case. It is the legal and moral duty of both the attorney and the court to inform the accused. If the Attorney is refused consent to inform the accused, it is his legal and moral duty to refuse to "represent" the accused. U.S. v. Tweel, 550 F.2d 297, 299---300, has this to say about such silence:

"Silence can only be equated with fraud when there is a legal or moral duty to speak,"

While the Supreme Court says:

Reversal mandated is prejudice is proven on attorney-client relationship. U.S. v. Morrison, 449 U.S. 361, 66 L.Ed.2d 564, 101 S.Ct. 665 (1981)

By the words of the courts and the AMERICAN BAR ASSOCIATION, extreme prejudice exists, because, without a written consent (release) from both the courts and the government, a claim of "representation of the accused" is a major fraud, because a government agent is making that claim, while making sure the government's claim is not compromised, by hindering, impeding and obstructing discovery of "**Brady**" and "**Jencks**" material and/or submission to the "court" of exculpatory evidence and/or evidence which would impeach police, prosecutors or witnesses.

There can be no greater prejudice than when you have a government spy controlling acquisition of evidence, submission of evidence and presenting issues and arguments under



the guise of "representation." This government spy's purpose is proven by the U.S. Attorney Manual (USAM) Title 6-1287, which in part provides:

> The entry of judgment alone does not create a judgment lien. A judgment lien comes into existence only when a certified copy of the abstract of the judgment is properly filed, (**28 USC § 3201, formerly 28 USC § 1962**). Accordingly, a trial attorney must take the steps necessary to obtain the judgment lien. An abstract of the judgment form, cover letter to the U.S. Attorney, and instructions are attached as exhibit 10.

If an accused is prosecuted by a U.S. Attorney, why would a U.S. Attorney need a trial attorney to provide an abstract of the judgment form, cover letter (and just what is contained in that cover letter), and why would such U.S. Attorney need "instructions"? Obviously, there numerous reasons for concealment of these things in "*Talon and Lions*," because it contains both Brady and Jencks material, which would require the release of the accused. The Government uses what it calls a "**superlien**" to "**forfeit the person**," along with all substantial and insubstantial personal rights "**from the time of the alleged commission of the alleged crime**", in a process which was outlawed by the first Congress, because it is a "**Bill of Attainder**". The Legislative History of the "**Organized Crime Control Act and Title III of the Comprehensive Drug Abuse Prevention and Control Act of 1970**", shows at page 4, shows the "**super**" **judgment lien**, while at pages 81-82, which contains foot notes 174-185, provides:

> At common law, a person convicted of treason and certain other felonies automatically forfeited to the crown his personal goods and chattels. [174] Furthermore, when a person had been attainted [175] for an act of high treason [176] or outlawry [177] all his interests in real property held at the time of the offense or acquired since that time were forfeited to the crown. According to *Blackstone*, the rationale for criminal forfeiture was that:

> [H]e who hath thus violated the fundamental principles of government, and broke his part of the original contract between king and people, hath abandoned his connection with society; and hath no longer any right to those advantages, which before belong to him purely as a member of the community; among which social property to others is one of the chief. Such forfeitures moreover, whereby his posterity must suffer as well as himself, will help to restrain a man, not only by the sense of his duty, and dread of personal punishment, but also by his passions and natural affections.

The footnotes and the comments immediately after the above make it abundantly clear

that Congress knew and intended this to be a "**Bill of Attainder**"; however, even in England, Bills of Attainder have long been illegal. The common law attainder was abolished by Statute 33 and 34 Vict. Ch. 23. The passage of such bills are expressly forbidden by the Constitution, Article 1, Section 9, clause 3. What is enlightening is that Congress compares itself to the English crown, and assumes the posture of "king" over the people. Forgive me for my unenlightened next comment, but didn't our forefathers fight a revolutionary war so they would be free from such despotic tyranny? I seem to remember two "Declarations of Rights", A "Declaration of Independence", "Articles of Confederation" and a "Constitution" which has a "Bill of Rights" forbidding exercising any power not delegated, along with a prohibition on "Bills of Attainder". The Before mentioned footnotes also make it clear that the federal forfeiture is an action "as 'near admiralty as possible". I also seem to remember the "Declaration of Independence" complained about the king expanding the ancient admiralty jurisdiction and bringing it onto land, creating a multitude of new offices to eat out the peoples substance. And "our Defense Counsel" helped do this to us. This was done under "Federal Debt Collection". I seem to remember reading something about activities like this in 18 U.S.C. §§ 1001, 1341, 1343, where it is called a scheme or artifice to defraud, which is defined at 18 U.S.C. § 1346, and as the U.S. Attorney Manual says: RICO **applies to everyone.** I seem to remember telephones and the mail being used to facilitate and carry this fraud into completion, see: **18 U.S.C. §§ 1961, 1962, 1963, 1964, 1965, and 1966.**

It is also the stated <u>duty</u> of all judges and attorneys to report such conduct to the appropriate authorities and cause investigation of such conduct. <u>See</u>: **ABA RPC, Rules 8.3, 8.4 and accompanying Ethics Rules, see: Judicial Canons and accompanying Ethics Rules.**

# PART II

### Continuing Education

A mutual friend provided Robert Kelly with a copy of my initial rough draft briefing, which I had arbitrarily titled **"Effective Assistance of Counsel."** This title and briefing was simply to provide me with a reference and direction. Publication in *The American's Bulletin* was a complete surprise. In that brief I minimally covered: (1) a simple list of duties the courts say an attorney owes an accused, (2) the use of Ethics Rules as evidence of the duty a lawyer owes his (**alleged**) "client" as an accused, and (3) a cite from "**In re Meeker**," showing that the canons (rules) of professional ethics **must be enforced by the courts**. My initial rough draft has been completely rewritten, and is now titled simply **"conflicts"**. Eventually, Robert will be provided with a copy of that brief; however, equally as important to litigating the conflicts shown to exist by the original brief is the necessity of understanding the requirements of **each** "Rule of Professional Conduct," which are the terms of a lawyer's contract obligation to an accused. Understanding these rules will not only help document those and other conflicts, but will at the same time demonstrate prejudice. Accordingly, I will attempt to provide Robert a series of simple articles, each dealing with a separate rule, briefly showing how it relates to the list, and shortly, how each is interrelated with each other.

A copy of the BAR Rules of Professional Conduct should be available **free** from your local BAR Association. Accordingly, I will cite only the rule number and the title of that rule, then give an abbreviated discussion of the requirements of that rule. This is done only to provide guidelines to give direction and assistance to those currently needing some such assistance.

### Introduction

The law has long recognized that a lawyer must perform legal **services competently**, see, e.g., **Gambert v. Hart**, 44 Cal. 542 (1872); **Kissam v. Bremerman**, 44 A.D. 588 (N.Y. 1899); **Hill v. Mynatt**, 59 SW. 163 (Tenn 1900); **Malone v. Girth**, 75 N.W. 972 (Wis. 1898), all requiring use of ordinary skill, care and diligence commonly employed by lawyers

undertaking similar matters. The profession did not explicitly require lawyer competence until after 1970, when jurisdictions began adopting versions of the *ABA Model Code of Professional Responsibility*. Model Code of Professional Responsibility, DR 6-101 (A) (Failure to Act Competently). The Code did not provide a definition of lawyer competence, therefore, disciplinary agencies relied upon DR 6-101 (A)(2) (Requiring adequate preparation), see, **In re Cohn**, 600 N.Y.S.2d 501 (App.Div. 1993) , where neglect may be considered a species of failure to act competently (applying state's code).

The very first ABA Rule of Professional Conduct is numbered 1.1 and titled simply "Competence." Following are the requirements for "Competence:

1. Legal knowledge and skill.
2. Thoroughness and preparation.
3. Maintaining Competence.

Rule 1.1 defines the elements of competent representation historically developed under the code: competence "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for representation." While this may not sound like any big deal, this is one of the main rules requiring a lawyer to obtain every available shred of evidence in your case, use that evidence to prepare and thoroughly pursue every available defense in your behalf, so it would be a good idea to pay close attention.

The duty of diligence is closely related to competence, as one often accompanies the other, see, **People v. Primavera**, 942 P.2d 496 (Cola. 1997); **Florida Bar v. Flowers**, 672 So.2d 526 (Fla. 1996); **In re Capps**, 942 P.2d 588 (Kan.1997); **In re Moore**, 494 S.E.2d 804 (S.C. 1997). **See also**: Restatement (Third) of the Law Governing Lawyers, § 28 (1996) (Lawyer's duties of competence and diligence are contained within the same rule).

1. **Knowledge of Legal Principles:** A lawyer is expected to be familiar with well-settled principles of law applicable to client's needs, see, e.g., **Goldberg v. Gordon**, 607 P.2d 995 (Cola. 1980); **Florida Bar V. Lecznar**, 690 So.2d 1284 (Fla. 1997); **In re Farmer**, 950 P.2d 713 (Kan. 1997); **In re Moore**, 494 So.2d 804 (S.C. 1997); **Office of Disciplinary Counsel v. Henry**, 664 S.W.2d 62 (Tenn 1983); **Martin v. Northwest Washington Legal Services**, 717 P.2d 779 (Wash. Ct.App. 1986); **In re Gibson**, 570 N.W.2d 249 (Wis. 1997).

2. **Basic Research:** A lawyer must also "discover those additional rules of law which although not commonly known, may be readily found by standard research

techniques, **Baird v. Pace**, 752 P.2d 507 (Ariz. 1987); **Home v. Peckham**, 1158 Cal.Rptr. 714 (Ct.App.1979); **Smith v. Lewis**, 530 P.2d 589 (Cal. 1975); **State ex mel. Oklahoma Bar Association v. Hensley**, 661 A.2d 527 (Okla. 1983); Incompetence lay in failure to do basic research, "inadequate even for a general practitioner," **Home v. Peckham**, 1158 Cal.Rptr. 714 (Ct.App. 1979); A lawyer must undertake reasonable research to ascertain relevant legal principles, **Smith v. Lewis**, 530 P.2d 589 (Cal. 1975)

      3.    <u>Knowledge of Court Rules</u>: A lawyer is expected to know the rules of the courts before which the lawyer practices, see, e.g., **In re Dempsey**, 632 F.Supp. 908 (N.D.Cal. 1986); **In re Moore**, 494 S.E.2d 804 (S.C. 1997); **In re Belser**, 287 S.E.2d 139 (S.C. 1982).

      4.    **<u>Investigation and research</u>**: The interrelated obligations of thoroughness and preparation require a lawyer to investigate the facts of the matter and research the applicable law, see, e.g., **People v. Boyle**, 942 P.2d 1199 (Colo.1997); **People v. Felker**, 770 P.2d 402 (Cola. 1989); **In re Meckler**, 689 A.2d 1171 (Del. 1996); Dillard Smith **Constr. Co. v. Greene**, 337 So.2d 841 (Fla. Dist,Ct.App. 1996); **Muse v. St.Paul Fire & Marine Ins. Co.**, 328 So.2d 698 (La.Ct.App. 1976); **State ex rel. Nebraska State Bar Association v. Holscher**, 230 N.W.2d 75 (Neb. 1975); **Collins v.Perrine**, 778 P.2d 912 (N.M. 1989); **In re Kovitz**, 504 N.Y.S.2d 400 (App.Div. 1986); **Toledo Bar Association v. Wroblewski**, 512 N.E.2d 978 (Ohio 1987); **In re Green**, 557 P.2d 644 (Ore. 1976); **In re Winkel**, 577 N.W.2d 9 (Wis. 1998); **In re Fischer**, 499 N.W.2d 677 (Wis. 1993).

      5.    <u>Legal Analysis</u>: The analysis of precedent and evaluation of evidence are skills needed for competent representation, see, **e.g.**, **In re Black**, 941 P.2d 1380 (Kan. 1997) (Lawyer improperly applied child support guidelines, using formula for two children rather than five; his "failure to properly learn, observe and apply rules for calculating child support demonstrates a lack of competency"); **People v. Yoakum**, 552 P.2d 291 (Cola. 1976) (lawyer handling closing of sale of business failed to note that stock certificates were unsigned, failed to question assignment of business lease that on it's face was assignable only with lessor's consent and made no inquiries concerning assets and debts of business being purchased).

      6.    **<u>Skill in Drafting</u>**: The skills required of a lawyer include the ability to draft pleadings and documents, see, e.g., **In re Willis**, 505 A.2d 50 (D.C. 1985); **In re Hogan**, 490 N.E.2d 1280 (Ill. 1986); **Attorney Grievance Commission v. Meyers**, 490 A.2d 231 (Md. 1985); **In re Hawkins**, 502 N.W.2d 770 (Minn. 1993); **In re Wallace**, 518 A.2d 740 (N.J. 1986).

      7.    <u>Knowledge of Procedure</u>: The requisite familiarity with well-settled legal principles extends to matters of procedure, see, e.g., **Attorney Grievance Commission v. Bailey**, 408 A.2d 1330 (Md. 1979)

      8.    <u>Violation of Federal Pleading Rules</u>: Disciplinary action may be among the sanctions available for violation of federal pleading rules, see, e.g., **In re Alexander**, 513 A.2d 781 (D.C. 1986); court suggests appropriateness of state court disbarment proceedings based on Rule 11 violations, **Piazza v. Carson City**, 652 F.Supp. 1394 (D.Nev. 1987); and considers suspension from practice before district court as sanction for Rule 11 violation, **Kendrick v. Zanides**, 609 F.Supp. 1162 (N.D.Cal. 1985). See generally Parness, **More Stringent Sanctions under Federal Civil Rule 11: A reply to Professor Nelken**, 75 Geo.L.J. 1937, 1940-41 (1987) where duties and sanctions under Rule 11 merely supplement those of existing disciplinary rules, although greater enforcement

A-3

capacity is available under Rule 11 because **sanctions are mandatory** once violation is found.

 9. *Unfamiliarity with Areas of Law:*   A lawyer's lack of experience in a particular area of law is no defense to a charge of incompetent representation, see, e.g., **In re Deardorff**, 426 N.E.2d 689 (md. 1981); **In re Yetman**, 552 A.2d 121 (N.J. 1989); **People v. Susman**, 587 P.2d 782 (Cola. 1978).

The system doesn't trust it's own, and because of this, virtually every telephone call, FAX, or radio call to or from a prosecutor's office, police station, sheriff's office, etc., is recorded. Additionally, every police officer out there carries his own **"Personal Log"** book. This Personal Log book is a usually fairly complete, minute-by-minute, hour-by-hour, daily diary, which is used to provide information f or police reports and prosecutions. Contained in this "Personal Log," are names, addresses, telephone numbers and notes concerning "interviews," tips from informants, conversations and interactions with other officers, officials and agencies, and quite a lot of useful information. This "Personal Log" will usually disclose both **"Brady"** and **"Jencks"** material, point to where other such material can be found and disclose other officers, officials, and agencies involved. Every premium telephone call (pay phone, credit card, FAX, etc.,) is automatically recorded (and you thought you had privacy) by the service provider, and can be accessed through the numbers on the monthly billing, via a judicially issued subpoena duces tecum (so much for privacy). Reference to approved methods of "retrieval" of telephone calls (which also includes all private long-distance calls) is found at 18 U.S.C. §§ 2701 et seq. All this information is well known to lawyers and police. Any competent lawyer truly intending to devote his undivided loyalties to his alleged "client," will immediately submit a discovery request which includes all such "Personal Log" notes, telephone calls and FAX communications. If your lawyer neglected to do so, you might want to demand (1) a copy of his release from the court, allowing him to provide you with his undivided loyalties, and (2) his release from the government allowing him to compromise the government's case. If he cannot provide you with a copy of those two releases, the conflicts of interest may be adversely affecting the quality of his representation of you. Your lawyer may not be allowed to (cannot) consider and carry out appropriate courses of action, and alternatives, which would otherwise be available to you, are foreclosed. Has a light begun to dawn upon you yet?

14.                                                                    A-3

### Effective Assistance of Counsel

The Sixth Amendment right to effective assistance of counsel implicitly recognizes that criminal defense counsel must be competent, **see, e.g., McMann v. Richardson,** 397 U.S. 759 (1970); **United States v. DeCoster,** 487 F.2d 1197 (D.C. Cir. 1983). Courts have declined to adopt a per se rule that successful post-conviction relief based on ineffective assistance will constitute an ethics violation, or, conversely, that denial of post-conviction relief will insulate a lawyer from discipline, **In re Wolfram,** 847 P.2d 94 (Ariz. 1993); ineffective assistance may serve as the predicate for disciplinary action, **see, e.g., Florida Bar v. Sandstrom,** 609 So.2d 583 (Fla. 1992), although reversal of a client's conviction on grounds of ineffective assistance will not always result in determination of ethical misconduct, **In re Agrillo,** 604 N.Y.S.2d 171 (App.Div. 1993)

# Part III

Fraud vitiates the juristic vitality and destroys the legal validity of everything it enters:

*Fraud destroys the validity of everything into which it enters. It affects even the most solemn judgments and decrees.* <u>Ira Nudd v. Geroge Burrows</u>, 91 U.S. 426 at 440 (1875).

The reason why statutes are sometimes brought into a Contract Law judgment setting, when statutes do not appear anywhere within the body proper of the contract, is because the contract was written under the supervisory Commerce Jurisdiction of the State, and therefore, those statutes form a superseding part of the contract.

"Attorney-Client" contracts are written under the supervisory Commerce Jurisdiction of the State. The State statutes forming the superseding part of the contract are the local (State) chapter of the **American Bar Association** (ABA) Rules of Professional Conduct (RPC) adopted by the State, which are usually included within the local "Court Rules." Any failure to comply with the ABA RPC, is therefore, a contract violation. Any <u>unintentional</u> contract violation, **could** be the bases of a TORT Claim, depending upon the damages done to the damaged party. However, any intentional contract violation is fraud, which the damaged party can prosecute and collect damages upon such fraud. If such fraud falls within the "Racketeering" statutes, or the "Racketeering Influenced and Corrupt Organizations" (R.I.C.O.), it may be <u>**civilly prosecuted**</u> under those statutes <u>**by the damaged individual(s)**</u>.

It is very important to obtain a copy of the local ABA RPC and the local State Court Rules. Read them, understand them, and become familiar with all the conduct required for an attorney before entering into and after entering into a contract, in order for the attorney to comply with each Rule. There is no other even marginally certain way to insure success when dealing with your alleged "defender/advocate."

Simple questions of Contract compliance, by their very nature exclude a large body of prospective rebuttals that are distractive to the simple question asked. When contracts are up

Pg 17

for review and judgment, then only the content of the Contract is of any relevance. Congress has evinced a desire to allow lawyers to decline representation of indigent litigants, if in the lawyers own opinion their personal, professional or ethical concerns make it necessary, (28 U.S.C. §1915(e) (1))[1] by empowering federal courts to do no more than "request" lawyers to serve. ABA Standards for Providing Defense Services, Standard 2.2 (2nd Edition 1980) provides:

only lawyers experienced in trial practice, with an interest in and knowledge of criminal law and procedure, can properly be expected to serve as assigned counsel [for criminal defendants].

ABA RPC, Rule 6.2 Accepting Appointments provides:

A lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause, such as:
(a)    representing the client is likely to result in violation of the Rules of Professional Conduct or other law;

Thus, the ABA RPC admits that they are law (Commercial Contract), and continues with:

(b)    representing the client is likely to result in unreasonable financial burden on the lawyer; or
(c)    the client or the cause is so repugnant to the lawyer as to be likely to impair the client-lawyer relationship or the lawyer's ability to represent the client.

It should be noted that (a) of this rule, a lawyer must avoid any appointment which might cause him or her to violate the Rules of Professional Conduct.

You don't have to prove fraud to prove contract violation, and even a valid TORT Claim will serve to prove damage and "prejudice." If however, you can prove fraud, the Contract is vitiated as a matter of law, and you, in fact, did not have any assistance of counsel. For that reason, you have been deprived of your Sixth Amendment right to effective assistance of counsel and your Fifth Amendment right to due process, and you haven't had a "fair trial." This is, of course, only the tip of the ice-berg.

---

[1]    28 U.S.C. § 1915(e) (1): The court may request an attorney to represent any person unable to afford counsel.



<>39657-177<>
Jackie H Zimmerman Jr.
FED. Corr. Inst. II
P.O. BOX 1500 / OLD HGY 75
C/O: Jackie Zimmerman JR
Butner, NC 27509
United States

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL™

7012 0470 0000 5102 3965



&#60;&#62;39657-177&#60;&#62;
Jackie H Zimmerman Jr.
FED. Corr. Inst. II
P.O. BOX 1500 / OLD HGY 75
C/O Jackie Zimmerman JR
Butner, NC 27509
United States

&#60;&#62;39657-177&#60;&#62;
Dist Court N District Of Texas
Attn. Clerk OF THE Court
1100 Commerce ST
EARL Cabell FED Build
Dallas, TX 75242
United States